Sara Elizabeth Siegler
CEO/Owner, SARA ELIZABETH SIEGLER
19602 Rockside Road
Bedford, OH 44146
P: 440/317-1764
C: 216/870-9188
F: 216/831-9398
E: sara@saraelizabethsiegler.mygbiz.com
*Pro Se*

**FILED**

Jul 24 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/jenniferm          DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

SARA ELIZABETH SIEGLER and Sara
Elizabeth Siegler,

                              Plaintiffs,

v.

SORRENTO THERAPEUTICS, INC.,
TNK THERAPEUTICS, INC., BDL
PRODUCTS, INC., CARGENIX
HOLDINGS LLC, PROSPECT
CHARTERCARE ROGER WILLIAMS
MEDICAL CENTER LLC, HENRY JI,
RICHARD PAUL JUNGHANS,
STEVEN C. KATZ, AND THE BOARD
OF DIRECTORS OF SORRENTO
THERAPEUTICS, INC.

                              Defendants.

Case No.: '18 CV 1681 GPC NLS

COMPLAINT, JURY DEMAND

1.     This civil action arises from anti-competitive business practices as well as the

the misuse and conversion of intellectual property ("IP") that is the exclusive

property plaintiff Sara Elizabeth Siegler ("SES"), an Ohio based woman owned

small business ("WOSB") that is registered in the state of Ohio as well as with the

Small Business Association ("SBA"),  SES constitutes a sole proprietorship that is

fully owned and operated by its CEO/Owner, Sara Elizabeth Siegler ("Siegler").

2.     It is through this action that SES seeks return of its IP, temporary injunctive

relief, permanent injunctive relief, treble damages, costs, and other relief stemming

from the unlawful actions as alleged in further detail herein.  This is the first

lawsuit brought by SES since its establishment in 2011, and this is the first lawsuit

brought by Siegler in her official capacity as the CEO/Owner of SES.

3.     This action is interrelated to US District Court for the District of New Jersey

Case 2:15-cv-04526-JLL-JAD (*Immunomedics, Inc. v. The Board of Directors of*

*Roger Williams Medical Center et al.*) and its related actions before the US District

Court for the District of New Jersey, US District Court for the Southern District of

California (*i.e.*, cases 3:17-cv-02442, 3:17-cv-01039 (terminated), 3:16-cv-01531

(terminated), and 3:16-cv-01527 (terminated)), US District Court for the District of

Delaware (*i.e.*, case 1:16-mc-00173 (terminated)), US District Court for the

Southern District of Mississippi (*i.e.*, case 2:17-mc-174 (terminated)), US District

Court for the Northern District of California (*i.e.*, case 3:17-mc-80150

(terminated)), US District Court for the District of Massachusetts (*i.e.,* case 1:18-mc-91088), and the San Diego Superior Court (*i.e.,* case 37-2018-00021006-CU-NP-CTL).[1]

## I.    INTRODUCTION

4.      Plaintiff SES was established in April 2011 as an Ohio based sole proprietorship that is fully owned and operated by plaintiff Sara Elizabeth Siegler ("Siegler"), an individual who resides in the state of Ohio.  Beginning circa late 2013, Siegler started corresponding with Richard Paul Junghans, MD, PhD ("Dr. Junghans") following an National Institutes of Health ("NIH") event held in 2013, and as a result, SES began work as part of a planned collaboration with Dr. Junghans to develop chimeric antigen receptor ("CAR") T cell based therapeutics for virology and oncology indications invented by Dr. Junghans, which included CAR T constructs for which the patent applications had been abandoned.  Included in the constructs for which the initial patent applications had been abandoned by Dr. Junghans was the second generation CAR T cell construct with a humanized single chain variable fragment ("scFv") binding domain targeting the

carcinoembryonic antigen ("CEA") on tumor cells that was docketed by the United States Patent and Trademark Office ("USPTO") as US application 10/006,771.

5.      Prior to August 2015, SES created the following work products as part of the aforementioned planned collaboration with Dr. Junghans — *In Vivo Testing of 3rd Generation Anti-CEA Designer CAR T Cells with Bcl-xL in Pancreatic Cancer* and *Phase 1b/2 Study of [2nd Generation] Anti-CEA Designer CAR T Cells in Breast Cancer*. The work products of SES encompassed within *In Vivo Testing of 3rd Generation Anti-CEA Designer CAR T Cells with Bcl-xL in Pancreatic Cancer* and *Phase 1b/2 Study of [2nd Generation] Anti-CEA Designer CAR T Cells in Breast Cancer* have been registered by SES with the US Copyright Office as registration numbers TXu001998310 ("TXu001998310") and TXu001998311 ("TXu001998311"), respectively.   A true copy of the copyright registration certificate for TXu001998310, or *In Vivo Testing of 3rd Generation Anti-CEA Designer CAR T Cells with Bcl-xL in Pancreatic Cancer,* with an effective date of registration of September 08, 2015 is attached as **Exhibit 1,** incorporated here for reference.  A true copy of the copyright registration certificate for TXu001998311, or *Phase 1b/2 Study of [2nd Generation] Anti-CEA Designer CAR T Cells in Breast Cancer*, with an effective date of registration of September 04, 2015 is attached

hereto as **Exhibit 2,** incorporated here for reference.  SES has remained the sole and exclusive owner of said copyrights at all times relevant to this complaint.

6.      After the copyrights on the anti-CEA CAR T cell constructs were created by SES and while SES was still planning a collaboration with Dr. Junghans and his affiliated research institutions, completely unbeknownst to SES and/or Siegler at the time, on July 16, 2015, Dr. Junghans registered in Massachusetts a shell corporation, or defendant BDL Products, Inc. ("BDL").  BDL was established for the sole purpose of an acquisition by defendant Sorrento Therapeutics, Inc. ("SRNE") via its wholly owned subsidiary TNK Therapeutics, Inc. ("TNK"), which was formed in Delaware on April 15, 2015 as per DE File Number 5717686. Passing the IP of SES off as his own and violating the right to first refusal on the other CAR T cell constructs for which copyrightable work products had not yet been generated by SES — or the anti-c-KIT CAR, the anti-GD3 CAR, the anti-PSMA CAR, and the anti-IL13R$\alpha$2 CAR —Dr. Junghans and BDL executed a Stock Purchase Agreement ("SPA") with TNK on August 7, 2015 that included said anti-CEA CAR T cell IP of SES without the prior knowledge and/or consent of SES and/or Siegler.

7.      The August 7, 2015 BDL SPA was contingent upon the closing of the August 7, 2015 Membership Interest Purchase Agreement ("MIPA") executed by SRNE subsidiary TNK with CARgenix Holdings LLC ("CARgenix"), or the Rhode Island and Providence Plantations shell corporation created by Jaymin B. Patel whose members include defendant Steven C. Katz ("Dr. Katz"), Jaymin B. Patel, Prakash Sampath, and Kevin O'Neil.

8.      Included in the August 7, 2015 executed agreements, or the BDL SPA and the CARgenix MIPA, were provisions (*i.e.*, "restrictive covenants") that prohibited and/or were intended to prohibit Dr. Junghans and/or his affiliated research institutions, or Tufts Medical Center ("Tufts MC") and R, from working with SES and/or Siegler as part of the planned collaboration/partnership between SES and Dr. Junghans. The anti-competitive business practices of defendants were intended to foreclose competition and constitute a conspiracy to create a monopoly in the US CAR T cell market for anti-CEA CAR T cells. As is set forth in further detail herein, the anticompetitive business practices of defendants as well as the other unlawful actions of the defendants have caused anticompetitive harm and injury to SES and to Siegler in her official capacity as Chief Executive Officer ("CEO")/ Owner of SES with the full amount of damages to be proved at trial.

9.      Following the August 7, 2015 execution of the SPA and MIPA with BDL and CARgenix, the following CAR T cell constructs, including those for which SES had already created IP, *e.g.,* CEA CAR T cells, appeared on the pipeline of TNK parent company SRNE both on its website as well as in corporate presentation slide decks — anti-CEA CAR, anti-c-KIT CAR, anti-GD3 CAR, anti-PSMA CAR, anti-HIV CAR, and the anti-IL13R$\alpha$2 CAR.  At the time of the execution of the BDL SPA and CARgenix MIPA, not a single patent had been granted on any of the aforementioned CAR T cell constructs and/or on the interrelated methods as is set forth in further detail in **Exhibit 3**.  The IP of SES on the anti-CEA CAR T cell constructs, however, had been created prior to August 7, 2015.

10.     Infringement of the IP of SES has occurred and continues to occur following the execution of the SPA and MIPA that resulted in the acquisition of shell corporations BDL and CARgenix by TNK, a wholly owned subsidiary of SRNE.  The infringement activities of defendants have caused irreparable harm and injury to SES and to Siegler in her official capacity as CEO/Owner of SES.  Absent enjoinment by this Court, the infringement of the anti-CEA CAR T cell IP of SES, which includes copyrights and trade secrets, will continue as will the economic benefit enjoyed by the infringers, where and as applicable.  As is set forth in further

detail herein, the IP conversion and IP infringement activities have caused

irreparable harm and damage to the company, or SES, and to the CEO/Owner of

the company, or Siegler, with the full amount of damages to be proved at trial.

## II.   PARTIES

11.   Plaintiff SES is a WOSB that was established in 2011 by Siegler and is

registered in the state of Ohio as a sole proprietorship (*i.e.,* entity 2029865).  SES,

which is also registered with the SBA, constitutes an early stage company that

operates in the field of cell-based gene therapy, although all of its CAR T cell

constructs are of investigational status as of the filing date of the present action.

12.   Plaintiff Siegler is the CEO/Owner of SES.  SES and Siegler lack the funding to

retain proper legal representation, and thus, Siegler represents both herself in her

official capacity as well as her fully owned company (*i.e.,* SES) *pro se* despite her

lack of formal legal training and/or legal education.

13.   Defendant 1, or SRNE, is a Delaware corporation with its current principle

place of business at 4955 Directors Place, San Diego CA 92121.  Formerly

QuikByte Software, SRNE is a publicly traded company with at least twenty two

subsidiary companies to the best knowledge of SES and Siegler.

14.    Defendant 2, or TNK, is a wholly owned subsidiary of SRNE that was registered in Delaware and California on April 15, 2015 and July 24, 2015, respectively.  TNK is the immune-oncology focused subsidiary that is developing cell-based gene therapies including chimeric antigen receptor (CAR) T cells.  TNK was founded to develop CAR.TNK investigational cell products, and following the August 7, 2015 BDL and CARgenix acquisitions, its focus expanded to include CAR T cell investigational new drugs ("INDs").  TNK may also be doing business as TaNK Therapeutics, Inc. as of May 2018 but is hereinafter referred to as "TNK" as no such name change has been filed with the Delaware Division of Corporations as of May 29, 2018, and the May 29, 2018 email inquiry to the Delaware Prothonotary's Office (keeley.baker@state.de.us) on a possible doing business as ("dba") filing with regard to TaNK Therapeutics, Inc., which first appeared in the May 2018 Corporate Presentation slide deck of parent company SRNE, went unanswered. Moreover, once referred to as the immuno-oncology cell therapy *division* of SRNE, as of July 2018, TNK (and/or the cell therapy assets of SRNE) is now referred to as the immuno-oncology cell therapy *platform* of SRNE.  The patent applications and granted patents of Dr. Junghans are detailed in **Exhibit 3** that follows and is incorporated here for reference.

15.     Defendant 3, or BDL PRODUCTS, INC. ("BDL"), is subsidiary of SRNE that

was formed by Richard P. Junghans, PhD, MD ("Dr. Junghans") and Qiangzhong

Ma, PhD in Delaware on July 16, 2015 as per DE file number 5786629.  BDL was

also registered in Massachusetts and was created in order to function as a shell

corporation.  Dr. Junghans owns almost all of the stock issued by BDL as per

information and belief.  As is set forth in further detail herein, the TNK SPA was

executed by Dr. Junghans on behalf of BDL to the best knowledge of SES and/or

Siegler.

16.     Defendant 4, or CARgenix, not to be confused with CARgenix, Inc., is a

subsidiary of SRNE that was formed in RI by Dr. Junghans and other individuals,

as presently known, Kevin O'Neill, Prakash Sampath, MD, Defendant Dr. Katz,

and Jaymin Patel for the purposes of serving as a shell corporation.  More

specifically, CARgenix was register in RI as a domestic LLC, and although its

stated purpose is listed on the RI entity search website as biotech research, NAICS

Code 551114 properly identifies it as a corporate, subsidiary, and/or regional office.

The current principle office for CARgenix is at 4955 Directors Place, San Diego

CA 92121, and TNK (also with a place of business at 4955 Directors Place, San

Diego CA 9212) is listed as its manager.  The TNK Member Interest Purchase

Agreement ("MIPA") was signed by Steven C. Katz on behalf of CARgenix on August 7, 2015, and Dr. Katz is an equity owner of CARgenix.

17.     Defendant 5, or Tufts Medical Center ("Tufts MC"), is a not-for-profit medical institution with its principle place of business in Massachusetts.  Tufts MC is the current employer of Dr. Junghans, and the former boss of Dr. Junghans, or Andy Evens DO, previously accepted a charitable gift in the form of a $2,000,000 contribution in 2015 from the Chan Soon-Shiong Family Foundation, or the foundation of Patrick Soon-Shiong, a SRNE investor and collaborator via the various entities encompassed within his Nantworks umbrella corporation.[2] Although no longer at Tufts MC as of February 2018, said $2,000,000 charitable gift supported Dr. Evens in his role as the Chan Soon-Shiong Endowed Scholar in Precision Medicine at Tufts MC.

18.     Defendant 6, or Prospect Chartercare Roger Williams Medical Center LLC ("RWMC"), which may also do business as Roger Williams Medical Center, hereinafter "RWMC," is a for-profit medical institution (formerly not for-profit) with its principle place of business at 825 Chalkstone Avenue, Providence, Rhode Island, 02908.  Through its licensing agreements and royalties, RWMC derives substantial income.

19.   Defendant 7, or Henry Ji, PhD ("Dr. Ji"), is the Chairman, President and CEO of SRNE. From December 29, 2014 until December 31, 2015, Dr. Ji served on the Board of Directors of Nantkwest, Inc., one of the Nantworks entities of Dr. Patrick Soon-Shiong, a major SRNE investor; Dr. Ji officially resigned from the Nantkwest, Inc. Board of Directors on October 25, 2015 (effective December 31, 2015).

20.   Defendant 8, or Richard Paul Junghans, PhD, MD ("Dr. Junghans"), is an employee of Tufts MC.

21.   Defendant 9, or Steven C. Katz ("Dr. Katz"), is an employee of RWMC.

22.   Defendant 10 is the Board of Directors ("the Board") of SRNE.

### III.   JURISDICTION AND VENUE

23.   This action arises under the federal statutes including the Sherman Act (15 United States Code ("USC") § § 1-7), the Clayton Act (15 USC § § 12-27), the Copyright Act (17 USC § 101 et seq.), the Defend Trade Secrets Act of 2016, and the Uniform Trade Secrets Act (as adopted under applicable state law, *e.g.,* California Civil Code §§ 3426 - 3426.11). SES and Siegler, the CEO/Owner of SES acting in her official capacity, bring this action pursuant to § 4 of the Clayton Act, 28 USC § 1338(a), and 28 USC § 1338(b). The court has both subject matter

and personal jurisdiction to hear the present action under federal statutes that include the following — 17 USC § 510(b), 18 USC § 1836(b), 28 USC § 1331, 28 USC § 1332, 28 USC § 1337, and 28 USC § 1367.  The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 USC § 1332 and 28 USC § 1337.  Treble damages and costs are sought under § 4 of the Clayton Act, and injunctive relief against incurred and/or threatened loss or damage stemming from the unlawful conduct of the defendants is sought under § 16 of the Clayton Act (15 USC § 15).

24.     The Venue of this action is proper in this District under § 12 of the Clayton Act (15 USC § 22), § 22 of the Sherman Act, 28 USC § 1391, and 28 USC § 1400.

25.     SES is an Ohio based WOSB, and the CEO/Owner of SES, or Siegler, resides in the state of Ohio.  Dr. Junghans has a residence of the state of Massachusetts, and Dr. Katz resides in Rhode Island.  Dr. Ji resides within this District. Tufts MC is located in Massachusetts, and RWMC is located in Rhode Island.  SRNE, a Delaware corporation, is headquartered in San Diego, California, transacts business within this district, and may be found within this district.  SRNE and/or its subsidiary TNK may have met with and solicited prospective investors in this District.  Relevant offers, agreements, contractual negotiations, sales of securities

and/or assets, and/or licensing of assets with related wire transfers may have taken place in this District; relevant acquisitions with related wire transfers and/or the exchange of monies via means other than non-wire transfers may have taken place in this District.

26.     The May 2013 SRNE *RESTATED CERTIFICATE OF INCORPORATION* does not include a forum selection clause, and the pending proposed amendment to the *RESTATED CERTIFICATE OF INCORPORATION* does not involve the addition of any such forum selection clause.

## IV.     BACKGROUND

27.     *Creation of BDL and its Acquisition by TNK via the SPA*.  As was previously set forth herein, Dr. Junghans created BDL, a shell corporation, for the sole purposes of misappropriating and infringing the IP of SES as well constructs to which SES had the right to first refusal by way of a SPA executed on August 7, 2015 with TNK, the wholly owned subsidiary of SRNE.  BDL became a subsidiary of SRNE following the execution of the SPA with BDL on August 7, 2015, which was announced via a Press Release dated August 10, 2015 (*i.e.,* Press Release 122581). Dr. Junghans and SRNE attempted to fraudulently conceal the deal from SES by not incorporating the names of Dr. Junghans and/or Tufts MC in the

aforementioned Press Release 122581; although BDL was mentioned in the August

10, 2015 SRNE Press Release, Dr. Junghans never directly informed SES and/or

Siegler of its creation prior to its creation and/or prior to the execution of the SPA

on August 7, 2015.  SRNE and TNK enticed Dr. Junghans to misappropriate and/or

infringe the IP of SES via a $6,000,000 payment in the form of stock as part of the

SPA.

| Document | Execution Date | Link to Document in SEC Edgar |
|---|---|---|
| SPA | August 7, 2015 | https://www.sec.gov/Archives/edgar/data/850261/000156459015010747/srne-ex102_151.htm |
| SPA Amendment 1 | March 7, 2016 | https://www.sec.gov/Archives/edgar/data/850261/000156459016028583/srne-ex106_713.htm |
| SPA Amendment 2 | September 14, 2016 | https://www.sec.gov/Archives/edgar/data/850261/000156459017004944/srne-ex1033_684.htm |
| SPA Amendment 3 | March 14, 2017 | https://www.sec.gov/Archives/edgar/data/850261/000156459017011020/srne-ex104_473.htm |

Table 1.  Overview of the SPA as amended, executed by SRNE subsidiary TNK and BDL.

28.     SES first learned of a potential IP conflict from Susan Blanchard ("Blanchard")

at Tufts MC via an email correspondence received by SES on August 25, 2015,

which was after the August 7, 2015 execution of the BDL SPA as per the foregoing

Table 1.  Said email, which was a response to an email SES had sent to Blanchard

at the request of Dr. Junghans regarding one of the grant applications SES had

planned on submitting to NIH as part of its collaboration with Dr. Junghans and the

research institutions associated with Dr. Junghans, or Tufts MC and RWMC,

included the first real indication that the planned collaboration of SES, Dr.

Junghans, and Tufts MC was not going to move forward. That is, the August 25, 2015 email of Blanchard stated, in pertinent part, that "[w]e are in need of Dick Junghans updating some COI information prior to allowing the grant to move forward." The restrictive covenant provisions were sent to SES via email by Dr. Junghans on August 27, 2015. In said August 27, 2015 email, Dr. Junghans included the following two points in said August 27, 2015 email— "i/tufts can not help a competitor" and "i/tufts can continue to do my own 'research' including collaborations."

29.     SES ultimately allowed Dr. Junghans to take the idea of potentially collaborating on one its grant applications to SRNE by way of Dr. Ji. SES was told that it would have to execute a non disclosure agreement with SRNE, which had not been identified at that time, and that SES had to allow SRNE to submit the grant application on its behalf, which is not allowed for that particular grant application. Specifically, Dr. Junghans stated the following, in pertinent part, to SES and Siegler in an email correspondence on September 1, 2015,"

> the ceo is okay with you submitting grant, just that he gets right of first refusal. they will also have access to our data as we develop them. he understands the work will be done in my lab but that you and i will collaborate as outlined in the proposal. he will review tonight adn then tomorrwo you sign a mutual cda with the company, which will be revealed at that time. it is not big pharma, but

medium biotech. so i dont thinkyour sensitbilities will be offended. if you live with these conditions, we will proceed.

the right of first refusal will be between you and the ceo in a side letter. then he will issue waiver letter to tufts medical center and they can release the grant appl to the NIH.

SES ultimately terminated its relationship with Dr. Junghans following an internal investigation that revealed the identity of the unnamed company that executed an anticompetitive contractual arrangement with Dr. Junghans by way of Dr. Junghans' shell company, or BDL, was SRNE and/or its subsidiary TNK.

30.     SRNE and TNK enticed Dr. Junghans, RWMC, and/or Tufts MC to misappropriate and/or infringe the IP of SES and to enter into an anticompetitive contractual agreement using financial incentives that included a $6,000,000.00 payment in the form of stock (subject to adjustment in certain circumstances) and a $100.00 cash payment.  Quoting the SRNE derivative litigation, or *Williams v. Ji, et al.*, 12729-VCMR (Del. Ch. June 28, 2017), which was recently settled for $3.25M and for which the settlement amount will be paid by the insurance company of SRNE, both the SPA and the MIPA "provide that if TNK does not complete a financing of at least $50 million or an initial public offering before certain deadlines … the original owners of CARgenix and BDL will become entitled to

receive Sorrento common stock."[3]  As of late June 2018, TNK abandoned its plan

initial public offering ("IPO").  SRNE also incentivized Dr. Junghans, RWMC, and/

or Tufts MC to misappropriate and/or infringe the IP of SES and to enter into a

contractual agreement containing anticompetitive restrictive covenants by granting

to him excessive reverse indemnification.

31.     Other financial incentives the benefited Dr. Junghans and Tufts MC included a

$129,000.00 Sponsored Research Agreement SRNE executed with Tufts MC, with

Dr. Junghans as the Principal Investigator, that was reported by Tufts MC in its

research grants and contracts awarded within the divisions and institutes of the

Department of Medicine, reporting for the second quarter of fiscal year 2017.

32.     *Creation of CARgenix and its Acquisition by TNK via the MIPA*.  CARgenix was

established in order to function as a shell corporation and was acquired by TNK,

the SRNE subsidiary, on August 7, 2015 via the execution of the MIPA as per Table

2.  The execution of the BDL SPA was contingent upon the closing of the

CARgenix acquisition via the MIPA, and § 5.8 of the MIPA titled *Execution of*

*Exclusive License Agreements* incorporates the IL13 CAR, the c-KIT CAR, and the

HIV CAR as set forth in the aforementioned **Exhibit 3**, or the patents and patent

applications of Dr. Junghans, *et al*.

| Document | Execution Date | Link to Document in SEC Edgar |
|---|---|---|
| MIPA | August 7, 2015 | https://www.sec.gov/Archives/edgar/data/850261/000156459015010747/srne-ex101_150.htm |
| MIPA Amendment 1 | March 7, 2016 | https://www.sec.gov/Archives/edgar/data/850261/000156459016028583/srne-ex105_469.htm |

**Table 2. Overview of the MIPA between CARgenix and SRNE subsidiary TNK.**

33.    SRNE and TNK enticed CARgenix and/or RWMC to enter into the MIPA using financial incentives that included a $6,000,000.00 payment in the form of stock (subject to adjustment in certain circumstances) and a $100.00 cash payment. SRNE further incentivized CARgenix and/or RWMC to misappropriate and/or infringe the IP of SES and to enter into an anticompetitive contractual agreement by granting to it excessive reverse indemnification.

34.    Although executed by CARgenix Holdings LLC, the MIPA included a provision, or § 5.9, requiring "CARgenix, Inc." to be dissolved within thirty days of the closing date. Following the August 7, 2015 execution of the MIPA, on November 17, 2015, the Rhode Island SOS registration of CARgenix was amended to reflect the MIPA in that the mailing address was changed to the address of SRNE (at the time of the filing), and the contact person on the filing was changed to Dr. Ji of SRNE and TNK, by SRNE employee George Ng as per SOS filing identifier 201587950120.

35.    _Agreement Between SRNE and RWMC._  For background purposes, SES had

already made plans to utilize the same current Good Manufacturing Practice

("cGMP") facility at RWMC as part of its planned collaboration with Dr. Junghans.

In April 2016, SRNE and TNK entered into an Immunotherapy Research

Collaboration Agreement ("IRCA") with RWMC, which afforded SRNE the

opportunity to use the cGMP manufacturing facility, as part of the agreement that

covered "pre-clinical and clinical research related to the development and delivery

of CAR-T immunotherapies."[4] [1]  SES was and is barred from pursuing the

collaboration and/or from otherwise working with Dr. Junghans and/or Tufts MC to

develop its IP as well as his other CAR T cell constructs via the "restrictive

covenants" included in the contractual agreements executed by SRNE and TNK

relative to the BDL, CARgenix, and RWMC deals.  SRNE and TNK enticed

RWMC to enter into this agreement, leaving SES without a cGMP facility to

manufacture clinical grade investigational products for use in the pre-approval

phases of the product development lifecycle, via financial means that included a

$6,000,000.00 payment in the form of stock as was previously set forth herein.

SRNE and its subsidiary TNK further incentivized RWMC to misappropriate and/

or infringe the IP of SES and/or to enter into an anticompetitive contractual

agreement by granting to it excessive reverse indemnification.

| Event | Date | URL |
|---|---|---|
| IRCA | April 2016 | http://sorrentotherapeutics.com/wp-content/uploads/2017/03/SRNE-FY16-10KA-V03-27-17-1050AM-AS-FILED.pdf |
| IRCA Exentsion | January 2018 | http://investors.sorrentotherapeutics.com/news-releases/news-release-details/sorrento-therapeutics-car-t-manufacturing-capacity-expanded |

Table 3. Overview of the IRCA, as extended, between CARgenix and SRNE subsidiary TNK.

36.     The aforementioned IRCA between SRNE's TNK and RWMC was extended in

January of 2018, and said extension that was described as an "exclusive agreement

to operate the 'Cellular Immunotherapy and Gene Therapy Facility' at Roger

Williams Medical Center (Providence, RI) under Sorrento management."[5]  The

cGMP facility at RWMC is currently listed on the SRNE website as one of its two

manufacturing sites and has been incorporated by SRNE into many of its recent

investor slide decks (*i.e.,* corporate presentations).

37.     *RWMC Patent Application US 15/210,818.* After the creation of the IP of SES

by Siegler— with the best editions registered as TXu001998310 and

TXu001998311 — provisional patent applications were filed with the USPTO

including those that were later replaced by patent application 15/210,818 ("the '818

application") on the 2nd generation, retrovirally transduced anti-CEA CAR T cell

construct that was the subject of the registered anti-CEA CAR T cell IP of SES.

The applicant for the '818 application and the underlying provisional applications is RWMC, and the inventors listed on the '818 application and underlying provisional are Dr. Junghans and Dr. Katz.  For background purposes, Dr. Junghans had previously filed and abandoned a patent application on the 2nd generation, retrovirally transduced anti-CEA CAR T cell construct that was docketed as US 10/006,771 (*i.e.*, patent application publication number US20020165360 A1) in 2002 and 2006, respectively.  See the aforementioned **Exhibit 3**.

38.     Despite Dr. Junghans' direct knowledge of the IP of SES, including TXu001998310, Dr. Junghans failed to disclose IP of SES was in the applicable disclosure statements and/or in the January 16, 2018 Affidavit-Rule 130(a) filed with the USPTO as part of the 15/210,818 application, which was reckless on his behalf.  Moreover, while the specifications filed on July 14, 2016 mention the HITM clinical trial (*i.e.*, NCT01373047) and the HITM-SIR clinical trial (*i.e.*, NCT02416466), the following earlier trials with anti-CEA CAR T cells of Dr. Junghans were omitted — NCT01723306, NCT00673322, NCT00429078, and NCT00004178.

39.     The '818 application claims were all initially denied by USPTO as per the non-final rejection.  Following the entry of the aforementioned January 16, 2018

Affidavit-Rule 130(a) — in which Dr. Junghans and Dr. Katz swore that one of two relevant Point *et al.* 2015 abstracts that served as prior art constitute work that was conducted in their lab — and the subsequent January 16, 2018 applicant arguments/ remarks made in an amendment filing, USPTO denied all of the 15/210,818 claims per its March 9, 2018 final rejection. Following an April 26, 2018 after final consideration program request and a subsequent April 26, 2018 applicant arguments/remarks made in an amendment filing, USPTO mistakenly reversed its non-final and final decision to deny all claims via its May 8, 2018 after final consideration program decision filing. Furthermore, the prior art searches conducted by USPTO for the '818 application failed to identify a plethora of prior art and/or documents to establish obviousness, and there was no indication that the patent examiner ever performed a single query in the US Copyright Catalog that would have identified the relevant IP of SES.

40.    Siegler sent emails to the USPTO following the entry of the May 8, 2018 notice of allowance and fees due filing to inform USPTO of the following — the filing of the '818 application (and the underlying provisional patent applications for which the priority data are preceded by the IP of SES) likely constituted IP infringement, and the '818 application is obvious over the IP of SES in addition the list of

documents that constitute prior art or establish obviousness that were provided to USPTO in an email sent on June 17, 2018.  The June 26, 2018 letter sent via email to SES from USPTO follows as **Exhibit 4** and is incorporated here for reference.

41.     In the event that the USPTO moves forward with the granting of claims 1-10 and claim 12 of the '818 application, SES and Siegler will incur further injury if this Court does not grant the relief requested as part of the present action relative to the '818 application.  The filing of an administrative procedure with USPTO is not without cost and would add to workload of Siegler, and the window for third party submissions and/or third party protests under 35 USC § 122 for the '818 application lapsed.  In the interest of preserving federal resources, SES and Siegler incorporated herein the relevant claims surrounding the pending patent for the '818 application but reserves the right to seek additional re-examination procedures via USPTO, where applicable, following the conclusion of the present action (including appeals).

42.     _RWMC Patent Application 15/099,370_.  After the creation of the IP of SES by Siegler— with the best editions registered as TXu001998310 and TXu001998311 — a provisional patent application was filed with the USPTO and later replaced by patent application 15/099,370 ("the '370 application") on the 2nd generation,

retrovirally transduced anti-CEA CAR T cell construct that was the subject of

TXu001998311. The applicant for the '370 application and the underlying

provisional applications is RWMC, and the inventors listed on the '370 application

and underlying provisional are Dr. Junghans and Dr. Katz. Dr. Junghans had

previously abandoned a patent application on the 2nd generation, retrovirally

transduced anti-CEA CAR T cell construct filed in 2002 that was docketed as US

10/006,771 (*i.e.,* patent application publication number US20020165360 A1) that

was acknowledged by the patent examiner assigned to the '370 application in the

USPTO *Final Rejection* letter dated July 2, 2018.

43.     As per the aforementioned July 2, 2018 *Final Rejection* letter for the '370

application, claims 1-5, 7-13, and 15-20 of the '370 application were rejected by

USPTO pursuant to 35 USC § 103, and claims 6 and 14 of the '370 application

were objected to as dependent upon rejected claims under 35 USC § 103.

44.     The claims of the '370 application are obvious over the IP of SES in addition to

a a plethora of prior art and/or documents to establish obviousness as are set forth

in further detail herein. In the event that the USPTO moves forward with the

granting of any of the claims incorporated into '370 application following the reply

to the July 2, 2018 *Final Rejection* letter, SES and Siegler will incur further injury

if this Court does not grant the relief requested as part of the present action relative to said '370 application.

45.     *The HITM-SURE Clinical Trial*.  For background purposes, the patent application filed by Dr. Junghans on the 2nd generation anti-CEA CAR T cell construct in 2002, or US 10/006,771, was abandoned in 2006.  Despite the fact that the IP of SES that is now registered as TXu001998310 and TXu001998311 had already been created, new priority data and ultimately patent applications were filed by RWMC on the direct, or regional, route of administration ("ROA") of the anti-CEA CAR T cells known as hepatic arterial infusion ("HAI"), *i.e.,* US application 15/099,370, which was rejected on July 2, 2018, and national stage entry PCT/2016/027582).  Similarly, RWMC filed a patent application on methods and composition for treating peritoneal cancers that incorporated anti-CEA CAR T cells, *i.e.,* US 15/210,818 as is set forth in further detail herein.[6]

46.     Despite not having obtained a license from SES to TXu001998310 and/or TXu001998311, a substantially similar Phase 1b clinical trial utilizing the 2nd generation anti-CEA CAR T cells titled *CAR-T Hepatic Artery Infusions or Pancreatic Venous Infusions for CEA-Expressing Liver Metastases or Pancreas Cancer* (formerly titled *CAR-T Hepatic Artery Infusions for CEA-Expressing Liver*

*Metastases*) ("HITM-SURE") was registered to clinicaltrials.gov as National

Library of Medicine ("NLM") identifier NCT02850536 on July 14, 2016.  See

Table 4.  The clinicaltiral.gov page lists RWMC as the sponsor of the SRNE

HITM-SURE trial and the University of Colorado Denver as a collaborator.  On

November 15, 2016, HITM-SURE collaborator Surefire Medical, Inc. ("Surefire")

received a $150,000.00 grant award from the Colorado Office of Economic

Development & International Trade ("OEDIT") to support said trial.

| Trial Acronym | NLM Identifier | Other Identifier(s) | Brief Trial Title | Incorporated into SRNE Investor Materials? |
|---|---|---|---|---|
| HITM | NCT01373047 | RWH* 335-99 (RWH* 11-335-99)) | CEA-Expressing Liver Metastases Safety Study of Intrahepatic Infusions of Anti-CEA Designer T Cells (HITM) | Yes, *e.g.*, January 2016 Corporate Presentation slide 45, April 2018 Corporate Presentation slide 27 |
| HITM-SIR | NCT02416466 | RWMC 383-74 | CAR-T Hepatic Artery Infusions and Sir-Spheres for Liver Metastases (HITM-SIR) | Yes, *e.g.*, SRNE March 5, 2018 Press Release |
| HITM-SURE | NCT02850536 | RWMC 350-74; COMIRB 16-0634; PRMS 16-86 | CAR-T Hepatic Artery Infusions or Pancreatic Venous Infusions for CEA-Expressing Liver Metastases or Pancreas Cancer (HITM-SURE) | Yes *e.g.*, April 2018 Corporate Presentation slide 28, July 2018 Corporate Presentation slide 14 |

\*Prior to being bought out by Prospect Medical Holdings, Prospect Chartercare RWMC LLC, formerly RWMC, was called Roger Williams Hospital ("RWH").
The hepatic arterial infusion patent application filed by RWMC, or US 15/099,370, was rejected by the USPTO on July 2, 2018.

**Table 4.  The HITM, HITM-SIR, and HITM-SURE Clinical Trials.**

According to the November 15, 2016 Press Release from Surefire, the HITM-

SURE trial was to "investigate the use of the Surefire® Precision Infusion System

to deliver chimeric antigen receptor T-cells (CAR-T) directly to liver metastases."

The clinicaltrials.gov page for HITM-SURE, or NCT02850536, indicates that the

trial is a study of a US Food and Drug Administration ("FDA")-regulated product

(i.e., CAR T cells) but is not a study of a FDA-regulated device product with regard

to the aforementioned Surefire ® Precision Infusion System.

47.     Although the name of SRNE does not appear as part of the <u>clinicaltrials.gov</u>

registration for the HITM-SURE trial, SRNE has and continues to incorporate the

HITM-SURE trial into investor materials including corporate presentations.  For

example, slides on the HITM-SURE trial were included in the July 2018 Corporate

Presentation of SRNE as slides 13 and 14.   Further, TNK funding was disclosed

by RWMC on its webpage for Immunotherapy Research and Development as of

April 2, 2016 as was funding fro HITM-SIR collaborator SirTex and HITM-SURE

collaborator Surefire.

48.     SRNE incentivized RWMC and Dr. Katz to misappropriate and/or infringe the

anti-CEA CAR T cell IP of SES, *i.e.*,  TXu001998311 *(Phase 1b/2 Study of [2nd*

*Generation] Anti-CEA Designer CAR T Cells in Breast Cancer)* and

TXu001998311 *(In Vivo Testing of 3rd Generation Anti-CEA Designer CAR T Cells*

*with Bcl-xL in Pancreatic Cancer),* via the Phase 1b Trial of [2nd Generation] Anti-

CEA Designer CAR T Cells in Liver Metastases or Pancreatic Cancer, *i.e.,* HITM-

SURE, and to enter into anticompetitive contractual agreements as is set forth in

further detail herein by granting to them excessive reverse indemnification.

49.     *The T-001 Investigational New Drug*.  Despite not having obtained a license from SES to its anti-CEA CAR T cell IP, an anti-CEA CAR T cell based investigational new drug ("IND") denoted T-001 ("T-001") has previously appeared on the pipeline of SRNE.  For example, the T-001 anti-CEA CAR T cell IND of SRNE was incorporated into slide eleven of the SRNE September 2016 Corporate Presentation.  At least four SRNE corporate presentations that incorporate the anti-CEA CAR T cell construct were filed as part of Securities and Exchange Commission ("SEC") filings — the August 2015 Corporate Presentation (slide 4, slide 26, slide 30), the October 2015 Corporate Presentation (slides 14 and 34), the January 2016 Corporate Presentation (slides 15 and 45), and the December 2017 Corporate Presentation (slide 27).

50.     In order to incorporate the previously submitted data of Dr. Junghans on his IND on the 2nd generation anti-CEA CAR T cell construct into a new or post-technology transfer IND submission, a letter of authorization ("LOA") is required as per the Code of Federal Regulations that govern INDs.  SES will no longer be granted a LOA from Dr. Junghans as a result of the anticompetitive dealings and agreements executed by and amongst the defendants.

51.     Upon information and belief, SRNE will continue to pursue the development of

the T-001 IND (or the equivalent academic IND).  For example, the SRNE

Corporate Presentation from the March 13, 2017 29th Annual ROTH conference

included as a near term milestone plans to "[i]ntiate Phase II CEA CAR-T trial."

The "Anti-CEA CAR-T" product candidate was included as one of five clinical

product candidates in the most recent corporate presentation of SRNE, or the July

2018 Corporate Presentation.  SRNE has continuously included on its CAR T cell

product candidate pipeline the anti-CEA CAR T cell candidate for which the IP of

SES was not legally licensed to SRNE and/or to any of the defendants in the

present action beginning with its August 2015 Corporate Presentation, a

presentation which was filed with the SEC as part of Form 8-K on October 28,

2015.

52.     _Tufts MC Provisional Patent Application US 62/362,825_.  On July 15, 2016,

Tufts MC filed a provisional patent application with the USPTO titled

_"Compositions and Methods for Improving Immune Cell Function"_ that was

docketed as application US 62/362,825 ("the '825 priority data").  The national

stage entry for the '825 priority data is PCT/US17/42147 ("the '147 application).

The '825 priority data and the '147 application encompasses 2nd generation anti-

CEA CAR T cells with YY1 or EZH2 inhibition, the YY1 and EZH2 inhibition are incorporated therein for the purposes of potentially mitigating and/or eliminating the exhaustion of the adoptively transferred CAR T cells. The '825 priority data are now expired, and the '825 priority data can not be queried into the USPTO PAIR database as of 11 July 2018.

53.     SES did not license said IP to Tufts MC and/or Dr. Junghans, the principal inventor, prior to the filing of the '825 priority data. Both Tufts MC and Dr. Junghans had direct knowledge of the IP of SES prior to the filing data for the '825 priority data.

54.     *The June 2016 Shenyang Sunshine Pharmaceutical Company Ltd ("3SBio") Joint Venture ("JV") in China and SPA.*  In June of 2016, SRNE entered into a JV Agreement with 3SBio to develop and commercialize the anti-CEA CAR T constructs for which the underlying IP is the exclusive property of SES (prior to the granting of the pending '818 application as is set forth in further detail herein) in addition to two additional CAR T cell product candidates.

55.     The JV, which is detailed in Table 5, was announced by SRNE in a June 7, 2017 Press Release (*i.e.*, Press Release 122602).

| Document | Execution Date | Link to Document in SEC Edgar or Other URL |
|---|---|---|
| JV Agreement (Legally Binding Term Sheet) | June 6, 2016 | https://www.sec.gov/Archives/edgar/data/850261/000119312516615335/d209078d8k.htm |
| Securities Purchase Agreement | June 6, 2016 | http://139.162.30.136/hkex/3sbio/docs/en/LTN20160607167.pdf |

**Table 5. Overview of the JV Agreement and SPA between 3SBio and SRNE subsidiary TNK**

56.     In return for misappropriating and illegally executing — as part of the JV — an

exclusive license to the anti-CEA CAR T cell IP to which SRNE lacks rights as part

of the JV Agreement covering the Greater China market, including Mainland

China, Hong Kong, and Macau, SRNE received a $10,000,000.00 JV contribution

payment from 3SBio,  Said payment encompasses some of the damages incurred

by SES and its CEO/Owner as a result of the conduct of the (applicable)

defendants.  The anti-CEA CAR T cell IP, including the copyrights that are

registered to SES, may only be and may only have been legally licensed to a third

party by SES.

57.     In return for misappropriating and illegally executing an exclusive license to

the anti-CEA CAR T cell IP to which SRNE lacks rights, 3SBio entered into a

Securities Purchase Agreement with SRNE on June 6, 2016 to purchase stock for

an aggregate price of $10,000,000.00.

58.     *SRNE/TNK and Celularity*.  In November of 2016 and in the years following,

SRNE subsidiary TNK entered into contractual agreements with Celularity that

involved the licensure of the CAR T constructs that are claimed to be owned (via

in-licensing) by TNK via the BDL and CARgenix transactions previously detailed

herein.  Although all 53 constructs that constitute the materials that Celularity

licensed from TNK were redacted in SEC filings (*i.e.*, Exhibit A ("Licensed TNK

Material") to the License and Transfer Agreement), it is highly likely that the

constructs include the anti-CEA CAR T cell constructs for which IP was created by

SES *circa* 2013.

| Document | Execution Date | Link to Document in SEC Edgar |
|---|---|---|
| Material Definitive Agreement - Promissory Note | November 1, 2016 | https://www.sec.gov/Archives/edgar/data/850261/000119312516754972/d283651d8k.htm |
| Non-binding Term Sheet | November 1, 2016 | https://www.sec.gov/Archives/edgar/data/850261/000119312516754972/d283651d8k.htm |
| Contribution Agreement (Form 10Q) | June 12, 2017 | https://www.sec.gov/Archives/edgar/data/850261/000085026117000004/ex104.htm |
| Amendment 1 to Promissory Note | June 12, 2017 | https://www.sec.gov/Archives/edgar/data/850261/000085026117000004/ex105.htm |
| Amendment 1 to Contribution Agreement | June 30, 2017 | https://www.sec.gov/Archives/edgar/data/850261/000085026117000004/ex106.htm |
| Amendment 2 to Promissory Note | June 30, 2017 | https://www.sec.gov/Archives/edgar/data/850261/000085026117000004/ex107.htm |
| Amendment 2 to Contribution Agreement | August 10, 2017 | https://www.sec.gov/Archives/edgar/data/850261/000085026117000007/exhibit102.htm |
| License and Transfer Agreement | August 15, 2017 | https://www.sec.gov/Archives/edgar/data/850261/000085026117000007/exhibit101.htm |

**Table 6. Overview of the contractual agreements between SRNE subsidiary TNK and Celularity.**

59.      SES sought confirmation of the unidentified constructs from the CEO of

Celularity, Robert Hariri, MD ("Dr. Hariri"), but the responses received by SES

from Dr. Hariri left Siegler unconvinced.  The discovery process as part of the

present case will resolve whether or not the contractual agreements executed by

TNK and Celularity constitute infringement activities relative to TXu001998310 and/or TXu001998311.

60.    *Virttu Biologics ("Virttu") Acquisition by SRNE via TNK.*  For background purposes, included in each of the works of SES that are registered as TXu001998310 and TXu001998311 were research plan documents that included an alternative strategies section outlining methods to improve the efficacy and/or safety of the investigational anti-CEA CAR T cell products.   The alternative strategies section of the *Research Strategy* component of TXu001998311 includes but is not limited to the use of an alternative vector (as is now planned by SES), alternate methods of administration, the use of alternative co-stimulatory signal(s), and/or the use of a different tumor associated antigen (*e.g.,* the anti-ior C2 CAR T cells for which SES has registered IP).  Said alternative strategies constitute potential derivative work(s) and/or work(s) that would be substantially similar to the investigational CAR T cell products targeting the CEA tumor associated antigen that are incorporated into both TXu001998310 and TXu001998311.

61.    Despite not having obtained a license from SES for the (investigational) anti-CEA CAR T cells that were the subject of the work products that are now registered as TXu001998310 and TXu001998311, on November 15, 2016, SRNE

subsidiary TNK executed a binding term sheet to acquire Virttu Biologics, a

company based in Scotland that was developing oncolytic viral therapies, in order

to research, develop, and ultimately commercialize a CAR T cell and oncolytic

virus combination based therapeutic. The deal included a $5,000,000.00 payment

in the form of common stock.

62. *Notifications*. A variety of reporting actions covering the infringement and anti-

competitive actions of the defendants were undertaken by SES throughout the end

of 2015 (*i.e.*, August of 2015 through December of 2015).

63. A variety of notifications covering the infringement and anti-competitive

activities have been sent out by SES and Siegler to defendants prior to the filing of

the present action. Said notifications include cease and desist letters that were sent

out via electronic email, with hard copies deposited for mailing by the United

States Postal Service ("USPS") via USPS certified mail, the latter of which are

outlined in the table that follows as Table 7.

| Date Sent | Recipient (Address) | USPS Certified Mail Number | Cost | Delivery Status |
|---|---|---|---|---|
| 27 October 2015 | Karen Geremia (Prospect Chartercare RWMC, LLC, 895 Chalkstone Avenue, Providence RI 02908) | 9507 1000 0348 5300 0005 19 | $4.65 | Delivered November 4, 2015, 8:50 am |
| 27 October 2015 | Susan Blanchard, BBA (Tufts Medical Center, 800 Washington Street, Boston MA 02111) | 9507 1000 0348 5300 0005 02 | $4.65 | Delivered November 2, 2015, 9:27 am |
| 27 October 2015 | Sorrento Therapeutics, Inc. (9380 Judicial Drive, San Diego CA 92121)* | 9507 1000 0348 5300 0004 96 | $4.65 | DELIVERY FAILURE — USPS Case HQ136635419 |
| 27 October 2015 | TNK Therapeutics (9380 Judicial Drive, San Diego CA 92121)* | 9507 1000 0348 5300 0004 89 | $4.65 | DELIVERY FAILURE — USPS Case HQ136635567 |
| 27 October 2015 | Richard Paul Junghans (Tufts Medical Center, Tupper Bldg., 4th Floor, 15 Kneeland Street, Boston MA 02111) | 9507 1000 0348 5300 0004 72 | $4.65 | Delivered November 2, 2015, 9:27 am |
| 27 October 2015 | [Richard Paul Junghans' IP Lawyer] Paul Clark (Clark+Elbing LLP, 101 Federal Street, 15th Floor, Boston MA 02110-1800) | 9507 1000 0348 5300 0005 26 | $4.65 | Delivered November 2, 2015, 1:03 pm |
| 29 October 2015 | Michael Wagner, President and CEO (Tufts Medical Center, 800 Washington Street #212, Boston MA 02111) | 9507 1000 0344 5302 0000 23 | $4.65 | Delivered November 2, 2015, 9:27 am |
| 31 October 2015 | Sorrento Therapeutics (Sorrento Therapeutics, 6042 Cornerstone Ct. West, Suite B, San Diego, CA 92121 | 9507 1000 0348 5304 0002 01 | $4.87 | Delivered November 16, 2015, 12:05 pm — USPS Case HQ136635719 [found proof of delivery after case was submitted] |

*Address of recipient has since changed as was indicated in the online inquiries submitted on January 28, 2018. The new address for both 9507 1000 0348 5300 0004 96 and 9507 1000 0348 5300 0004 89 is as follows: 4955 Directors Place, San Diego, CA 92121.

Table 7. Cease and Desist Letters (Hard Copies) Sent Via USPS Certified Mail by SES.

64.    SES received a response to its cease and desist correspondences from a (former) attorney of SRNE, or David Conca ("Mr. Conca") of Paul Hastings, which was dated November 10, 2015, by way of UPS (tracking number 1Z A6T 163 01 9843 0273) that is attached as the aforementioned **Exhibit 5**. As of June 2018, Mr. Conca is no longer listed as an employee of Paul Hastings per the Paul Hastings website, but the Paul Hastings firms continues to do business with SRNE.

65.    On November 10, 2015, SES submitted a complaint referral form via the Internet Crime Complaint Center online portal (https://complaint.ic3.gov/

default.aspx) that was docketed as Complaint ID I1511102208460291 per the November 10, 2015 confirmation email from no-reply@ic3.gov. As of July 13, 2018, SES was unable to log-in to the IC3 site to update Complaint ID I1511102208460291 as the uniform resource locator ("URL") provided in the November 10, 2015 confirmation email from no-reply@ic3.gov, or https://complaint.ic3.gov/update, automatically re-directs to the complaint filing portal, or https://complaint.ic3.gov/default.aspx. Additionally, there is no log-in page/option on the ic3.gov website or at its complaint filing portal (i.e., https://complaint.ic3.gov/default.aspx), but SES was provided with both the Complaint ID I1511102208460291 and a login password within said November 10, 2015 confirmation email from no-reply@ic3.gov.

66.    A cease and desist email was sent by SES to Dr. Katz, Surefire Medical, University of Colorado Denver ("UC Denver") (Richard Schulick) et al. (with carbon copies to Dr. Junghans, Tufts MC (Susan Blanchard and Fred Frankhauser), RWMC (Karen Geremia), SRNE, TNK, et al.) on April 25, 2017 regarding the HITM-SURE clinical trial that was first posted to clinicaltrials.gov, as is legally required, on July 14, 2016, and the OEDIT grant awarded to UC Denver the to test the device being developed by Surefire Medical as part of the trial.

67.     SES sent an email to the remaining lawyers at Paul Hastings who are associated with SRNE on May 14, 2018 in light of the departure of David Conca, or the author of Exhibit 5, to inquire about the representation for SRNE in the present action, which was forthcoming at the time.  Said email was sent to Samantha Eldredge, Jeff Hartlin, Todd Schwartz, and Edward Chu (with carbon copies to Dr. Junghans, Dr. Ji, RWMC (Karen Geremia), Tufts MC (Susan Blanchard, Danielle Riggs, Fred Frankhauser, Michael Wagner, Terry Hudson-Jinks (co-interim President and CEO)), SRNE (George Ng, clinical trials email address, investors email address), Paul Clark (Dr. Junghans' lawyer), et al.), but said email went unanswered.

## V.    OPERATIVE FACTS/FACTUAL ALLEGATIONS

### A. Conversion of IP

68.     SRNE, by way of its wholly owned subsidiary TNK, has included the anti-CEA CAR T cell construct, for which the only IP that exists on that construct as of the filing date of this complaint is the exclusive property of SES, in its investor presentations to boost its value and to raise capital.  For example, the anti-CEA CAR T cell IND construct denoted T-001 was included in the September 2016 corporate presentation of TNK parent company SRNE as was previously set forth herein.

69.     Upon information and belief, SRNE and its subsidiary TNK licensed for its own economic benefit the anti-CEA CAR T cell constructs covered by TXu001998310, TXu001998311, and by trade secrets.

70.     Upon information and belief, Dr. Junghans, Dr. Katz, RWMC, and Tufts MC executed contractual agreements for their own economic benefit that included the pending patent and pending patent applications for which the IP of SES was infringed in order to generate the data for the patent application filings.

71.     Upon information and belief, SRNE and its subsidiary TNK in-licensed for its own economic benefit the pending patent and pending patent applications for which the IP of SES was infringed in order to generate the data for the patent application filings.

72.     Upon information and belief, SRNE and its subsidiary TNK licensed out for economic benefit the rights to three CAR T cell constructs, including the anti-CEA CAR T cells of SES, in the Greater China market, which includes Mainland China, Hong Kong, and Macau.

**B. IP Infringement**

73.     SRNE, by way of its wholly owned subsidiary TNK, has included the anti-CEA CAR T cell construct, for which the only IP that exists on that construct as of the

filing date of this complaint belongs exclusively to SES, in its investor presentations to boost its value in order to raise capital via both private and public offerings. As was previously set forth herein, the anti-CEA CAR T cell IND T-001 was included in the September 2016 corporate presentation of TNK parent company SRNE.

74.    Since the August 7, 2015 execution of the BDL SPA, CARgenix MIPA, and other relevant contractual agreements, work has been performed that is substantially similar to the aforementioned copyrights of SES, and said work constitutes infringement of the applicable copyrights and/or trade secrets of SES.

75.    Further, despite not having obtained a license from SES, following the August 7, 2015 execution of the BDL SPA, CARgenix MIPA, the 2nd generation anti-CEA CAR T cell construct covered by TXu001998311 and/or TXu001998310 has been used to generate data to support in the filing of new patent applications as set forth in Table 9 herein. See also **Exhibit 3**. The patent applications are filed for the purposes of tech transfer (of granted patents) to a commercial entity, such as SES or SRNE, for development and commercialization in order to generate licensing fees and royalties for the patent owners, which in this case are defendants RWMC and

Tufts MC, in addition to royalties to the inventors, which includes Dr. Junghans and Dr. Katz.

**C. Post August 7, 2015 Private and Public Offerings**

76.     Using the IP of SES to which it and no rights in addition to the constructs to which SES had right to first refusal, SRNE artificially boosted the valuation of the company and then profited from said artificial boost via public stock offerings as per Table 8.  For example, in April of 2017 the closing of a public offering of common SRNE stock generated $43,500,000.00 in net proceeds for SRNE.  As of its most recent corporate presentation of parent company SRNE, TNK continues to incorporate into its pipeline the anti-CEA CAR T cell construct that it has not licensed from SES and for which the IP of SES predates the priority data for the pending patent for the '818 application.

| **Filing** | **Offering** | **File Number** | **Link to Prospectus Filing in SEC Edgar** |
|---|---|---|---|
| Prospectus [Rule 424(b)(3)] filed 05-11-2018 | 1,381,345 Shares of Common Stock | 333-223857 | https://www.sec.gov/Archives/edgar/data/850261/000114420418027235/0001144204-18-027235-index.htm |
| Prospectus [Rule 424(b)(3)] filed 05-11-2018 | 34,159,775 Shares of Common Stock | 333-223856 | https://www.sec.gov/Archives/edgar/data/850261/000114420418027234/0001144204-18-027234-index.htm |
| Prospectus [Rule 424(b)(5)] filed 2017-12-06 | $100,000,000 Common Stock | 333-221443 | https://www.sec.gov/Archives/edgar/data/850261/000114420417062650/0001144204-17-062650-index.htm |
| Prospectus [Rule 424(b)(3)] filed 2017-10-12 | 754,930 Shares of Common Stock | 333-220822 | https://www.sec.gov/Archives/edgar/data/850261/000114420417052272/0001144204-17-052272-index.htm |
| Prospectus [Rule 424(b)(3)] filed 2017-07-17 | 797,081 Shares of Common Stock | 333-217673 | https://www.sec.gov/Archives/edgar/data/850261/000114420417037013/0001144204-17-037013-index.htm |
| Prospectus (Preliminary Prospectus Supplement) [Rule 424(b)(5)] filed 2017-04-12 | 23,625,084 Shares per Prospectus Supplement filed 2017-04-14 | 333-199849 | https://www.sec.gov/Archives/edgar/data/850261/000114420417020185/0001144204-17-020185-index.htm |
| Prospectus [Rule 424(b)(3)] filed 2017-01-19 | 1,215,034 Shares of Common Stock | 333-214897 | https://www.sec.gov/Archives/edgar/data/850261/000119312517013223/0001193125-17-013223-index.htm |
| Prospectus [Rule 424(b)(3)] filed 2016-08-10 | 32,317,959 Shares of Common Stock | 333-212302 | https://www.sec.gov/Archives/edgar/data/850261/000119312516678194/0001193125-16-678194-index.htm |

**Table 8. Post-August 2015 SRNE Public Stock Offerings.**

77.     Using the IP of SES to which it and no rights in addition to the constructs to which SES had right to first refusal, SRNE artificially boosted the valuation of the company and then profited from said artificial boost via private funding placements. For example, on June 8, 2016, SRNE closed a $150,000,000.00 private placement. Additionally, on November 28, 2016, SRNE secured a $75,000,000.00 loan facility, although said $75,000,000.00 loan facilities excluded as "qualified subsidiar[ies]" CARgenix, BDL, and Concortis, Inc. as per the applicable *Loan and Security Agreement* contractual arrangement.

78.   Although SRNE subsidiary TNK had planned on an IPO of its stock, which it later announced (via its May 2018 corporate presentation) would occur in Hong Kong rather than the United States, as of June 2018, SRNE has scrapped the plan for a TNK IPO in Hong Kong and now plans on a SRNE IPO in Hong Kong instead as per the June 14, 2018 corporate update to stockholders letter, or Exhibit 99.1 from the June 14, 2018 SRNE SEC filing (*i.e.,* SEC file number 001-36150) from Dr. Ji.[7]

**D. Anti-Trust/Anti-Competitive Activities: Restrictive Covenants**

79.   As was previously set forth herein, provisions in the SPA and MIPA stopped dead in its tracks the planned collaboration between SES, Dr. Junghans, and his affiliated research institutions (*i.e.,* Tufts MC and RWMC) after SES had invested significant time and energy into preparing for said collaboration. Included in these preparatory activities was an initial site visit to Tufts MC, which occurred in June of 2015. Never once during the site visit was the company SRNE brought up nor CARgenix, and Dr. Junghans did not disclose plans to create the shell corporation he registered as BDL. Further, the plan of SES to use the cGMP facility at RWMC to manufacture CAR T cell INDs for testing in clinical trials as part of her planned collaboration with Dr. Junghans had to be abandoned by SES following the

execution of the SPA and MIPA, which was done without prior notification being provided to SES and/or Siegler.  SES incurred some expenses for which reimbursement is now sought to travel to meet with a vendor for its new cGMP solution.  Additional expenses have also been incurred by SES as part of the business model pivot in light of its termination of the planned collaboration with Dr. Junghans, Tufts MC, and RWMC on the basis of non-compliance and illegal activity.

## V.     EFFECT ON COMPETITION AND CONTINUING INJURY TO SES AND SIEGLER

### A. Effect on Competition

80.     SES is an early stage micro-entity without any marketed pharmaceutical products to date and thus constitutes a potential participant in the CAR T cell pharmaceutical market both domestically and abroad.[8]  The pre-pre investigational new drug ("ppIND") milestone, which constitutes the first of many interactions with the US Food and Drug Administration ("FDA") in the effort to gain marketing approval for a medical product, was completed by SES.  SES received the following pre-application tracking system ("PTS") tracking number from FDA as part of the ppIND interaction — PTS#: PS003026.  The US FDA ppIND program

was replaced by US FDA INTERACT program on or near June 22, 2018).

Marketing authorization from the US FDA via approval of a regulatory application

is required in order to legally sell drugs in the US. SES was invited by FDA to

complete a proposal to reduce, refine, and/or replace animal testing as part of its

pre-clinical program, and SES has made available to the public for peer review and

comment a draft of said proposal, titled *3R Proposal*, as of April 2018. SES

continues to take demonstrative steps that are needed to eventually gain entry to the

US market as well as other markets following marketing approval by the applicable

regulatory bodies.

81.     The anti-competitive/anti-trust business practices, IP infringement, and IP

conversion related activities of SRNE and its subsidiary TNK have prevented SES

and Siegler from engaging in business with Dr. Junghans, Tufts MC, and/or

RWMC. The "restrictive covenants" of the applicable contractual agreements have

also prevented SES and Siegler from utilizing the current Good Manufacturing

Practices ("cGMP") production facility at RWMC; said cGMP facility is instead

producing CAR T cell product candidates for SRNE as is acknowledged by SRNE

in several corporate presentation slide decks.

**B. Potential Effect on US Commerce**

82.     The anti-competitive/anti-trust business practices, IP infringement, and IP

conversion related activities of the defendants have forced SES to undergo a major

business model pivot resulting in both lost time and lost money for SES.

83.     While both SRNE subsidiary TNK and SES are potential participants in the

CAR T cell market as set forth in further detail herein, the entry of SES to the

market (following marketing authorization approval by the applicable regulators)

has undoubtedly been delayed as a result of the conduct of the defendants that is

prohibited by federal laws including the applicable antitrust statutes.  In the

absence of a judgement in the favor of SES, SRNE subsidiary will continue to

attempt to develop anti-CEA CAR T cells and may enjoy first to market status in

the event of approval for marketing by the US FDA.

84.     The BDL and CARgenix acquisitions were executed with the intention of

acquiring and maintaining market power for the CAR T cell constructs and

methods set forth in **Exhibit 3**.  Although an academic group in California under

the direction of John K. Lee has since taken up work on anti-CEA CAR T cells,

although no such license has been granted by SES to said group, at the time of the

August 7, 2015 BDL and CARgenix acquisitions, the only other domestic company

working to develop anti-CEA CAR T cell product candidates was SES.  To quote the January 12, 2017 *Antitrust Guidelines for the Licensing of Intellectual Property* document, a "significant risk of retarding or restricting the development of new or improved goods or processes[,]" such as the research and development of optimized CAR T cell product candidates and/or optimized CAR T cell manufacturing process of SES, was established via the aforementioned acquisitions of BDL and CARgenix by way of the SPA and MIPA, respectively.

**C. Irreparable Harm, Monetary Harm, and Continuing Injury**

85.     Defendants SRNE, TNK, BDL, Dr. Ji, Dr. Junghans, Tufts MC, CARgenix, Dr. Katz, and RWMC have engaged in the conversion of the IP of SES and IP infringement, which resulted in damage, irreparable harm, and continuing injury to SES and Siegler.

86.     Defendants Dr. Junghans, Dr. Katz, RWMC and Tufts MC have engaged in the willful infringement of the IP rights of SES and Siegler by filing obvious patent applications as per Table 9 that incorporate the 2nd generation anti-CEA CAR T cells for which there was already IP created by SES in addition to a previously abandoned patent application, or 10/006,771.  The IP created by SES was not disclosed by defendants in their patent application filings, which included the

January 16, 2018 Affidavit-Rule 130(a) for the '818 application, and the '818

application is in the process of being granted since the USPTO patent examiner

failed to perform even basic searches in the copyright catalog.  Dr. Junghans failed

to disclose, and/or was reckless in his failure to disclose, the IP of SES of which he

was aware as part of the filings for the '818 applications and/or the other pending

patent applications set forth in Table 9.  Defendant Tufts MC and potentially

RWMC failed to disclose, or was reckless in not disclosing, the IP of SES for the

pending applications set forth in Table 9, as applicable.  See also **Exhibit 3**.

| Construct | Patent Application Title | Patent Application Number | Applicant | Priority Data | Status As of July 2, 2018 |
|---|---|---|---|---|---|
| Anti-CEA | Chimeric effector cell receptors against carcinoembryonic antigen | US 10/006,771 | Richard Paul Junghans | US Provisional Application 60/250,087 filed November 30, 2000; US Provisional Application filed 60/250,090 filed November 30, 2000 | Abandoned (2006) |
| Anti-CEA | HEPATIC ARTERIAL INFUSION OF CAR-T CELLS | US 15/099,370 | Prospect Chartercare RWMC, LLC** dba RWMC | US Provisional Application 62/147,793 filed April 15, 2015 | Rejected |
| Anti-CEA | HEPATIC ARTERIAL INFUSION OF CAR-T CELLS | PCT/US2016/027582 | Prospect Chartercare RWMC, LLC* dba RWMC | US Provisional Application 62/147,793 filed April 15, 2015 | Pending*** |
| Anti-CEA | COMPOSITIONS AND METHODS FOR TREATING PERITONEAL CANCERS | US 15/210,818 | Prospect Chartercare RWMC, LLC* dba RWMC | Provisional Application 62/193,217 filed on July 16, 2015; Provisional application 62/298,980 filed on February 23,2016 | Pending*** * |
| Anti-CEA —YY1 or EZH2 Knockdown | COMPOSITIONS AND METHODS FOR IMPROVING IMMUNE CELL FUNCTION | ? [expired US Provisional 62/362,825] | Tufts MC | Provisional Application 62/362,825 filed on July 15, 2016 (expired) | Pending |
| Anti-CEA —YY1 or EZH2 Knockdown | COMPOSITIONS AND METHODS FOR IMPROVING IMMUNE CELL FUNCTION | PCT/US17/42147 | Tufts MC | Provisional Application 62/362,825 filed on July 15, 2016 | Pending |

*See slides 13, 14, and 17 of the July 2018 Corporate Presentation of SRNE that is available at the following URL: http:// investors.sorrentotherapeutics.com/static-files/d08c3f2c-5f20-452e-a830-f6326688a5f

**Prospect Medical Holdings (PMH), collectively Prospect Chartercare, LLC, a joint venture partnership having a subsidiary place of business at Prospect Chartercare Roger Williams Medical Center, LLC (Prospect Chartercare RWMC, LLC), formerly referred to as RWMC (License Number HOS00108).  See: https://docs.google.com/file/d/0B9Jx-sHDAL9qdWI2TFJwVHpNdXc/edit?usp=sharing & http://www.health.ri.gov/programs/ healthsystemsdevelopment/

***The intrahepatic route of administration for CAR T cells has been in use and henceforth obvious since 1997.  See, for example, the C-9702 clinical trial conducted by Genetix Pharmaceuticals Inc. (work completed at Cell Genesys Inc.) using CAR T cells targeting the Tag-72 glycoprotein that was conducted between 1997 and 1998.  The C-9702 trial was published in the following publication: Hege KM, Bergsland EK, Fisher GA, et al. Safety, tumor trafficking and immunogenicity of chimeric antigen receptor (CAR)-T cells specific for TAG-72 in colorectal cancer. *Journal for Immunotherapy of Cancer.* 2017;5:22. doi:10.1186/s40425-017-0222-9 (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28344808/).

****The Notice of Allowance Mailed (allowed claims are 1-10, and claim 12) was dated May 8, 2018 as per USPTO PAIR.

**Table 9. Patent Applications Filed by Defendant(s) on the 2nd Generation Anti-CEA CAR T Cell and/or on Technology that Involves 2nd Generation Anti-CEA CAR T Cells.  See also Exhibit 3.**

87.     Defendants Dr. Junghans and Tufts MC have engaged in the willful

infringement of the IP rights of SES and Siegler by filing patent application on

technology that involves the 2nd generation anti-CEA CAR T for which there was

already IP created by SES as per Table 9.

88.     Defendants Dr. Junghans, Dr. Katz, and RWMC have engaged in the willful infringement of the IP rights of SES and Siegler by filing patent applications on technology that involves the 2nd generation anti-CEA CAR T for which there was already IP created by SES as per Table 9.  See also **Exhibit 3**, incorporated here for reference.

89.     Defendants Dr. Junghans, BDL, Dr. Katz, CARgenix, RWMC, Dr. Ji, SRNE, and TNK have engaged in the willful infringement of the IP rights of SES and Siegler by conducting the HITM-SURE trial, which accrued five human research subjects as of July 2018.

90.     Defendants SRNE, TNK, BDL, Dr. Ji, Dr. Junghans, and Tufts MC have engaged in unfair trade practices and unfair competition (*i.e.,* anti-trust/anti-competitive business practices) in connection the execution of the BDL SPA, as amended, and subsequent activities, which resulted in damage, irreparable harm, and continuing injury to SES and Siegler.

91.     Defendants SRNE, TNK, CARgenix, Dr. Ji, Dr. Junghans, Dr. Katz, and RWMC have engaged in unfair trade practices and unfair competition (*i.e.,* anti-trust/anti-competitive business practices) in connection with the execution of the

CARgenix MIPA, as amended, and subsequent activities, resulted in damage, irreparable harm, and continuing injury to SES and Siegler.

**D. Damages**

92.     As was previously set forth herein, following the execution of the SPA and MIPA by BDL and CARgenix, respectively, in August of 2015, SES was forced to undergo a business model pivot in that it was and is no longer able to pursue its planned collaboration with Dr. Junghans, Tufts MC, and/or RWMC.  SES has lost both time and money in working through said pivot as a consequence of the conduct of the defendants that is prohibited by federal law, which includes the applicable anti-trust statutes.  For example, SES spent $2,344.86 to complete CAR T cell manufacturing training at the NIH in February of 2017.  Further, SES incurred travel and lodging related expenses to attend the International Society for Pharmaceutical Engineering ("ISPE") Facilities of the Future meeting on February 20-22, 2018 in order to meet with a vendor regarding the cGMP production facility that is required to produce CAR T cell investigational product candidates (and approved products); the event registration fee of Siegler was covered by said vendor.  SES has also incurred expenses related to the hiring of an independent contractor as was recommended to SES by the US FDA in its ppIND feedback.

Furthermore, SES anticipates that it will incur additional expenses related to the filing of the present action, including the $400.00 filing fee for which there is no guarantee of reimbursement/recovery. The incurred monetary damages as well as some anticipated monetary damages follow in Table 10.

| Description — Incurred Damages | Damage/ Amount |
|---|---|
| Site Visit Costs — Tufts MC (June 2015)* | $933.28 |
| US Copyright Registration Fee — TXu001998310 | $85.00 |
| Postage for the Registration of TXu001998310 | $6.41 |
| Special Handling Fee — TXu001998310 | $800.00 |
| US Copyright Registration Fee — TXu001998311 | $85.00 |
| Postage for the Registration of TXu001998311 | $5.75 |
| Special Handling Fee — TX001998311 | $800.00 |
| Payments 1, 2, and 3 to the Independent Contractor of SES** | $3,000.00 |
| Travel, Lodging, Food, and Registration — NIH FAES Biotech 80 CAR T Cell [Manufacturing Training] Course (February 2017) | $2,344.86 |
| Travel, Lodging, and Food — ISPE Facilities of the Future (February 2018)*** | $864.14 |
| Costs for Shipping Cease and Desist Letters via USPS Certified Mail [per Table 7] | $37.42 |
| Filing Fee - US District Court | $400.00 |
| Business Costs (August 2015 — Present) | TBPAT |
| Description — Future Anticipated Damages | Damage/ Amount |
| Costs For the Present Action (not including the filing fee) | TBD |
| Payment 4 to Independent Contractor of SES | $1,000.00 |

| Potential Fees to USPTO For Re-examination of the Pending Patent for US 15/210,818 | TBD |
| --- | --- |

TBPAT: To be proved at trial, as applicable; TBD: To be determined

*The Tufts MC Site Visit was conducted as part of a business trip that also included a CHI Short Course on Quality by Design so as to avoid SES incurring additional expenses from separate trips. The registration fee for the aforementioned CHI Short Course ($699.00) was not included in the total for the Tufts MC site visit herein.

** The Independent Contractor was brought on board per the ppIND feedback of the US FDA that was received by SES following the termination of the relationship between SES, Tufts MC, RWMC, and Dr. Junghans.

***The round trip airfare was gifted to SES and Siegler by the parents of Siegler. The registration was covered by the vendor that SES traveled to ISPE to meet with, and some meals were included in the aforementioned registration.

**Table 10. Damages and Future Anticipated Damages.**

93.     SES and Siegler has planned on bringing in income associated with NIH federal funding awards as part of its planned partnership with Dr. Junghans and Tufts MC as early as 2014.  The unanticipated termination of the business relationship between SES, Siegler, Dr. Junghans, and his affiliated research institutions by SES as a result of the unlawful conduct set forth herein has resulted in significant delays to the planned milestones, including the compensation scheme.  A variety of business expenses have been incurred resulting in monetary harm to SES and Siegler, who is bootstrapping SES.

94.     Regarding the pending '818 application (and the underlying priority data — US provisional application 62/193,217 filed on July 16, 2015 and US provisional application 62/298,980 filed on February 23,2016) after the IP of SES was created, SES was instructed by USPTO of its option to seek re-examination at the expense of SES even though the search notes revealed the patent examiner failed to perform a basic search in the copyright catalog that would have uncovered the existing IP of

SES. Similarly, if USPTO reverses its final decision to reject the '370 application, SES may have to seek re-examination via USPTO at its own expense.

95.     SES and Siegler have and will continue to be harmed by the reputational damage done as a result of the unlawful conduct of the defendants resulting in irreparable harm to both SES and Siegler. For example, defendant Tufts MC (and likely other defendants) seeks to portray SES and Siegler as litigacious when in reality, SES and Siegler had afforded Tufts MC and Dr. Junghans more than one month to take corrective action before terminating the business relationship after SES and Siegler first found out about potential IP issues from Tuft MC's Susan Blanchard back in 2015 (after the BDL SPA and CARgenix MIPA had been executed on August 7, 2015). SES and Siegler drafted and provided to Dr. Junghans an *IP Conflict Improvement Plan* document via email on September 9, 2015 and again on September 24, 2015 prior to the aforementioned termination of the business relationship and prior to the filing of the present action. SES and Siegler also drafted and provided to Dr. Junghans draft IP reports for TXu001998310 and TXu001998310 via email on September 20, 2015 and September 21, 2015, respectively. SES and Siegler have afforded defendants SRNE and Dr. Ji over two years of time to take corrective actions relative to the IP

of SES and the antitrust conduct of SRNE prior to the filing of the present action, but no such corrective actions have been taken to date.

96.     By reasons of the foregoing, the defendants violated, and unless restrained and enjoined, will continue to engage in unlawful activities resulting in anticompetitive harms to SES and to its CEO/Owner, or Siegler.

## V.     CLAIMS FOR RELIEF

CLAIM FOR RELIEF I: CONVERSION OF INTELLECTUAL PROPERTY
Violations of the Copyright Act (17 USC § 101 *et seq.*) of the USC by SRNE, TNK, Dr. Junghans, Dr. Katz, RWMC, Tufts MC, Dr. Ji, and the Board of Directors of SRNE

97.     SES re-alleges and incorporates by reference Paragraph Nos. 1 through 96.

98.     The copyrights of SES for which the best editions are registered as TXu001998310 and TXu001998311 cover anti-CEA CAR T cells, are the exclusive property of SES, and have been the exclusive property of SES at all times relevant to this complaint.  The aforementioned copyrights may only be legally licensed to a third party by SES.

99.     The conversion of the applicable copyrights of SES (i.*e.*, TXu001998310 and TXu001998311) occurred upon information and the belief of SES and Siegler.

100.   By reasons of the foregoing, the above captioned defendants violated, and

unless restrained and enjoined, will continue to engage in, the conversion of the IP

of SES.

### CLAIM FOR RELIEF II: CONVERSION OF INTELLECTUAL PROPERTY

Violations of the Uniform Trade Secrets Act and/or the Defend Trade Secrets Act of
2016 (18 USC § 1836 *et seq.*) by SRNE, TNK, Dr. Junghans, Dr. Katz, RWMC, Tufts
MC, Dr. Ji, and the Board of Directors of SRNE

101.   SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1

through 96.

102.   The conversion of IP in the form of trade secrets of SES occurred upon

information and the belief of SES and Siegler.

103.   By reasons of the foregoing, the above captioned defendants violated, and

unless restrained and enjoined, will continue to violate, the Defend Trade Secrets

Act of 2016 and/or the Uniform Trade Secrets Act, as adopted under applicable

state law (*e.g.*, CA Civil Code §§ 3426 - 3426.11).

### CLAIM FOR RELIEF III: COPYRIGHT INFRINGEMENT

Violations of the Copyright Act (17 USC § 101 *et seq.*) by SRNE, TNK, Dr. Junghans,
Dr. Katz, RWMC, Tufts MC, Dr. Ji, and the Board of Directors of SRNE

104.   SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1

through 96.

105.    The copyrights of SES that are registered as TXu001998310 and

TXu001998311 are the exclusive property of SES and have been at all times

relevant to this complaint.  The aforementioned copyrights may only be legally

licensed to a third party by SES.

106.    After the IP of SES had been created and despite not having obtained a license

from SES, defendants RWMC, Dr. Junghans, and Dr. Katz filed provisional patent

applications that have since been replaced with patent applications on 2nd

generation CEA CAR T cells and related methods.  These applications include the

'818 application (provisional applications 62/193,217 and 62/298,980 filed on July

16, 2015 and February 23 ,2016, respectively ), the '370 application (US

Provisional Application 62/147,793 filed April 15, 2015), and the Patent

Cooperation Treaty ("PCT") entry that corresponds to the '370 application, or PCT/

US2016/027582.  The '370 application and PCT/US2016/027582 pertain to the

HITM-SURE trial that is incorporated by SRNE in its investor presentations.

107.    After the IP of SES had been created, after having received the hard copy cease

and desist letters sent by SES, and despite not having obtained a license from SES,

defendants Tufts MC and Dr. Junghans conducted work on 2nd generation CEA

CAR T cells resulting in a filed a provisional patent application and a PCT entry on

2nd generation CEA CAR T cells with YY1 or EZH2 knockdown. These

applications include US provisional application 62/362,825 filed on July 15, 2016

and the PCT entry that corresponds to US provisional application 62/362,825, or

PCT/US17/42147 (*i.e.*, PCT/US2017/421147).[9]

108.    By reasons of the foregoing, the above captioned defendants violated, and

unless restrained and enjoined, will continue to violate, the Copyright Act (*i.e.*, 17

USC §§ 101 - 810).

<u>CLAIM FOR RELIEF IV: WILLFUL INFRINGEMENT</u>
Violations of the Copyright Act (17 USC § 101 *et seq.*) by SRNE, TNK, Dr. Junghans,
Dr. Katz, RWMC, Dr. Ji, Tufts MC, and the Board of Directors of SRNE

109.    SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1

through 96.

110.    The copyrights of SES that are registered as TXu001998310 and

TXu001998311 that cover anti-CEA CAR T cells are the exclusive property of SES

and have been at all times relevant to this complaint. The aforementioned

copyrights may only be legally licensed to a third party by SES. After the IP of SES

had been created and despite not having obtained a license from SES, defendants

RWMC, Dr. Junghans, and Dr. Katz filed provisional patent applications that have

since been replaced with patent applications on 2nd generation CEA CAR T cells

and related methods.  These applications include the '818 application (provisional applications 62/193,217 and 62/298,980 filed on July 16, 2015 and February 23, 2016, respectively ), the '370 application (US Provisional Application 62/147,793 filed April 15, 2015), and the Patent Cooperation Treaty ("PCT") entry that corresponds to the '370 application, or PCT/US2016/027582.  The '370 application and PCT/US2016/027582 pertain to the HITM-SURE trial that is incorporated by SRNE in its investor presentations.

111.    After the IP of SES had been created, after having received the hard copy cease and desist letters sent by SES, and despite not having obtained a license from SES, defendants Tufts MC and Dr. Junghans conducted work on 2nd generation CEA CAR T cells resulting in a filed a provisional patent application and a PCT entry on 2nd generation CEA CAR T cells with YY1 or EZH2 inhibition.  These applications include US provisional application 62/362,825 filed on July 15, 2016 and the PCT entry that corresponds to US provisional application 62/362,825, or PCT/US17/42147 (*i.e.,* PCT/US2017/421147).

112.    By reasons of the foregoing, the above captioned defendants violated, and unless restrained and enjoined, will continue to violate, the Copyright Act.

## CLAIM FOR RELIEF V: WILLFUL INFRINGEMENT

Uniform Trade Secrets Act (as adopted under applicable state law *e.g.,* CA Civil Code §§ 3426 - 3426.11) and/or Defend Trade Secrets Act of 2016 (18 USC § 1836 *et seq.*) by SRNE, TNK, Dr. Junghans, Dr. Katz, RWMC, Dr. Ji, Tufts MC, and the Board of Directors of SRNE

113.    SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1

through 96.

114.    The willful infringement of the trade secrets IP of SES occurred upon

information and belief of SES and Siegler.

115.    By reasons of the foregoing, the above captioned defendants violated, and

unless restrained and enjoined, will continue to violate, the Uniform Trade Secrets

Act, as adopted under state law (*e.g.*, CA Civil Code §§ 3426 - 3426.11), and/or the

Defend Trade Secrets Act of 2016.

## CLAIM FOR RELIEF VI: UNJUST, UNCOMPENSATED TAKINGS

Violations of the Fifth Amendment to the Constitution by SRNE, TNK, Dr. Junghans, Dr. Katz, RWMC, Dr. Ji, Tufts MC, and the Board of Directors of SRNE

116.    SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1

through 96.

117.    An unjust and uncompensated takings regarding the IP of SES (*i.e.,* copyrights

and trade secrets) occurred upon information and the belief of SES and Siegler in

violation of the Takings Clause and/or the Just Compensation Clause of the Fifth Amendment to the US Constitution.

118.     By reasons of the foregoing, the above captioned defendants violated, and unless restrained and enjoined, will continue to violate, the Takings Clause and/or the Just Compensation Clause of the Fifth Amendment to the US Constitution.

## CLAIM FOR RELIEF VII: ANTITRUST/ANTI-COMPETITION/UNFAIR TRADE PRACTICES
Violations of the Clayton Act (15 USC §§ 12 - 27) by SRNE, TNK, Dr. Junghans, Dr. Katz, RWMC, Tufts MC, Dr. Ji, and the Board of Directors of SRNE

119.     SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1 through 96.

120.     The BDL and CARgenix acquisitions, executed August 7, 2015, were executed by and amongst the above-captioned defendants for the purposes of the foreclosure of competition and/or with the intended future effect of unreasonably constraining trade in the CAR T cell goods market for solid tumors, a goods market which does not yet exist.

121.     Violations of the Clayton Act occurred upon information and the belief of SES and Siegler.

122.     By reasons of the foregoing, the above captioned defendants violated, and unless restrained and enjoined, will continue to violate, the Clayton Act.

## CLAIM FOR RELIEF VIII: ANTITRUST/ANTI-COMPETITION/UNFAIR TRADE PRACTICES — AGREEMENTS &/OR MULTI-LATERAL CONDUCT

Violations of the § 1 of the Sherman Act (15 USC §§ 1 - 7) by SRNE, TNK, Dr. Junghans, Dr. Katz, RWMC, Tufts MC, Dr. Ji, and the Board of Directors of SRNE

123.    SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1 through 96.

124.    Contractual agreements with restrictive covenants were executed by and amongst the above-captioned defendants for the purposes of foreclosure of competition and/or with the intended future effect of unreasonably constraining trade in the CAR T cell goods market for solid tumors, a goods market which does not yet exist.

125.    Exclusive dealings were entered into with the intention to foreclose SES from pursuing its planned partnership/collaboration with Tufts MC and/or Dr. Junghans and/or from utilizing the cGMP facility at RWMC to manufacture its investigational product candidates in the pre-approval phases of the product development lifecycle.

126.    Violations of § 1 of the Sherman Act occurred upon information and the belief of SES and Siegler.

127.    By reasons of the foregoing, the above captioned defendants violated, and unless restrained and enjoined, will continue to violate, the Sherman Act.

CLAIM FOR RELIEF IX: ANTITRUST/ANTI-COMPETITION/UNFAIR TRADE
PRACTICES — FOREIGN AGREEMENTS &/OR MULTI-LATERAL CONDUCT
Violations of the Foreign Trade Anti-Trust Improvement Act ("FTAIA") (15 USC § 6)
and/or § 1 of the Sherman Act by SRNE, TNK, Dr. Ji, and the Board of Directors of
SRNE

128.     SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1

through 96.

129.     Exclusive dealings and/or contractual agreements were entered into by the

applicable defendants with 3SBio to commercialize CEA CAR T cells in foreign

goods markets in which SES is a potential participant.  Monies were received by

SRNE and/or TNK, its fully owned subsidiary, as part of the 3SBio agreements set

forth herein in Table 4.  That is, $10,000,000.00 was received by SRNE and/or

TNK, its fully owned subsidiary, for an exclusive license to commercialize anti-

CEA CAR T cells for which the IP was exclusively owned (at that time) by SES

and for which the IP may have only been legally licensed to a third party by SES.

130.     The JV between 3SBio and SRNE and/or its fully owned subsidiary, TNK, as

well as the SPA resulted in injury to SES and Siegler that is interconnected to the

domestic injury suffered by SES and Siegler that arose out of the same anti-

competitive actions of the applicable defendants (*e.g.,* conversion of IP, passing the

goods of SES off as those of another, anti-competitive interference).  SES may not

be able to license out its CEA CAR T cell IP in the foreign markets that are covered

by the 3SBio JV and/or the value of the IP of SES may be diminished in light of the

aforementioned 3SBio JV, and licensure in a foreign market may be necessary in

order for SES to research, develop, commercialize its CAR T cell product

candidates in any market.  Violations of the FTAIA, or 15 USC § 6, and/or of § 1 of

the Sherman Act occurred upon information and the belief of SES and Siegler.

131.  By reasons of the foregoing, the above captioned defendants violated, and

unless restrained and enjoined, will continue to violate, the FTAIA and/or the

Sherman Act.

CLAIM FOR RELIEF X: ANTITRUST/ANTI-COMPETITION/UNFAIR TRADE
PRACTICES — MONOPOLIZATION/CONSPIRACY TO MONOPOLIZE
Violations of § 2 of the Sherman Act by SRNE, TNK, Dr. Junghans, Dr. Katz, RWMC,
Tufts MC, Dr. Ji, and the Board of Directors of SRNE

132.  SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1

through 96.

133.  Exclusive dealings and/or contractual agreements with restrictive covenants

were entered into by and amongst the applicable defendants for the purposes of

foreclosure of competition and/or with the intended future effect of unreasonably

constraining trade in the CAR T cell for solid tumors goods market, which

constitutes attempted monopolization and/or a conspiracy to monopolize a goods

market that has yet to be established. The execution of the aforementioned contractual arrangements by and amongst the above-captioned defendants constitutes attempted monopolization and/or a conspiracy to monopolize a market.

134.    Exclusive dealings and/or contractual agreements with restrictive covenants were entered into by and amongst the applicable defendants as part of a conspiracy with the intention to foreclose SES from its pursuit of its planned partnership/ collaboration with Tufts MC and/or Dr. Junghans and/or from utilizing the cGMP facility at RWMC to manufacture its investigational product candidates in the pre-approval phases of the product development lifecycle.

135.    Violations of § 2 of the Clayton Act occurred upon information and the belief of SES and Siegler.

136.    By reasons of the foregoing, the above captioned defendants violated, and unless restrained and enjoined, will continue to violate, the Sherman Act.

### CLAIM FOR RELIEF XI: ANTI-COMPETITIVE, UNFAIR, AND/OR DECEPTIVE TRADE ACTS OR PRACTICES
Violations of § 14 of the Clayton Act by SRNE, TNK, RWMC, Tufts MC, the Directors and Agents of SRNE and/or TNK, including Dr. Ji, Dr. Katz, and Dr. Junghans

137.    SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1 through 96.

138.    Exclusive dealings and/or contractual agreements with restrictive covenants

were entered into by and amongst the applicable defendants as part of a conspiracy

to anticompetitively foreclose SES from (access to) its partnership/collaboration

with Tufts MC, Dr. Junghans, and/or RWMC.  Said dealings and/or agreements,

which constitute anticompetitive coordination, were intended to ultimately

foreclose SES from participation in the forthcoming CAR T cell goods market for

solid tumor indications.

139.    The liability of directors and agents of corporations is governed by 5 USC §

24, or § 14 of the Clayton Act.  Violations of § 14 of the Clayton Act occurred upon

information and the belief of SES and Siegler.

140.    By reasons of the foregoing, the above captioned defendants violated, and

unless restrained and enjoined, will continue to violate, the Clayton Act.


CLAIM FOR RELIEF XII: ANTICOMPETITIVE, UNFAIR, AND/OR DECEPTIVE
TRADE ACTS OR PRACTICES
Violations of the Sherman Act (15 USC §§ 1 - 7) by SRNE and/or TNK, Dr. Junghans,
Dr. Katz, RWMC, Tufts MC, Dr. Ji, and the Board of Directors of SRNE

141.    SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1

through 96.

142.     Exclusive dealings and/or contractual agreements restrictive covenants were

executed by and amongst the applicable defendants as part of a conspiracy with the

intention to foreclose SES from (access to) its planned partnership/collaboration

with Tufts MC, Dr. Junghans, and/or RWMC.  Said dealings and/or agreements,

which constitute anticompetitive coordination, were intended to ultimately

foreclose SES from participation in the forthcoming CAR T cell goods market for

solid tumor indications.

143.     Violations of the Sherman Act, which is codified at 15 USC §§ 1 - 7, occurred

upon information and belief of SES and Siegler.

144.     By reasons of the foregoing, the above captioned defendants violated, and

unless restrained and enjoined, will continue to violate, the Sherman Act.

### CLAIM FOR RELIEF: ANTICOMPETITIVE, UNFAIR, AND/OR DECEPTIVE TRADE ACTS OR PRACTICES

Violations of CA Unfair Competition Law, Business and Professional Code, § 17200
by SRNE, TNK, Dr. Ji, and the Board of Directors of SRNE

145.     SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1

through 95.

146.    By reasons of the foregoing, the above captioned defendants violated, and unless restrained and enjoined, will continue to violate, the California Unfair Competition Law, Business and Professional Code, or § 17200.

## CLAIM FOR RELIEF: INVALIDITY OF THE PENDING PATENT FOR THE '818 APPLICATION
### Violations of Title 35 of the USC

147.    SES and Siegler re-allege and incorporate by reference Paragraph Nos. 1 through 95.

148.    The claims of the '818 application for which a patent is pending as of May 8, 2018 are invalid for failure to meet one or more of the patentability prerequisites as per Title 35 of the USC, including 35 USC § 102, 35 USC § 103, and/or 35 USC § 112 for reasons that include but are not limited the following:

a) The construct at the heart of the '818 application, or the retrovirally transduced, 2nd generation anti-CEA CAR T cell construct, was the subject the of US 10/006,771 application (*Chimeric effector cell receptors against carcinoembryonic antigen*) and the TXu001998311 IP of SES, or *Phase 1b/2 Study of [2nd Generation] Anti-CEA Designer CAR T Cells in Breast Cancer;*

b) The use of anti-CEA CAR T cells for malignancies other than breast cancer and/ or the direct route of administration of said cells, which are investigational of

the filing date of this complaint, is obvious over the TXu001998310 IP of SES,

or *In Vivo Testing of 3rd Generation Anti-CEA Designer CAR T Cells with Bcl-xL in Pancreatic Cancer;*

c) Lab members from the lab(s) of Junghans/Katz presented twice prior to the filing of the underlying provisional patent applications from which the '818 application claims priority.  Only one of the two relevant presentations was disclosed in the January 16, 2018 Affidavit-Rule 130(a)-AIA (First Inventor to File ("FITF")) filed for the '818 application as per Table 11.  See also Appendix A, incorporated here for reference.

| Reference | Event Details | Included in January 16, 2018 Affidavit-Rule 130(a)-AIA (FIFT)? |
|---|---|---|
| Point G, Thorn M, Cunetta M, Bais AJ, Junghans RP, Espat NJ, Katz SC. Anti-CEA chimeric antigen receptor T cells in combination with suppressor cell targeting for the treatment of colorectal cancer peritoneal metastases. The Journal of Immunology May 1, 2015; 194 (1 Supplement):143.13. | American Association of Immunology 2015 (The Journal of Immunology May 1, 2015, 194 (1 Supplement) 143.13) http://www.jimmunol.org/content/194/1_Supplement/143.13 | Yes |
| Point G, Thorn M, Bais A, Guha P, Cunetta M, Boutros C, Nader H, Espat NJ, Junghans RP, Katz SC. Intraperitoneal Delivery of Anti-CEA Chimeric Antigen Receptor T Cells in a Murine Model of Peritoneal Carcinomatosis. Society of Surgical Oncology 2015. | Conference: Conference: 68th Annual Cancer Symposium of the Society-of-Surgical-Oncology (March 25 - 28, 2015), Volume: 22 | NO |

Table 11. Abstracts from the Lab(s) of Dr. Junghans and/or Dr. Katz that Pre-date the Provisional Patent Applications for the '818 Application.

d)   The claims of the '818 application (for which a patent is pending as of May 8, 2018) are invalid under 35 USC § 102, 35 USC § 103, and/or 35 USC § 112 in light of but not limited to the references that follow as Appendix A, incorporated here for reference;

e) The specifications of the '818 application for which a patent is pending as of May 8, 2018 are obvious and/or invalid based on prior art and/or other documents to establish obviousness that may have not been identified by the patent examiner during the applicable searches performed for said '818 application. See Table 11 and Appendix A;

f) The specifications of the '818 application for which a patent is pending as of May 8, 2018 failed to disclose relevant earlier clinical trials of Dr. Junghans that were registered with the NLM under the following clinical trial identifiers — NCT01723306, NCT00673322, NCT00429078, and/or NCT00004178;

g) Only one of two relevant prior art abstracts on work done in the lab of Dr. Junghans and/or Dr. Katz that were presented at conferences prior to the filing of the first provisional placeholder application for the '818 application was identified by the patent examiner and included in the January 16, 2018 Affidavit-Rule 130(a) of Dr. Junghans and Dr. Katz as per Table 11; and/or

h) Any other arguments that may arise based on facts obtained through the discovery process upon which the pending patent may be — invalidated, considered unenforceable, and/or obvious — under one or more sections of Title

35 of the USC including but not limited to 35 USC § 102, 35 USC § 103, and/or 35 USC § 112.

149.    By reasons of the foregoing, it is through this action that SES and Siegler seek a judgment from this Court invalidating the claims of the '818 application for which a patent is currently pending.

## V.    PRAYER FOR JUDGMENT

150.    Wheretherefore, SES and Siegler demand that:

(a) a preliminary injunction be granted until the case is decided to precent further injury and/or damages to SES (15 USC § 26, 17 USC § 502);

(b) until this case is decided the defendants and the defendants' agents be permanently enjoined from infringing — by sale, performance of work, and/or otherwise — the anti-CEA CAR T cell IP, including derivative works, of SES for the duration of the IP right protection periods (15 USC § 26, 17 USC § 502);

(c) order, adjudge, and decree that the applicable defendants infringed the IP of SES;

(d) order, adjudge, and decree that the patent pending for the '818 application is invalid;

(e) the defendant(s) account for and pay as treble damages to SES and Siegler all monies, profits, and advantages gained from unfair trade practices and/ or unfair competition in selling, licensing, misappropriating, converting and/or infringing the IP of SES, and all profits and advantages gained from infringing the rights of SES and the conversion of said IP (but no less than the statutory minimum) (15 USC § 15, 17 USC § 504);

(f)  the defendant(s) deliver for impoundment and disposition all infringing works and/or copies in the defendants' possession or control and deliver for destruction all infringing copies and/or works (17 USC § 503);

(g) the defendant(s) pay SES interest, costs, and reimbursement of any and all court related fees and expenses (15 USC § 26, 17 USC § 505); and

(h) SES and Siegler be awarded any other just relief.

Dated: July 16, 2018                 Respectfully submitted,

*Sara E. Siegler*

Sara Elizabeth Siegler, CEO/Owner
SARA ELIZABETH SIEGLER
19602 Rockside Road, Bedford, OH 44146
P: 440/317-1764
C: 216/870-9188
F: 216/831-9398
E: sara@saraelizabethsiegler.mygbiz.com

# DEMAND FOR JURY TRIAL

151.   Pursuant to the 7th Amendment to the Constitution and under Federal Rule of

Civil Procedure 38, SES and Siegler hereby demand a trial by jury on every issue

permitted by the Constitution, law, and statute.

Dated: July 16, 2018                    Respectfully submitted,

*Sara E. Siegler*

Sara Elizabeth Siegler, CEO/Owner
SARA ELIZABETH SIEGLER
19602 Rockside Road, Bedford, OH 44146
P: 440/317-1764
C: 216/870-9188
F: 216/831-9398
E: sara@saraelizabethsiegler.mygbiz.com

# Endnotes

[1]Two derivative action cases against SRNE were docketed in the in the Delaware Court of Chancery, or case numbers 12254 (*Wildcat Liquid Alpha, LLC, v. Sorrento Therapeutics, Inc.*) and 12729-VCMR (*Williams, et al., v. Ji, et al. and Sorrento Therapeutics, Inc.*), but both cases have been settled.

[2] SRNE entered into its first licensing agreements with entities associated with Patrick Soon-Shiong ("Dr. Soon-Shiong"), or the "NANT" entities, in 2014 per the corporate history slide, or slide 4, of the SRNE September 2016 corporate presentation that is available at the following uniform resource locator ("URL"): http://sorrentotherapeutics.com/wp-content/uploads/2013/10/SRNE-Presentation-Sept_2016-FINAL.pdf

[3]*Williams v. Ji, et al.*, 12729-VCMR (Del. Ch. June 28, 2017): https://courts.delaware.gov/Opinions/Download.aspx?id=258820.

*Williams v. Ji, et al.* was settled for $3,250,000.00.

[4]January 2018 Press Release of SRNE: http://investors.sorrentotherapeutics.com/news-releases/news-release-details/sorrento-therapeutics-car-t-manufacturing-capacity-expanded

[5]January 2018 Press Release of SRNE: http://investors.sorrentotherapeutics.com/news-releases/news-release-details/sorrento-therapeutics-car-t-manufacturing-capacity-expanded

[6]The USPTO filed an issue notification for the US 15/210,818 application, or the application that pertains to US Provisional applications 62/193,217 filed July 16, 2015 and 62/298,980 filed on February 23, 2016) indicating that it is going to grant as a patent  claims 1-10 and claim 12 of the '818 application. Due to the abandoned patent application that was docketed as US 10/006,771 as well as other prior art, SES and Siegler argue that the aforementioned claims are obvious. An email was sent to USPTO by Siegler acting in her official capacity for SES on June 9, 2018 in order to disclose the prior art and obviousness issues relative to US 15/210,818. As of June 10, 2018, the patent for the '818 application had not been granted by the USPTO, and therefore, for the purposes of this complaint, the only relevant IP for the anti-CEA CAR T cell constructs belongs exclusively to SES. See **Exhibit 5**.

[7]The completion of the SRNE IPO in Hong Kong will bestow upon the recently hired SRNE Executive Vice President and Chief Financial Officer, or Mr. Jiong Shao, the option to 300,000 shares of SRNE stock as per his employment agreement.

[8]While SRNE does have one pain medication that is approved for marketing in the US by the FDA, SRNE subsidiary TNK is also considered to be a potential participant in the CAR T cell market as it does not have any CAR T cell products that have been received marketing authorization from the FDA or any other regulatory body to date. As of June 8, 2018, there are only two FDA approved CAR T cell products — Novartis' Kymriah™, which is approved for relapsed/refractory ("r/r") acute lymphoblastic leukemia in pediatric patients and young adults as well as for r/r diffuse large B cell lymphoma ("DLBCL") in adults, and Gilead's Kite Pharma's Yescarta™, which is approved for r/r DLBCL in adults. Trademarks are the property of their respective owner.

[9] The US patent application number that pertains to provisional application 62/362,825 filed on July 15, 2016 by defendant Tufts MC is not yet known to SES and/or Siegler, and said provisional patent application is now expired.

# Appendix A

| Reference | Applies to CEA CAR T Cells? | Applies to Direct, or Regional, Route of Administration? |
|---|---|---|
| Canevari S, Stoter G, Arienti F, Bolis G, *et al*. Regression of advanced ovarian carcinoma by Intraperitoneal treatment with autologous T Lymphocytes retargeted by a bispecific monoclonal antibody. J Natl Cancer Inst. 1995;87:1463–1469. doi: 10.1093/jnci/87.19.1463. | No | Yes - intratumoral (IT) and intraperitoneal (IP) route of administration |
| US Patent Application 10/006,771(*Chimeric effector cell receptors against carcinoembryonic antigen*) | Yes - 2nd generation | No |
| Gilham D, O'Neil A, Hughes C, *et al*. Primary Polyclonal Human T Lymphocytes Targeted to Carcino-Embryonic Antigens and Neural Cell Adhesion Molecule Tumor Antigens by CD3ζ-Based Chimeric Immune Receptors, Journal of Immunotherapy. 2002;25(2): 139–51. doi: 10.1097/00002371-200203000-00002 | Yes | No |
| BB IND 7301 (*Phase I Study of Anti-CEA Designer T Cells in Adenocarcinoma*) — NIH OBA Protocol 9804-249 | Yes - 1st generation | No |
| NCT00004178 (*Gene Therapy in Treating Patients With Cancer*) — NIH OBA Protocol 9804-249 | Yes - 1st generation | No |
| BB IND 10791 (*Phase Ia/Ib study of 2nd generation anti-CEA designer T cells in adenocarcinomas*) | Yes - 2nd generation | No |
| Nolan KF, Yun CO, Akamatsu Y, *et al*. Bypassing immunization: optimized design of "designer T cells" against carcinoembryonic antigen (CEA)-expressing tumors, and lack of suppression by soluble CEA. Clin Cancer Res. 1999;5:3928–41. http://clincancerres.aacrjournals.org/content/5/12/3928 | Yes - 1st generation | No |
| [#3459] Escudier B, le Chevalier T, Angevin E, *et al*. Gene Therapy with Intratumor (IT) Injection of an Adenovirus Expressing the Il2 Gene (RAD-Il2) in Lung Cancer: Results of a Phase I Study. G Roussy, Villejuif. France. and Transgene, Strasbourg. France. Proceedings of the American Association for Cancer Research. 2000;41. https://osp.od.nih.gov/wp-content/uploads/Icell_ReferenceBook.pdf | No | Yes - intratumor injection |
| Hombach A, Schneider C, Sent D *et al*. An entirely humanized CD3 zeta-chain signaling receptor that directs peripheral blood T cells to specific lysis of carcinoembryonic antigen-positive tumor cells. Int J Cancer 2000;88:115–20. | Yes - 1st generation | No |
| [2000 Abstract] Junghans RP, *et al*. Preclinical and Phase I Data of Anti-CEA Designer T Cell Therapy for Cancer: A New Immunotherapeutic Modality (Abstract) Proceedings of the American Cancer Association for Cancer Research. 2000;4: 543. [NIH OBA Protocol 9804- 249] | Yes - 1st generation | No |
| [2000 Abstract — #3461] Junghans RP, Safar M, Huberman MS, *et al*. Preclinical and Phase I Data of Anti-CEA Designer T Cell Therapy for Cancer: A New Immunotherapeutic Modality. Proceedings of the American Association for Cancer Research. March 2000;41. | Yes | No |
| Beecham EJ, Ortiz-Pujols S, Junghans RP. Dynamics of tumor cell killing by human T lymphocytes armed with an anti-CEA chimeric immunoglobulin-T cell receptor. J Immunother. 2000;23:332–343. | Yes | No |
| [2001 — A1063] Junghans RP, Safar M, Huberman MS, *et al*. Preclinical and phase I data of anti-CEA "designer T cell" therapy for cancer: A new immunotherapeutic modality. Proc Am Soc Clin Oncol. 2001;A1063 | Yes | No |
| Haynes NM, Snook MB, Trapani JA, *et al*. Redirecting mouse CTL against colon carcinoma: superior signaling efficacy of single-chain variable domain chimeras containing TCR-zeta vs Fc epsilon RI-gamma. J Immunol 2001;166:182–7. | Yes | No |
| Arakawa F, Shibaguchi H, Xu Z, Kuroki M. Targeting of T cells to CEA-expressing tumor cells by chimeric immune receptors with a highly specific single-chain anti-CEA activity. Anticancer Res. 2002;22:4285-9. | Yes | No |
| Ma QZ, Gonzalo-Daganzo R, Junghans RP. Genetically engineered T cells as adoptive immunotherapy of cancer. In: Giaccone R, Schlinsky R, Sondel P, editors. Cancer Chemotherapy & Biological Response Modifiers - Annual 20. Oxford: Elsevier Science; 2002: 319–345. | [unable to find/access full text] | [unable to find/access full text] |
| NCT00003450 (*Gene Therapy in Treating Patients With Advanced Recurrent or Persistent Ovarian Cancer or Primary Peritoneal Cancer*) — NIH OBA Protocol 9806-255 [First Posted to clinicaltrials.gov December 5, 2003] | No | Yes - intraperitoneal gene therapy |
| Ma Q, DeMarte L, Wang Y, *et al*. Carcinoembryonic antigen-immunoglobulin Fc fusion protein (CEA-Fc) for identification and activation of anti-CEA immunoglobulin-T-cell receptor-modified T cells, representative of a new class of Ig fusion proteins. Cancer gene therapy. 2004;11(4):297-306. doi:10.1038/sj.cgt.7700685. | Yes - 2nd generation | No |
| [2006 Abstract — 1183] Junghans RP, Ma Q, Lum L, *et al*. Advanced generation anti-CEA designer T cells for adenocarcinoma therapy. Proc Amer Assoc Cancer Res, 2006;47. http://cancerres.aacrjournals.org/content/66/8_Supplement/280.1 | Yes - 2nd generation | No |

| | | |
|---|---|---|
| Shibaguchi H, Luo NX, Kuroki M, et al. A fully human chimeric immune receptor for retargeting T-cells to CEA-expressing tumor cells. Anticancer Res. 2006;26:4067-72. | Yes - fully human chimeric immune receptor | No |
| Duval L, Schmidt H, Kaltoft K, et al. Adoptive transfer of allogeneic cytotoxic T lymphocytes equipped with a HLA-A2 restricted MART-1 T-cell receptor: a phase I trial in metastatic melanoma. Clin Cancer Res. 2006;12:1229–36. doi: 10.1158/1078-0432.CCR-05-1485. | No - TCR (not CAR) | Yes - ; intratumoral (IT) and intraperitoneal (IP) routes of administertion |
| NCT00429078 (Trial of 2nd Generation Anti-CEA Designer T Cells in Gastric Cancer) — NIH OBA Protocol  0301-564 [First Posted: January 31, 2007] | Yes - 2nd generation | No |
| NCT00673322 (Trial of Second Generation Designer T Cells in Colorectal Carcinoma) [First Posted: May 7, 2008] | Yes - 2nd generation | No |
| Emtage P, Lo A, Liu D, et al. 2nd Generation Anti-CEA Designer T Cells Resist Activation-Induced Cell Death, Proliferate on Tumor Contact, Secrete Cytokines and Exhibit Superior Anti-Tumor Activity In Vivo: A Preclinical Evaluation. Clinical cancer research : an official journal of the American Association for Cancer Research. 2008;14(24):8112-8122. doi:10.1158/1078-0432.CCR-07-4910. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2659496/ | Yes - 2nd generation | No |
| [April 2008 Abstract — Supplement] Gomes E, Ma Q, Bais A, et al. Development of third generation designer T cells for CEA targeted cancer therapy. AACR Annual Meeting--San Diego, CA. Apr 12-16, 2008;68(9):4625. http://cancerres.aacrjournals.org/content/68/9_Supplement/4625 | Yes - 3rd generation | No |
| [2008 Abstract -- Supplement] Guo X, Bais A, Gomes-DeGama E, et al. High throughput selection of co-stimulation molecules for 3rd generation designer T cells (P4362). J Immunol May 1, 2013;190: 177.14. http://www.jimmunol.org/content/190/1_Supplement/177.14 | Yes - 3rd generation | No |
| [2009 Abstract] Junghans RP. 287. Phase I Clinical Trial and U.S. Regulatory Experience with Designer T Cells in Cancer. Molecular Therapy 2009;17:S112 - S113 https://doi.org/10.1016/S1525-0016(16)38645-2 | Yes | No |
| [2009 Abstract] Junghans RP, Abedi M, Bais A, et al. Phase I trial of advanced generation anti-CEA designer T cells in gastrointestinal and breast cancers. J Clin Oncol 27, 2009 (suppl; abstr e15123). | Yes - 2nd generation | No |
| [Presentation] Junghans RP. Cancer Gene Therapy with Designer T Cells: Toxicity Versus Activity | Yes - 1st and 2nd generation | No |
| [2010 Presentation] Junghans RP. Evolution of Trial Design using Gene Modified T Cells. 2010. (Old URL: http://osp.od.nih.gov/sites/default/files/1_Evolution_of_dTc_Junghans_cln.pdf). | Yes - 1st and 2nd generation | No |
| [2010 Presentation] Junghans RP. Evolution of Trial Design using Gene Modified T Cells. 2010. https://osp.od.nih.gov/wp-content/uploads/2014/01/1_Evolution_of_dTc_Junghans_cln.pdf (old URL: http://osp.od.nih.gov/sites/default/files/1_Evolution_of_dTc_Junghans_cln.pdf). | Yes | No |
| [2010 Presentation] Junghans RP. Antigens and Toxicity with Designer T Cells — Under FDA/OBA: G250, PSMA - Foreign Experience. 2010. LeY. 2010. https://osp.od.nih.gov/wp-content/uploads/2014/01/5_CAR_Solid_Tumor_Agns_Junghans_cln%20.pdf (old URL: http://osp.od.nih.gov/sites/default/files/5_CAR_Solid_Tumor_Agns_Junghans_cln%20.pdf) | Yes | No |
| [2010 Presentation] Antigens and Toxicity with Designer T Cells — Why the Different Experiences with CEA? 2010. (new URL: https://osp.od.nih.gov/wp-content/uploads/2014/01/10_CEA_Experience_Junghans_cln.pdf; old URL: https://osp.od.nih.gov/sites/default/files/10_CEA_Experience_Junghans_cln.pdf) | Yes | No |
| [2010 Presentation] Hawkins R. Chimeric Antigen Receptors (CARs). 2010. https://osp.od.nih.gov/wp-content/uploads/2014/01/5B_%20Hawkins_CEA_CD19_Junghans_clin%20.pdf (Old URL: http://osp.od.nih.gov/sites/default/files/5B_%20Hawkins_CEA_CD19_Junghans_cln%20.pdf) | Yes | No |
| [2010 Presentation] Finer M. T Cell Immunotherapy For Cancer — Chimeric Antigen Receptors Targeting Tag-72 Glycoprotein for Colorectal Cancer. 2010. https://osp.od.nih.gov/wp-content/uploads/2014/01/6_CAR-Solid_Tumor_Agns_Finer_RAC_cln.pdf; (old URL: http://osp.od.nih.gov/sites/default/files/6_CAR_Solid_Tumor_Agns_Finer_RAC_cln.pdf) | No | Yes - systemic (CC-9701) and intrahepatic (CC-9702) routes of administration [trials conducted in the 1990s] |
| Zhao Y, Moon E, Carpenito C, et al. Multiple injections of electroporated autologous T cells expressing a chimeric antigen receptor mediate regression of human disseminated tumor. Cancer research. 2010;70(22):9053-9061. doi:10.1158/0008-5472.CAN-10-2880. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2982929/ | No - anti-mesothelin CAR T cells | Yes - intratumoral (IT) injections and intraperitonal (IP) routes of administration |
| US Army/DOD BCRP IMPACT Award W81XWH-09-1-0039 2010 Annual Report. http://handle.dtic.mil/100.2/ADA541984 | Yes - 2nd generation | No |
| Berdik C. Confronting Cancer. Boston University Research. 2010. https://www.bu.edu/research/news-events/research-magazine/2010-toc/features/confronting-cancer/ | Yes | No |
| [Article ID 38654] Ma Q, Wang Y, Lo AS, et al. Cell Density Plays a Critical Role in Ex Vivo Expansion of T Cells for Adoptive Immunotherapy. Journal of Biomedicine and Biotechnology Volume 2010. doi:10.1155/2010/386545 | Yes - 2nd generation | No |

| Reference | | |
|---|---|---|
| Katz SC, Ryan K, Ahmed N, *et al.* Obstructive jaundice expands intrahepatic regulatory T cells which impair liver T lymphocyte function but modulate liver cholestasis and fibrosis. Journal of Immunology (Baltimore, Md : 1950). 2011;187(3):1150-1156. doi: 10.4049/jimmunol.1004077. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3372324/ | No | Yes - intrahepatic |
| Parkhurst MR, Yang JC, Langan RC, *et al.* T Cells Targeting Carcinoembryonic Antigen Can Mediate Regression of Metastatic Colorectal Cancer but Induce Severe Transient Colitis. Molecular Therapy. 2011;19(3):620-626. doi:10.1038/mt.2010.272. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3048186/ | No - anti-CEA TCR | No |
| Hombach AA, Abken H. Costimulation by chimeric antigen receptors revisited the T cell antitumor response benefits from combined CD28-OX40 signalling. Int J Cancer. 2011;129:2935–44. | Yes | No |
| Parente-Pereira AC, Burnet J, Ellison D, Foster J, *et al.* Trafficking of CAR-engineered human T cells following regional or systemic adoptive transfer in SCID beige mice. Journal of Clinical Immunology, 2011;31(4):710–18. doi: 10.1007/s10875-011-9532-8. | No | Yes - intratumoral (IT) or intraperitoneal (IP) route of administration |
| US Army/DOD BCRP IMPACT Award W81XWH-09-1-0039 May 2011 Annual Report. http://www.dtic.mil/dtic/tr/fulltext/u2/a549080.pdf | Yes - 2nd generation | No |
| US Army/DOD BCRP IMPACT Award W81XWH-09-1-0039 Poster (2011 Era of Hope) http://cdmrp.army.mil/pubs/video/bc/pdf/junghans_poster.pdf | Yes - 2nd generation | No |
| US Army/DOD BCRP IMPACT Award W81XWH-09-1-0039 Video (2011 Era of Hope) http://cdmrp.army.mil/pubs/video/bc/junghans_video.shtml | Yes - 2nd generation | No |
| US Army/DOD BCRP IMPACT Award W81XWH-09-1-0039 May 2012 Annual Report. http://www.dtic.mil/get-tr-doc/pdf?AD=ADA567468 | Yes - 2nd generation | No |
| NCT01723306 (*Phase II/Pilot Study of 2nd Generation Anti-CEA Designer T Cells in Adenocarcinomas*) — NIH OBA Protocol 1207-1171 [First Posted: November 7, 2012] | Yes - 2nd generation | No |
| Chmielewski M, Hahn O, Rappl G, *et al.* T cells that target carcinoembryonic antigen eradicate orthotopic pancreatic carcinomas without inducing autoimmune colitis in mice. Gastroenterology. 2012;143:1095-107 e2. https://www.gastrojournal.org/article/S0016-5085(12)00926-2/fulltext | Yes | No |
| Stenger M. Regional Infusion of Designer CAR T Cell to Treat Intrahepatic Metastases. The ASCO Post. 2012. www.ascopost.com/issues/may-15-2012/regional-infusion-of-designer-t-cells-to-treat-intrahepatic-metastases/ | Yes | Yes - hepatic artery route of administration |
| Naheed S, Ahmed N, Nguyen C, *et al.* Anti-CEA Designer T-cells are Suppressed by Liver Myeloid Suppressor Cells and Regional Infusion Enhances Efficacy for the Treatment of Intrahepatic Metastases. Society of Surgical Oncology 65th Annual Cancer Symposium. Presented March 23, 2012. Abstract 2. | Yes | Yes - hepatic artery route of administration |
| [2013 Presentation] Junghans, RP. T Cell Immunotherapy Optimizing Trial Design Session I Current Status of Cancer Immunotherapy: Trials, Results, and Challenges. 2013 https://osp.od.nih.gov/wp-content/uploads/2014/01/12_Junghans_s1_0.pdf (alternate new URL: https://osp.od.nih.gov/wp-content/uploads/2014/01/12_Junghans_s1.pdf; old URL: http://osp.od.nih.gov/sites/default/files/12_Junghans_s1_0.pdf). | Yes - 1st and 2nd generation | Yes - intrahepatic route of administration (on NIH OBA protocol 1207-1170) |
| Maher J, "Immunotherapy of Malignant Disease Using Chimeric Antigen Receptor Engrafted T Cells," ISRN Oncology. 2012, Article ID 278093, 23 pages. https://doi.org/10.5402/2012/278093 | Yes - CEA is incorporated therein | Yes - subcutaneous, intraperitoneal, or intratumoral route of administrations |
| TXu001998310 (*In Vivo Testing of 3rd Generation Anti-CEA Designer CAR T Cells with Bcl-xL in Pancreatic Cancer*) | Yes | Yes |
| TXu001998311 (*Phase 1b/2 Study of [2nd Generation] Anti-CEA Designer CAR T Cells in Breast Cancer*) | Yes | Yes |
| NCT01818323 (*Phase I Trial: T4 Immunotherapy of Head and Neck Cancer*) [first posted to clinicaltrials.gov March 26, 2013] | No - anti-erbB2 CAR T cells | Yes - Intra-tumoral route of administration |
| Hombach AA, Rappl G, Abken H. Arming Cytokine-induced Killer Cells With Chimeric Antigen Receptors: CD28 Outperforms Combined CD28-OX40 "Super-stimulation." Molecular Therapy. 2013;21(12):2268-2277. doi:10.1038/mt.2013.192. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3863798/ | Yes | No |
| Chmielewski M, Hombach AA, Abken H. Antigen-Specific T-Cell Activation Independently of the MHC: Chimeric Antigen Receptor-Redirected T Cells. Frontiers in Immunology. 2013;4:371. doi:10.3389/fimmu.2013.00371. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3822734/ | Yes | No |
| [2013 ASCO ABSTRACT 3079] Burga RA, Thorn M, Nguyen CT, *et al.* Targeting myeloid-derived suppressor cells and the PD-1/PD-L1 axis to enhance immunotherapy with anti-CEA designer T cells for the treatment of colorectal liver metastases. Journal of Clinical Oncology.2013;31(15)suppl, 3079-3079. | Yes | Liver metastases |
| [2013 ASCO POSTER 84584] Burga RA, Thorn M, Nguyen CT, *et al.* Targeting myeloid-derived suppressor cells and the PD-1/PD-L1 axis to enhance immunotherapy with anti-CEA designer T cells for the treatment of colorectal liver metastases. | Yes | Liver metastases |
| Ma Q, Wang Y, Lo AS-Y, *et al.* Cell Density Plays a Critical Role in Ex Vivo Expansion of T Cells for Adoptive Immunotherapy. Journal of Biomedicine and Biotechnology. 2010;2010:386545. doi:10.1155/2010/386545. | Yes - 2nd generation | No |

| | | |
|---|---|---|
| NCT01722149 (*Re-directed T Cells for the Treatment (FAP)-Positive Malignant Pleural Mesothelioma*) [First Posted to clinicaltrials.gov: November 6, 2012] | No - anti-FAP CAR T cells | Yes - pleural effusion route of administration |
| Petrausch U, Schuberth PC, Hagedorn C, *et al*. Re-directed T cells for the treatment of fibroblast activation protein (FAP)-positive malignant plusural mesothelioma (FAPME-1). BMC Cancer. 2012;12:615. doi:10.1186/1471-2407-12-615. | No - anti-FAP CAR T cells | Yes - pleural effusion route of administration |
| Alonso-Camino V, Sánchez-Martín D, Compte M, *et al*. CARbodies: Human Antibodies Against Cell Surface Tumor Antigens Selected From Repertoires Displayed on T Cell Chimeric Antigen Receptors. Molecular Therapy Nucleic Acids. 2013;2(5):e93-. doi: 10.1038/mtna.2013.19. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4817937/ | Yes - anti-CEA scFv MFE23 | No |
| van der Stegen SJ, Davies DM, Wilkie S, *et al*. Preclinical in vivo modeling of cytokine release syndrome induced by ErbB-retargeted human T cells: identifying a window of therapeutic opportunity? J Immunol. 2013;191:4589-4598. doi: 10.4049/jimmunol. 1301523. | No - anti-erbB2 CAR T cells | Yes - intravenous (IV), intratumoral (IT), intraperitoneal (IP) routes of administration |
| Cheadle, EJ, Sheard, V, Rothwell, DG, *et al*. Differential role of Th1 and Th2 cytokines in autotoxicity driven by CD19-specific second-generation chimeric antigen receptor T cells in a mouse model.J Immunol. 2014;192:3654–65. http://www.jimmunol.org/content/jimmunol/192/8/3654.full.pdf | Yes - anti-CEA scFv MFE23 | No |
| Globerson-Levin, A, Waks T, Eshhar Z, *et al*. Elimination of Progressive Mammary Cancer by Repeated Administrations of Chimeric Antigen Receptor-Modified T Cells. Molecular Therapy. 2014;22(5):1029-1038. https://www.cell.com/molecular-therapy-family/molecular-therapy/fulltext/S1525-0016(16)31234-5 | No - anti-erbB2 CAR T cells | Yes - Systemic and intratumoral (IT) route s of administration |
| Guest D, Kirillova N, Mowbray S, et al. Definition and application of good manufacturing process-compliant production of CEA-specific chimeric antigen receptor expressing T-cells for phase I/II clinical trial. Cancer Immunol Immunother. 2014;63:133. https://doi.org/10.1007/s00262-013-1492-9 | Yes - 1st generation | No |
| [2014 Abstract] Burga RA, Thorn M, Nguyen CT, *et al*. Liver Myeloid-Derived Suppressor Cells Expand in Response to Tumor-Associated GM-CSF Secretion and Suppress Anti-CEA Genetically Modified T Cells. https://academicsurgicalcongress.org/wp-content/uploads/2017/01/ASC14FinalProgramWEB.pdf (alternate URL: ). | Yes | Liver metastases |
| [2014 Supplement] Burga RA, Thorn M, Point G, *et al*. STAT3 is necessary for liver myeloid-derived suppressor cell PDL-1-dependent inhibition of genetically modified T cell function. J Immunol May 1, 2014;192(1 Supplement):125.15. | Yes | Liver metastases |
| [2014 Supplement] Burga RA, Thorn M, Point G, *et al*. Liver myeloid-derived suppressor cells inhibit genetically modified T cells in an IDO-dependent manner. J Immunol May 1, 2014;192(1 Supplement):125.15. | Yes | Liver metastases |
| Burga RA, Thorn M, Santos E, *et al*. Optimization of Regional Adoptive Cell Therapy for Liver Metastases through Prevention of Myeloid Derived Suppressor Cell Expansion and Blockade of PDL-1 Mediated T Cell Suppression. Society of Surgical Oncology 2014;21. | Yes | Liver metastases |
| [2014] Burga RA, Thorn M, Nguyen CT, *et al*. Liver Myeloid-Derived Suppressor Cells Expand in Response to Tumor-Associated GM-CSF Secretion and Suppress Anti-CEA Genetically Modified T Cells. Academic Surgical Congress 2014. | Yes | Liver metastases |
| [Abstract 40] Katz SC, McCormack EM, Burga R, *et al*. Hepatic Immunotherapy for Metastases (HITM) – A phase I trial of anti-CEA genetically modified T cells for unresectable adenocarcinoma. Society of Surgical Oncology 2014. | Yes - 2nd generation | Yes - hepatic artery route of administration |
| Saied A, Licata L, Burga R, *et al*. Serum cytokine and neutrophil:lymphocyte ratio changes in patients receiving hepatic artery genetically modified T cell infusions for metastatic carcinoma. Society of Surgical Oncology 2014 | Yes - 2nd generation | Yes - hepatic artery route of administration |
| Adusumilli PS, Cherkassky L, Villena-Vargas J, *et al*. Regional delivery of mesothelin-targeted CAR T cell therapy generates potent and long-lasting CD4-dependent tumor immunity. Science translational medicine. 2014;6(261):261ra151. doi:10.1126/scitranslmed.3010162. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4373413/ | No - anti-mesothelin CAR T cells | Yes |
| Shi H, Sun M, Liu L, Wang Z. Chimeric antigen receptor for adoptive immunotherapy of cancer: latest research and future prospects. Molecular Cancer. 2014;13:219. doi: 10.1186/1476-4598-13-219. | No | Yes - intratumoral and intraperitoneal routes of administration |
| Point G, Thorn M, Cunetta M, *et al*. Anti-CEA chimeric antigen receptor T cells in combination with suppressor cell targeting for the treatment of colorectal cancer peritoneal metastases. American Association of Immunology 2015. | Yes | Yes - intraperitoneal route of administration |
| Point G, Thorn M, Bais A, *et al*. Intraperitoneal Delivery of Anti-CEA Chimeric Antigen Receptor T Cells in a Murine Model of Peritoneal Carcinomatosis. Society of Surgical Oncology 2015. | Yes | Yes - intraperitoneal route of administration |
| Katz SC, Saied A, Burga RA, *et al*. Surrogates of Response to Hepatic Artery Anti-CEA CAR-T Cell Infusions for Liver Metastases. Society of University Surgeons 2015. | Yes | Yes - hepatic artery route of administration |
| [Thesis - published in 2016] Lashtur N. CAR-T cell therapy for liver metastases. 2016. https://open.bu.edu/bitstream/handle/2144/19196/Lashtur_bu_0017N_12377.pdf?sequence=1 | Yes | Liver metastases |

**Appendix A. Prior Art and/or Documents to Establish Obviousness for the '818 Application.**