UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SARA ELIZABETH SIEGLER and
Sara Elizabeth Siegler,

         Plaintiffs,

  vs.

SORRENTO THERAPEUTICS, INC.,
TNK THERAPEUTICS, INC., BDL
PRODUCTS, INC., CARGENIX
HOLDINGS LLC, TUFTS MEDICAL
CENTER, PROSPECT
CHARTERCARE ROGER WILLIAMS
MEDICAL CENTER LLC, HENRY JI,
RICHARD PAUL JUNGHANS,
STEVEN C. KATZ, and THE BOARD
OF DIRECTORS OF SORRENTO
THERAPEUTICS, INC.,

         Defendants.

Case No. 3:18-cv-01681-GPC-NLS

**ORDER**

**(1) GRANTING THE SORRENTO DEFENDANTS' MOTION TO DISMISS [ECF NO. 90];**

**(2) DENYING AS MOOT TUFTS MEDICAL CENTER'S MOTION TO DISMISS [ECF NO. 91]**

**(3) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [ECF NO. 111.]**

**(4) GRANTING PLAINTIFF'S MOTION TO INTRODUCE NEWLY DISCOVERED EVIDENCE [ECF NO. 124.]**

     Before the Court are four motions. The first is a motion to dismiss the

Second Amended Complaint brought by defendants BDL Products, Inc., Cargenix

Holdings LLC, Henry Ji, Sorrento Therapeutics, Inc., TNK Therapeutics, Inc.

(hereinafter, the "Sorrento Defendants"), on May 17, 2019.[1] (ECF No. 90.) This motion has been fully briefed. (ECF Nos. 113, 117.) The second is a motion to dismiss for failure to state a claim and lack of personal jurisdiction by defendant Tufts Medical Center ("Tufts"), dated May 17, 2019. (ECF No. 91.) This motion has also received the benefit of full briefing. (*See* ECF Nos. 114, 118.) The third and final motion is pro se Plaintiff Sara Elizabeth Siegler's ("Plaintiff's") motion for reconsideration, dated June 30, 2019 (ECF No. 111), which the parties have fully briefed. (ECF Nos. 113, 122.) The final motion is Plaintiff's motion "to introduce newly discovered evidence," filed July 31, 2019 (ECF No. 124), which was opposed on August 1, 2019. (ECF No. 125.)

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. For the reasons set forth below, the Court **GRANTS** the Sorrento Defendants' motion to dismiss, **DENIES as moot** Tufts's motion to dismiss, **DENIES** Plaintiff's motion for reconsideration, and **GRANTS** Plaintiff's motion to introduce newly discovered evidence.

## I.    Background

### A. Factual Background

The Court takes as true the factual allegations stated in Plaintiff's Second Amended Complaint ("SAC"). (ECF No. 86.) Since the SAC incorporates many of the same allegations raised previously in Plaintiff's First Amended Complaint ("FAC"), (ECF No. 3), the Court will rely on its prior recitation of the allegations

---

[1]    Defendants Tufts, Richard Paul Junghans, and Steven C. Katz have filed notices of joinder. (ECF Nos. 92, 93, 94.)

contained in the FAC (*see* ECF No. 75), and supplement with newly-pleaded allegations where applicable and relevant.[2]

## 1. Introduction

Plaintiff Sara Elizabeth Siegler is a resident of Ohio. Plaintiff established an Ohio-based sole-proprietorship in her own name in April of 2011. Plaintiff's sole-proprietorship is "an early stage micro-entity without any marketed pharmaceutical products to date." (ECF No. 3, at 46.) Plaintiff's work through her sole-proprietorship has made her a "potential participant in the CAR T cell pharmaceutical market both domestically and abroad." (*Id.*)

In 2013, Plaintiff began corresponding with defendant Richard Junghans ("Dr. Junghans"). As a result of this correspondence, Plaintiff began to work on a planned collaboration with Dr. Junghans to develop new chimeric antigen receptor ("CAR") T cell-based therapeutics for virology and oncology indications, which had been previously invented by Dr. Junghans. (ECF No. 86, at 4.) According to Plaintiff, Dr. Junghans previously filed patent application No. 10/006,711 in 2002 for a "second generation CAR T cell construct with a humanized single chain variable fragment . . . binding domain targeting the carcinoembryonic antigen ("CEA") on tumor cells," but abandoned that application as of February 17, 2006. (*Id.* at 4, 95.)

Beginning in late 2013 through August 2015, Plaintiff created two "work products" through the collaboration with Dr. Junghans. (*Id.* at 3.) During this period, Plaintiff sent Dr. Junghans several "drafts" of the work products. (*Id.* at 46.) Those work products encompass two text-based scientific articles (hereinafter

---

[2] Plaintiff's operative complaint discusses many matters and details which do not aid her claims. Her SAC is 119 pages long and supplemented by 425 pages of attached exhibits. (ECF Nos. 86, 87.) The Court will reference only those matters which are pertinent and necessary for a determination on the pending motions.

the "Copyrighted Articles") which were registered with the United States Copyright Office on September 8, 2015. (ECF No. 3, at 85, 91.) They include a work entitled "In Vivo Testing of 3rd Generation Anti-CEA Designer CAR T Cells with Bcl-xL in Pancreatic Cancer," registered as TXu 1-998-310 (the "'310 Copyright") and a work entitled "Phase 1b/2 Study of [2nd Generation] Anti-CEA Designer CAR T Cells in Breast Cancer," registered as TXu 1-998-311 (the "'311 Copyright"). (*Id.*)

To develop this research, Plaintiff made plans to utilize the current Good Manufacturing Practice ("cGMP") facility at defendant Prospect Chartercare Roger Williams Medical Center LLC ("RWMC"), a for-profit medical institution in Rhode Island.

### 2. Dr. Junghans's Involvement with BDL and Sorrento Therapeutics, Inc.

In May of 2014, after Plaintiff's initial contact with Dr. Junghans, Dr. Junghans took employment on a part-time basis with Tufts, a not-for-profit medical institution with its principal place of business in Massachusetts. (ECF No. 3, at 11). Dr. Junghans was initially employed as an Investigator in the Department of Medicine, Division of Hematology and Oncology, and later served as a member of the Special and Scientific Staff. (ECF No. 19-2 (Decl. of Susan Blanchard, dated Sept. 26, 2018).)

Thereafter, on March 4, 2015, Dr. Junghans executed a nondisclosure agreement with defendant Sorrento Therapeutics, Inc. ("SRNE"). Plaintiff alleges that this nondisclosure agreement was intended to scuttle Plaintiff out of the planned collaboration and to deprive her of her right to first refusal on Dr. Junghans's inventions. (ECF No. 68, at 6.)

On or about July 16, 2015, Dr. Junghans registered in Massachusetts a company, i.e., defendant BDL Products, Inc. ("BDL"). Plaintiff alleges that BDL

was created for the sole purpose of facilitating Dr. Junghans's theft of Plaintiff's intellectual property. (ECF No. 3, at 5.) According to Plaintiff, Dr. Junghans passed off her work as his own, and violated her right to first refusal on other CAR T cell constructs for which Plaintiff had not yet registered copyrights, including the "anti-c-KIT CAR, the anti-GD3 CAR, the anti-PSMA CAR, and the anti-IL13Rα2 CAR." (ECF No. 3, at 11.) After its establishment, BDL was acquired by SRNE via its wholly-owned subsidiary, TNK Therapeutics, Inc. ("TNK"). (*Id.*) Henry Ji, the Chairman, President, and CEO of SRNE, and the individual members of SRNE's Board of Directors, have been named as defendants to this suit.

### 3. The Stock Purchase Agreement (SPA), the Membership Interest Purchase Agreement (MIPA)

On August 7, 2015, Dr. Junghans and BDL executed a Stock Purchase Agreement ("SPA") with TNK. The SPA was allegedly contingent upon the closing of a Membership Interest Purchase Agreement ("MPA") between TNK and CARgenix Holdings LLC ("Cargenix"), a Rhode Island corporation that has as one of its equity owners defendant Steven C. Katz ("Dr. Katz"). (*Id.* at 6, 11.) The MPA includes a section titled "Execution of Exclusive License Agreements," which provides for the exclusive licensing of the "IL13 CAR, the c-KIT CAR, and the HIV CAR." (*Id.* at 20.) According to Plaintiff, also in either the MPA or the SPA was a "restrictive covenant" provision that prohibited Dr. Junghans and his affiliated research institution, i.e., Tufts, from working with her as part of the originally-planned collaboration. (*Id.*) It is further alleged that SRNE and TNK enticed Dr. Junghans to misappropriate and infringe Plaintiff's intellectual property in exchange for a $6,000,000 stock payment as part of the SPA. (*Id.* at 16.)

Plaintiff became privy to the SPA and MPA in August of 2015. Around August 24, 2015, she received email correspondence from Susan Blanchard, Vice President for Research Administration at Tufts. The email exchange apparently

signaled to Plaintiff that her planned collaboration with Dr. Junghans was in potential peril. (*Id.* at 17.) A few days later, on August 27, 2015, Dr. Junghans sent Plaintiff an email advising that "i/tufts can not help a competitor" and "i/tufts can continue to do my own 'research' including collaborations." (*Id.*) Plaintiff believes that the contents of those emails derive from the restrictive covenants found in either the MPA or the SPA. Communications between Dr. Junghans and Plaintiff about further collaboration were unsuccessful, and Plaintiff ultimately terminated her relationship with Dr. Junghans after discovering that it was Dr. Junghans' company, i.e., BDL, which had precipitated the restrictive covenant. (*Id.* at 18.)

### 4. Exclusion from RWMC's cGMP Facility

In April 2016, SRNE and TNK entered into an Immunotherapy Research Collaboration Agreement ("IRCA") with RWMC, whose cGMP facility Plaintiff had hoped to utilize. Although it is not entirely clear based on Plaintiff's pleadings whether the IRCA contained an exclusivity clause, Plaintiff indicates that as a result of the IRCA, she was effectively precluded from using the cGMP facility. As a consequence, Plaintiff avers that she is bereft of a "cGMP facility to manufacture clinical grade investigational products for use in the pre-approval phases of the product development lifecycle." (*Id.* at 21.) Later, in January of 2018, the initial IRCA was extended. That extension unambiguously contained an "exclusive agreement to operate the 'Cellular Immunotherapy and Gene Therapy Facility' at Roger Williams Medical Care Center . . . under Sorrento management." (*Id.* at 22.)

### 5. The HITM-SURE Trial

On July 14, 2016, a clinical trial referred to as "HITM-SURE" was registered to clinicaltrials.gov with a National Library of Medicine identifier NCT02850536. The HITM-SURE trial is a study of a U.S. Food and Drug Administration ("FDA") regulated product—i.e., CAR T cells—and lists RWMC as its sponsor. The current

title for the trial is "CAR-T Hepatic Artery Infusions or Pancreatic Venous Infusions for CEA-Expressing Liver Metastases or Pancreas Cancer." (ECF No. 86, at 44.) According to Plaintiff, the HITM-SURE trial is a "substantially similar Phase 1b clinical trial utilizing the 2nd generation anti-CEA CAR T cells" at issue in her Copyrighted Articles, which describe a Phase 1b/2 study of CAR T Cells in Breast Cancer ('311 Copyright),and testing of 3rd generation CAR T cells in Pancreatic Cancer ('310 Copyright). (*Id.* at 43.) Although SRNE is not listed in the registration for the HITM-SURE trial, SRNE has incorporated information about the HITM-SURE trial into its corporate presentations and investor materials as of July, 2018. (*Id.* at 45.)

### 6. The T-001 Investigational New Drug

Starting in August 2015, SRNE announced through a number of corporate presentation slides its plan to develop an investigational new drug ("IND") denoted as T-001. (ECF No. 3, at 30–31.) Plaintiff's quarrel with the T-001 IND is not clearly pleaded, but it appears that Plaintiff believes that the restrictive covenant in the SPA/MIPA foreclosed her from working with Dr. Junghans on its development. As a consequence of her exclusion on the T-001 IND project, Plaintiff claims she will be unlikely to obtain a Letter of Authorization from the FDA to achieve an IND of her own.

### 7. The '818 Patent and '370 Patent Application by RWMC

After Plaintiff registered her copyrights, RWMC filed patent application No. 15/210,818 (the "'818 application"), which listed Dr. Junghans and Dr. Katz as inventors. (*Id.* at 22–23.) According to Plaintiff, this patent application was flawed in a number of ways: (1) it should have been precluded by Dr. Junghans's previously filed and abandoned patent application—i.e., the one docketed as No. 10/006,711; (2) it neglected to mention a number of earlier trials conducted by Dr.

Junghans; and (3) it was obvious in light of her copyrights and constituted copyright infringement. (*Id.* at 23–24.) The '818 application was approved by the United States Patent and Trademark Office ("US PTO") on September 11, 2018, after Plaintiff's First Amended Complaint was filed.[3] (ECF No. 46, at 16.)

RWMC also applied for a patent on the 2nd generation, retrovirally transduced anti-CEA CAR T cell construct that Plaintiff claims was the subject of her '311 Copyright. This resulted in patent application No. 15/099,370 (the "'370 application"), the validity of which Plaintiff contests on grounds previously enumerated with respect to the '818 application. Unlike RWMC's '818 application, the '370 application was denied by the US PTO and a Final Rejection letter was issued July 2, 2018. (ECF No. 3, at 27.)

### 8. Tufts's '825 Patent Application and its Sponsored Research Agreements with SRNE

In addition to the two patent applications filed by RWMC, Plaintiff alleges copyright infringement by Tufts. (*Id.* at 32–33.) Tufts filed a patent application with the US PTO entitled "Compositions and Methods for Improving Immune Cell Function," docketed as No. 62/362,825 (the "'825 application"). The '825 application is alleged to encompass 2nd generation anti-CEA CAR T cells with YY1 or EZH2 inhibition. The '825 application remains pending.

Plaintiff indicates that the '825 application may have arisen out of work performed by Dr. Junghans as part of two agreements between Tufts and SRNE. On March 14, 2016, Tufts Medical Center executed a Sponsored Research Agreement ("SRA") with SRNE. (*Id.* at 19.) Under the terms of the SRA, SRNE awarded Tufts $161,700 in laboratory funding for "discrete research to be conducted by Dr. Junghans at Tufts Medical Center in Boston, Massachusetts."

---

[3] The Court will refer to the patent granted as the '818 patent.

(ECF No. 19-2, at 5.)  One year later, on January 27, 2017, Tufts executed a second SRA with SRNE, termed the "Letter Agreement," valued at $129,000 in laboratory funding.  (*Id.*)

### 9.  SRNE and TNK's Business Dealings with 3SBio, Celularity, and Virttu Biologics

Plaintiff also takes umbrage with a number of SRNE and TNK's business dealings.  Specifically, Plaintiff alleges that SRNE entered into a joint-venture agreement with Shenyang Sunshine Pharmaceutical Company Ltd. ("3SBio") in June of 2016 to commercialize and develop anti-CEA CAR T.  (*Id.* at 33.)  As part of this joint venture, SRNE is alleged to have illegally granted to 3SBio an exclusive license to market the anti-CEA CAR T cell in the "Greater China market," a market which encompasses "Mainland China, Hong Kong, and Macau." (*Id.* at 34.)

Plaintiff also objects to TNK's contractual relationship with Celularity. Plaintiff believes that TNK licensed a number of CAR T constructs to Celularity which implicate her copyrights.  (*Id.* at 34–35.)  Although the constructs subject to the TNK/Celularity License and Transfer Agreement were redacted in SEC filings, Plaintiff alleges on information and belief that some of the 53 constructs implicated are likely to contain her intellectual property.

Finally, Plaintiff challenges TNK's acquisition of Virttu Biologics ("Virttu"), a Scottish company.  (*Id.* at 37.)  Plaintiff avers that TNK executed a binding term sheet to acquire Virttu to research, develop, and ultimately commercialize a CAR T cell and oncolytic virus combination based therapeutic.  This was problematic for Plaintiff because the anticipated commercialization of CAR T cells by Virttu would implement, or be derivative of, "research plan documents" incorporated within Plaintiff's copyrights, which provided "alternative strategies . . . outlining methods

to improve the efficacy and/or safety of the investigational anti-CEA CAR T cell products." (*Id.* at 37.) Plaintiff fears that Virttu will use alternative vectors, co-stimulatory signals, and different tumor associated antigens, and in effect implement the alternative strategies she detailed in the '311 Copyright.

### B. Procedural Background

Plaintiff's suit alleges copyright infringement, anticompetitive and monopolizing behavior, unfair business practices, and Constitutional violations on the basis of the above.

Broadly speaking, Plaintiff asserts that Defendants unlawfully appropriated her intellectual property by performing experimental trials similar to the ones she described in her Copyrighted Articles and by attempting to secure patents for constructs she described therein. According to Plaintiff, no patents should issue because the CAR T cell technologies and constructs Defendants have sought to patent were obvious in light of her Copyrighted Articles. She also maintains that Defendants improperly incorporated her intellectual property into corporate presentations, conspired to exclude her from the CEA CAR T cell market, and contracted with other entities to commercialize her Copyrighted Articles both domestically and abroad. Although she avers that the CAR T cell goods market for solid tumors "has not yet been established," (ECF No. 68, at 89), Plaintiff fears that that the setbacks dealt by Defendants have stymied her ability to reach key authorization milestones, such that SRNE and TNK might "enjoy first to market status in the event of approval for marketing by the US FDA." (*Id.* at 70.) Plaintiff further alleges that she has been excluded from conducting investigational activities at RWMC.

### 1. Dismissal of the First Amended Complaint

Plaintiff filed her original complaint on July 24, 2018.  (ECF No. 1.)  On August 20, 2018, Plaintiff filed her FAC.  (ECF No. 3.)  Defendants filed two motions to dismiss.

On February 12, 2019, the Court issued an order dismissing the FAC in full. (ECF No. 75, hereinafter the "FAC dismissal order").  In this order, the Court enumerated the relevant deficiencies in Plaintiff's pleadings: (1) Plaintiff's copyright infringement allegations failed because Plaintiff failed to plead what, if any, elements of her Copyrighted Articles were copyrightable subject matter as opposed to freely-copiable ideas and scientific theories; (2) her antitrust claims obliged her to plead the existence of a relevant market and an injury to competition; and (3) her Fifth Amendment Takings claim failed because Plaintiff did not allege how the private actors in the case took government action.  The Court also dismissed Tufts for lack of personal jurisdiction.

With two exceptions, dismissal was with leave to amend: the Court dismissed with prejudice Plaintiff's Fifth Amendment Takings claim, and concluded that Plaintiff could not name the Board of Directors of SRNE as a defendant because corporate boards of directors were part of the corporation, and had no separate legal identity as such.

## 2.  Second Amended Complaint

On May 3, 2019, Plaintiff filed her SAC, alleging many of the same claims as appeared in her FAC.  (ECF No. 86.)

As before, Plaintiff alleges copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*. (Claims for Relief I, III, IV, V), misappropriation of trade secrets under California's Uniform Trade Secrets Act ("CUTSA"), CAL. CODE CIV. PROC. §§ 3425 *et seq.*, and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (Claims for Relief II and VI); antitrust violations

under the Sherman and Clayton Acts, 15 U.S.C. §§ 1-7, 12-27 (Claim for Relief VII through XIII); and violation of California's Unfair Competition Law, CAL. BUS. CODE § 17200 (Claim for Relief XIV). Plaintiff has newly pleaded causes of action for "Unjust, Uncompensated Takings" in violation of the Fourteenth Amendment (Claim for Relief VII), and unjust enrichment (Claim for Relief XVII).

Pursuant to those claims, Plaintiff seeks, *inter alia*, injunctive relief, treble damages, costs, and declaratory judgments that the '818 patent, and the '370 and '825 patent applications are invalid. (Claim for Relief XV, XVI). The declaratory relief sought with respect to the '370 and '825 applications are newly stated in the SAC.

With some exceptions, Plaintiff's factual pleadings remain largely unchanged from those in the FAC. While the Court has integrated the relevant parts of Plaintiff's new allegations into the "Factual Background" discussion *supra*, they are worth highlighting separately. First, Plaintiff states that she had sent prior "drafts" of her Copyrighted Articles to Dr. Junghans during the period of their collaboration, i.e., from 2013 to 2015. Second, Plaintiff now pleads that Dr. Junghans executed a nondisclosure agreement with SRNE on March 4, 2015. Third, Plaintiff has replaced the Board of Directors of SRNE as a defendant; she explains that she now seeks to proceed against the individual members who "comprise[]" the Board. (ECF No. 68, at 20.)

### 3. Motions to Dismiss the Second Amended Complaint

On May 25, 2019, the Sorrento Defendants filed a motion to dismiss the SAC. (ECF No. 90.) That motion disputes the sufficiency of Plaintiff's SAC under Rule 12(b)(6), and claims that Plaintiff failed to address the deficiencies noted in the FAC dismissal order. Plaintiff has opposed the motion (ECF No. 113), and the Sorrento Defendants have replied (ECF No. 117).

That same day, Tufts filed a motion to dismiss pursuant to Rule 12(b)(2) and 12(b)(6). (ECF No. 91.) That motion incorporated by reference the arguments made by the Sorrento Defendants and additionally questioned the Court's personal jurisdiction over Tufts. The argument is that Tufts, as a Massachusetts entity, was neither at home in California, nor subject to suit there as a matter of specific jurisdiction. Plaintiff filed an opposition (ECF No. 114), and Tufts replied (ECF No. 118).

### 4. Plaintiff's Motion for Reconsideration

After dismissal of the FAC, Plaintiff filed two motions: a May 10, 2019 motion for interlocutory appeal, which sought certification of the Court's dismissal with prejudice as to the Board of Directors of SRNE and the Fifth Amendment claim (ECF No. 89), and a fourth "omnibus motion" that requested, *inter alia*, leave to file a third amended complaint (ECF No. 96). The Court denied both motions on June 20, 2019. (ECF No. 106.)

On June 30, 2019, Plaintiff filed for reconsideration. (ECF No. 111.) This motion has been fully briefed (ECF Nos. 113, 122), and is pending before the Court.

### 5. Plaintiff's Motion to File Newly Discovered Evidence

On July 31, 2019, Plaintiff filed a motion to introduce newly discovered evidence. (ECF No. 124.) On August 1, 2019, Defendants filed an opposition, arguing that there was no basis for such a filing and that in any event the evidence would not save Plaintiff's SAC. (ECF No. 125.)

### 6. Roadmap

The Court will address first the Sorrento Defendants' Motion to Dismiss. It will then turn to Plaintiff's motion to introduce newly discovered evidence, and

CASE NO. 18-CV-01681-GPC-BGS

then address Tuft's Motion to Dismiss, before concluding with Plaintiff's motion for reconsideration.

## II.     The Sorrento Defendants' Motion to Dismiss under Rule 12(b)(6)

The Sorrento Defendants have moved to the SAC in its entirety.  They claim that Plaintiff's SAC "essentially repeats the allegations from . . . earlier complaints[,] add[s] basically no new facts[,] and simply re-pleads the same copyright, trade secret and antitrust claims that this Court dismissed as unsupported by the original allegations."  (ECF No. 90-1, at 6.)

After a review of the SAC, the parties' papers, and the applicable law, the Court agrees that Plaintiff's SAC must be dismissed for failure to cure the deficiencies previously identified by the Court.

### A. Rule 12(b)(6) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Id.* at 545.  "[F]or a complaint to survive a motion to dismiss, the non–conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume

CASE NO. 18-CV-01681-GPC-BGS

the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

In addition, courts "liberally construe[]" documents filed pro se, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), affording pro se plaintiffs benefit of the doubt. *Thompson*, 295 F.3d at 895; *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) ("[T]he Court has held pro se pleadings to a less stringent standard than briefs by counsel and reads pro se pleadings generously, 'however inartfully pleaded.'"). Pro se litigants "must be ensured meaningful access to the courts." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc). In giving liberal interpretation to a pro se complaint, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Nor does a litigant's pro se status excuse her from complying with the substantive rules of the court. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003). As with pleadings drafted by lawyers, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Claims may be dismissed with or without leave to amend. Several factors drive this inquiry: "the presence or absence of undue delay, bad faith, dilatory

motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Futility may be found, and leave to amend denied, if the court "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schrieber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). The Court's discretion to deny or grant leave to amend is "particularly broad where a plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

## A. Copyright Infringement Claims

### 1. Elements of Copyright Infringement

To state a claim for copyright infringement, Plaintiff must establish two elements: "(1) ownership of the copyright; and (2) infringement – that the defendant copied protected elements of the plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000); *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991). Establishing the second element requires a showing of "two distinct components: 'copying' and 'unlawful appropriation.'" *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018).

Unlawful appropriation may occur where the defendant has directly copied, or engaged in a "virtual duplication of a plaintiff's entire work," *Narell v. Freeman*, 872 F.2d 907, 910 (1989), or upon a showing that the "defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Three Boys*, 212 F.3d at 481; *see also Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). Under either theory, unlawful appropriation requires a plaintiff to "allege facts plausibly showing that the defendants copied the protected elements in

[her] work." *Malibu Textiles, Inc. Label Int'l, Inc.*, 668 F. App'x 803, 803 (9th Cir. 2016) (citing *Three Boys*, 212 F.3d at 481).

## 2. The Parties' Contentions

Plaintiff's SAC renews her claims of copyright infringement under the Copyright Act (Claims for Relief I, II, IV, V). Plaintiff alleges that her Copyrighted Articles "cover anti-CEA CAR T cells," (ECF No. 86, at 81), and that Defendants committed copyright infringement by applying for CAR T cell patents on various indications, marketing anti-CEA CAR T cell technologies in their corporate presentations, and conducting clinical trials with CAR T cells.

After the Court dismissed the prior round of claims for failing to allege unlawful copying, or the existence of protectable elements, i.e., copyrightable subject matter, Plaintiff slightly altered the verbiage of her claims so that the FAC newly alleges that Defendants copied the "copyrightable expression" of her Copyrighted Articles. (ECF No. 86, at 10, 42–43.) Defendants argue that this pleading is not enough. According to Defendants, Plaintiff's claims must be dismissed because she did not adequately allege verbatim copying of any copyrighted expression and made no plausible showing of substantial similarity between her and Defendants' works because the complaint is devoid of any allegations that the Copyrighted Articles contain protected elements or copyrightable subject matter.

## 3. Discussion

After a review of the SAC, the Court agrees with Defendants that Plaintiff has failed to plead protectable expression.

As the Court previously explained in the FAC dismissal order, not every element of a copyrighted work is protected by copyright law. *See Feist*, 499 U.S. at 348 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected."). Section 102 of the Copyright Act distinguishes

between subject matter properly subject to copyright, and that which is categorically uncopyrightable.   Copyright protection, according to Section 102, does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in [the copyrighted] work."  17 U.S.C. § 102(b).

Under this "idea/expression dichotomy, 'every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication'; the author's expression alone gains copyright protection." *Golan v. Holder*, 565 U.S. 302, 328 (2012) (quoting *Eldred v. Ashcroft*, 537 U.S. 187, 209 (2003)).  Thus, the law affords no protection over uncopyrightable subject matter unless defendants "bodily appropriate" the plaintiff's expression thereof, *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 489 (9th Cir. 1984), by engaging in a "virtual duplication of a plaintiff's entire work."  *Narell v. Freeman*, 872 F.2d 907, 910–11 (9th Cir. 1989). To exclude others from commercializing, utilizing, or implementing the any ideas contained within a copyrighted work, application must be made to the patent authorities, rather than the copyright regime. *Baker v. Selden*, 101 U.S. 99, 105 (1879); *see also Mazer v. Stein*, 347 U.S. 201, 217 (1954) ("Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself.")

The Court's FAC dismissal order observed that Plaintiff did not plead or identify what, if any, elements of her Copyrighted Articles were protectable under Section 102.  Because Plaintiff did not clearly articulate the contents of her Copyrighted Articles, the Court construed the FAC liberally to conclude that Plaintiff had secured copyrights on two scientific articles which described a Phase 1/b2 clinical trial and provided a research agenda to improve anti-CEA CAR T cell therapies. Based on Plaintiff's objections to Defendants' alleged marketing,

commercialization, and incorporation of her work in clinical trials and business endeavors, the Court understood Plaintiff as seeking dominion over the ideas and scientific process conveyed in her Copyrighted Articles, which according to Section 102, are inherently unprotected content. *See Elsevier Inc. v. www.Sci-Hub.org*, No. 15 CIV. 4282 RWS, 2015 WL 6657363, at *5 (S.D.N.Y. Oct. 30, 2015) ("[T]he 'idea/expression dichotomy' ensures that while a scientific article may be subject to copyright, the ideas and insights within that article are not.").

Citing the Ninth Circuit's decision in *Bikram's Yoga*, the Court explained that no claim for infringement may lie where the copied elements were unprotectable scientific or technical methods or processes; just as "the copyright for a book describing how to perform a complicated surgery does not give the holder the exclusive right to perform the surgery," neither does a copyright for scientific articles describing how to perform trials involving anti-CEA CAR T cell constructs convey upon the copyright holder the exclusive right to perform such trials or to profit off of them. *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1039 (9th Cir. 2015). Plaintiff was granted leave to amend to identify what protectable elements of her copyrighted work were unlawfully appropriated by Defendants.

Plaintiff's amended pleading, however, fares no better, and fails on two independent grounds.

### a. Failure to Plead Protectable Elements and Copyrightable Subject Matter

Plaintiff has failed to cure the deficiency explicitly noted by the Court in the FAC dismissal order. Contrary to the Court's instructions, Plaintiff's SAC again fails to allege that her Copyrighted Articles contain copyrightable subject matter. Plaintiff's only responsive pleading on this point is an unadorned assertion that "the entire contents of both the TXu001998310 and TXu001998311 registrations are

CASE NO. 18-CV-01681-GPC-BGS

protected via copyright and trade secret . . . ."  (ECF No. 86, at 5.)   This is naught but a "threadbare recital" of a material element of an infringement claim, supported by a "conclusory statement," which simply "do[es] not suffice" to plead the existence of protectable elements.  *Iqbal*, 556 U.S. at 679.

Based on Plaintiff's other pleadings, it is once more apparent to the Court that Plaintiff seeks to exclude Defendants from implementing and relying on the theories, research ideas, and scientific discoveries described in her Copyrighted Articles.  For example, Plaintiff states that her Copyrighted Articles "were research plan documents that included an alternative strategies section outlining methods to improve the efficacy and/or safety of the investigational anti-CEA CAR T cell products."  (ECF No. 86, at 55.)  "The alternative strategies section of the *Research Strategy* component of TXu001998311 includes but is not limited to the use of an alternative vector (as is now planned by SES), alternative methods of administration, the use of a different tumor associated antigen (*e.g.*, the anti-ior C2 CAR T cells for which Plaintiff(s) have registered IP)." (*Id.*) Plaintiff claims that Defendants infringed on this aspect of her Copyrighted Articles by acquiring Virttu to "research, develop, and ultimately commercialize a CAR T cell and oncolytic virus combination based therapeutic."  (*Id.*)  This pleading makes plain Plaintiff's theory of copyright: if I obtain copyright registration for an article *describing* a scientific discovery, course of treatment, or cell construct, then I also get to prevent others from performing, commercializing, or utilizing the same.

But the copyright laws fundamentally do not operate in this manner. Copyright protection is not available for "scientific or technical methods or discoveries . . . mathematical principles; formulas, algorithms; or any concept, process or method of operation."  *CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc*., 44 F.3d 61, 73 (2d Cir. 1994) (quoting Copyright

CASE NO. 18-CV-01681-GPC-BGS

Office Circular 31).[4] "In order to enjoy a lawful monopoly over the idea or functional principle underlying a work, the creator of the work must satisfy the more stringent standard imposed by the patent laws." *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1526 (9th Cir. 1992), *as amended* (Jan. 6, 1993). Since Plaintiff freely admits that she has no patent over the ideas, research plans, or processes described in her Copyrighted Articles, Plaintiff cannot seek to preclude others from making use of the concepts and uncopyrightable subject matter contained therein.

Where a claim of infringement rests only on uncopyrightable elements, the claim fails as a matter of law. *See, e.g.*, *Gorski v. The Gymboree Corp.*, No. 14-CV-01314-LHK, 2014 WL 3533324, at *5 (N.D. Cal. July 16, 2014) (dismissing infringement claim because "Gorski has not alleged any protectable elements," and therefore failed to "allege[] sufficient facts to suggest . . . substantial similarity"); *Evans v. McCoy-Harris*, 2019 WL 1002512, at *3 (dismissing because "the FAC is entirely devoid of allegations establishing the protectable elements of the infringed works").

### b.  Inadequate Allegation of Copying

Additionally, to the extent that Plaintiff intends to bring a claim based on virtual duplication of her "copyrightable expressions,"—i.e., that Defendants engaged in a verbatim copying of her Copyrighted Articles—Plaintiff has not

---

[4]      *See e.g.*, *Baker*, 101 U.S. at 103 ("The copyright of a work on mathematical science cannot give to the author an exclusive right to the methods of operation which he propounds, or to the diagrams which he employs to explain them, so as to prevent an engineer from using them whenever occasion requires."); *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977 (7th Cir. 1997) ("Einstein's articles laying out the special and general theories of relativity were original works even though many of the core equations, such as the famous E=mc2, express 'facts' and therefore are not copyrightable."); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1556 n.19 (11th Cir. 1996) ("Were we to grant copyright protection to MiTek's user interface, which is nothing more than a process, we would be affording copyright protection to a process that is the province of patent law.").

adequately alleged such a claim.

The SAC alleges that infringement occurred "due to copying of the copyrightable expression of the work and/or ideas of Plaintiff(s)". (ECF No. 86, at 63.) Again, this is yet another conclusory assertion of an element of copyright infringement which the Court cannot credit. *See Twombly*, 550 U.S. at 550 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions . . . ."); *Evans v. McCoy-Harris*, No. CV178345DMGAGRX, 2019 WL 1002512, at *3 (C.D. Cal. Jan. 4, 2019) (plaintiff's claim that defendant's work "contains 'portions' of her screenplays," was conclusory, and did not allege copying under *Iqbal* standard).

Where, as here, the copyright holder claims unlawful copying, she must "identify any specific text in [her] work that is copied in [the Defendants'] publications," or suffer dismissal. *Phillips v. Murdock*, 543 F. Supp. 2d 1219, 1226–27 (D. Haw. 2008). Indeed, as the Ninth Circuit held in *Malibu Textiles*, simply alleging that two items are substantially similar or directly copied is not enough; copyright holders should "describe[ the infringed work's] protectable elements" and juxtapose them against those same elements in the defendant's infringing work. *Malibu Textiles*, 668 F. App'x at 803 (complaint which "described the arrangements of [protected] elements that was allegedly incorporated into defendants' product," was insufficiently pleaded because it "did not provide photos that clearly showed these similarities and did not describe the arrangement of the elements with sufficient specificity"). Bare assertions of identicality are insufficient. *Cf. Biosuccess Biotech Co. v. Pharm.*, No. LACV1400310JAKANX, 2014 WL 12629696, at *5 (C.D. Cal. May 16, 2014) (crediting allegation that works were "verbatim or nearly identical" where plaintiff "provided a chart comparing the text contained on the two websites").

Plaintiff, however, has failed to allege any facts in support of copying or

virtual duplication and "makes no effort to compare the copyrightable elements of [Defendants' works] with either of [her Copyrighted Articles]."[5] *Evans v. McCoy-*

---

[5]    Plaintiff argues in her opposition that the Court can find support for simlarities by referring to Appendix B and D to her brief. (ECF Nos. 113, at 23–24; 113-1, at 6–7, 10–11.) Because these pleadings were not made in the FAC itself, the Court cannot consider them. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (quoting *Schneider v. Cal. Dep't. of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).

Even assuming the Appendices are properly before the Court, they would not save Plaintiff's claim from dismissal.

Appendix B is a chart with four columns. (ECF No. 113-1, at 6–7.) The first column identifies eleven of Defendants' allegedly-infringing works—i.e., the HITM-SURE trial, the '118 patent, the '370 application, among others. The second column specifies Plaintiff's Copyrighted Articles as the infringed works. The third provides a text description of the Defendants' allegedly infringing works, and the fourth lists the ECF record locations of relevant Exhibits. Those exhibits include Plaintiff's copyright registration certificates for her Copyrighted Articles, (ECF No. 87-1, 87-2), and numerous press releases, marketing documents, patent applications, screenshots of trials to clinicaltrials.gov.

Appendix D is a chart comparing the HITM-SURE clinical trial with the '311 Copyright. (ECF No. 113-1, at 10–11.) It avers that the former is titled "CAR-T Hepatic Artery Infusions or Pancreatic Venous Infusions for CEA-Expressing Liver Metastases or Pancreas Cancer," and the latter, "Phrase 1b/2 Study of [2nd Generation] Anti-CEA designer CAR T cells in Breast cancer." It indicates that both operate on the "invention" of "2nd gen, RV transduced anti-CEA (scFv: humanized MN14)" but that the HITM-SURE clinical trial has for its "route of administration" "Direct (hepatic artery infusions (HAI))", and that the '311 Copyright, by contrast, specifies routes that are "Direct or Systemic."

The Appendices do not save Plaintiff's infringement claim. Critically, neither chart identifies what elements of Plaintiff's Copyrighted Articles are protected. Indeed, Plaintiff's copyright registration certificates—which are not followed by copies of the underlying text articles—do not inform the Court what elements in those works are copyrightable subject matter. Nor do the charts offer any explanation what portions of Plaintiff's Copyrighted Articles are copied in any of Defendants' works.

Even if Plaintiff *had* identified the protected elements in her Copyrighted Articles, a blithe, unexplained reference to a chart festooned with unlabeled record cites, submitted for the first time in opposition to a motion to dismiss, would not have guided either the Court in assessing the sufficiency of the pleadings, nor given Defendants fair notice of Plaintiff's claims and the grounds upon which they rest. *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("Judges are not like pigs, hunting for truffles buried in briefs." (internal quotation marks and citation omitted)); *Perez v. Unknown*, No. CV1808535ODWAFM, 2018 WL 6025844, at *2 (C.D. Cal. Nov. 16, 2018) ("If a plaintiff fails to clearly and concisely set forth factual allegations sufficient to provide defendants with notice of which defendant is being sued on which theory and what relief is being sought against them, the pleading fails to comply with Rule 8." (citing Fed. R. Civ. P. 8(a)).

CASE NO. 18-CV-01681-GPC-BGS

*Harris*, 2019 WL 1002512, at *3. Dismissal is proper on this ground alone. *Id.*

### c. Conclusion as to Copyright Infringement Claims

Accordingly, the Court **GRANTS** the motion to dismiss as to the copyright infringement claims.[6] Dismissal shall be <u>without leave to amend</u>. Plaintiff has already amended her pleadings twice, and despite explicit instruction from the Court to articulate the protectable elements in her Copyrighted Articles, failed to do so. Instead, Plaintiff continues to insist that she wields a patent-like monopoly over the scientific discoveries, technical findings, methods, and formulas described in her Copyrighted Articles. For the reasons explained *supra* and in the FAC dismissal order, she does not. Amendment under these circumstances would be futile.

### B. Unjust Enrichment Claim

Defendants have also moved to dismiss Plaintiff's newly-pleaded claim for Unjust Enrichment (Claim for Relief XVII). (ECF No. 86, at 105.) Plaintiff alleges that Defendants "unjustly enriched themselves as a result of the copying of the copyrightable expression of Plaintiff(s)' ideas and/or work products." (*Id.*)

This claim fails for two reasons. First, Plaintiff's unjust enrichment allegations are predicated on the same copyright infringement claims that the Court found insufficiently alleged *supra*. Second, Plaintiff's state-law cause of action is preempted by the Copyright Act, 17 U.S.C. § 301. Where, as here, the unjust enrichment allegation arises from the defendant's unauthorized use of a copyrighted work, preemption principles require dismissal. *See Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003) (dismissing as preempted state law unjust enrichment claim based on the same facts as the federal copyright infringement claim).

---

6     Plaintiff's claims that Defendants unlawfully performed or prepared derivatives of her Copyrighted Articles also fail upon a finding that Plaintiff has failed to allege any protectable or copyrightable subject matter.

    CASE NO. 18-CV-01681-GPC-BGS

As with the underlying copyright infringement claim, amend would be futile, and this cause of action will also be dismissed with **prejudice.**

### C. Trade Secret Claims

Plaintiff has also raised claims under the Uniform Trade Secrets Act and the Defend Trade Secrets Act (i.e., Claims for Relief II, III, and VI). Plaintiff alleges that the Copyrighted Articles constitute trade secrets, which the Defendants willfully misappropriated for economic gain.

The Court previously dismissed the trade secret claims because Plaintiff (1) "neglect[ed] to specify the particular trade secrets alleged to have been misappropriated," and (2) pleaded facts which defeated an inference that Plaintiff owned any trade secrets as a matter of law. (ECF No. 75, at 20–21.)

As to the latter point, the Court explained that to state a claim under either the CUTSA or the DTSA, Plaintiff must allege ownership of a trade secret, and that once "an individual discloses his trade secrets to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984). The Court explained that Plaintiff's failure to allege redaction upon filing for copyright registration with the United States Copyright Office precludes a favorable determination of trade secrets as a matter of law. *See KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1031 (N.D. Cal. 2009) (holding that defendant's counter-claim for trade secret misappropriation failed where defendant filed source code with the Copyright Office and failed to allege that his submission was redacted); *Mobile Active Defense, Inc. v. Los Angeles Unified Sch. Dist.*, No. 15-08762 RGK (GJSx), 2015 WL 12860491, at *5 (C.D. Cal. 2015) (denying a preliminary injunction pursuant to the CUTSA on the same grounds).

Plaintiff's SAC fails to cure the deficiencies observed in the FAC. Plaintiff again fails to specify any particular trade secrets alleged to have been

misappropriated. In addition, Plaintiff has not pleaded that her copyright registrations were filed with redactions, rendering untenable the inference that any information contained therein continues to exist as trade secrets.

Even more fatally, Plaintiff's SAC newly alleges facts that contradict the existence of a trade secret. To wit, Plaintiff avers that prior to the deterioration of her relationship with Dr. Junghans, "multiple drafts of the [Copyrighted Articles] were sent to Dr. Junghans as part of the planned collaboration." (ECF No. 86-1, at 40.) If drafts of the Copyrighted Articles were sent to Mr. Junghans, who is not alleged to have been under an "obligation to protect the confidentiality of the information," any property interest Plaintiff might have had in the trade secrets became "extinguished" upon disclosure. *Ruckelshaus*, 467 U.S. at 1002.

Despite the Court's guidance on the elements necessary to state a trade secret claim, Plaintiff has once again failed to plead the existence of a trade secret. Not only that, but her new pleadings definitively undercuts any such notion. Because further amendment would be futile, Plaintiff's trade secret claims are **dismissed** with prejudice. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed pro se plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

### D. Antitrust, FTAIA, and Unfair Business Practices Claims

Plaintiff asserts a number of antitrust, anti-competition, and unfair trade practice claims in the SAC. Specifically, she alleges: (1) constraints on trade and conspiracy to constrain trade under Section 1 of the Sherman Act (Claims for Relief IX, X, and XIII); (2) attempted or monopolization/conspiracy to monopolize under Section 2 of the Sherman Act (Claim for Relief XI and XIII); (3) exclusive dealings under Section 3 of the Clayton Act (Claim for Relief VIII); (4) violation of Section 14 of the Clayton Act (Claim for Relief XII); (5) violation of the Foreign Trade Anti-Trust Improvement Act, 15 U.S.C. § 6 (Claim for Relief X); and (6) unfair

business practices under California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 (Claim for Relief XIV).[7]

According to Plaintiff, Dr. Junghans's execution of the nondisclosure agreement with SRNE, SRNE's acquisition of BDL and CARgenix, the institution of the restrictive covenant in the SPA or MIPA, and her exclusion from the cGMP facility all present actionable claims under the Clayton and Sherman Acts because they implicate anticompetitive conduct within the United States. Plaintiff also alleges foreign anticompetitive injury arising out of SRNE's exclusive license to 3SBio to commercialize anti-CEA CAR T cells throughout the Greater China Market. Although the FTAIA generally excludes from the Sherman Act's reach much of the anticompetitive conduct that causes only foreign injury, Plaintiff appears to argue that her claim falls within one of the exceptions to the general rule of the FTAIA, which permits Section 1 claims when the foreign harm alleged also involves conduct which "significantly harms imports, domestic commerce, or American exporters." *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 158 (2004).

All of the antitrust claims in Plaintiff's FAC were previously dismissed. In the FAC dismissal order, the Court explained that at least two essential elements— the existence of a relevant market and injury to competition—were inadequately alleged. Plaintiff was given leave to amend to address these deficiencies. Plaintiff's efforts to plead these issues anew are discussed below.

### 1. Relevant Market

Each of Plaintiff's claims under Sections 1[8] and 2 of the Sherman Act and Section 3 of the Clayton Act require her to establish that Defendants had market

---

[7] These claims will hereinafter be collectively referred to as the "antitrust claims."
[8] Plaintiff's claim under the FTAIA is in effect a claim that Section 1 applies to the anticompetitive conduct of the Defendants in a foreign market.

power in a "relevant market." *See*, *e.g.*, *Omega Environ. Inc., v. Gilbarco, Inc.*, 127 F.3d 1157, 1169 (9th Cir. 1997) (exclusive dealing); *Spectrum Sports, Inc. v. Mcquillan*, 506 U.S. 447, 456 (1993) (monopolization); *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, 72 F. Supp. 3d 1012, 1019 (N.D. Cal. 2014) (attempted monopolization); *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008) (restraints of trade).[9]  That is, "Plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." *Newcal*, 513 F.3d at 1044.  "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. Univ. of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001) (citation omitted).

To be sure, Plaintiff is "not required to plead a relevant market with specificity." *Payment Logistics Ltd. v. Lighthouse Network, LLC*, No. 3:18-CV-00876-L-AGS, 2018 WL 5311907, at *2 (S.D. Cal. Oct. 23, 2018).  However, "[t]here are . . . some legal principles that govern the definition of an antitrust 'relevant market' and a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Newcal*, 513 F.3d at 1045.  A facially-sustainable relevant market definition requires delineation of both a geographic and a product market. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 183 F.3d 1096, 1104 (9th Cir. 1999). "A properly defined product market," in turn, "'includes a pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand.'" *Blizzard Entm't Inc. v. Ceiling Fan Software, LLC*, 941 F. Supp. 2d 1227, 1231 (C.D. Cal. 2013) (quoting

---

[9]     In this case, the relevant-market inquiry does not differ in any material respects for Plaintiff's Clayton Act and Sherman Act claims. *See Newcal*, 513 F.3d at 1044 n.3 (standards the same under Sections 1 and 2 of the Sherman Act); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 23 n.39 (1984) (standards the same under Sherman Act Section 1 and Clayton Act Section 3).  Therefore, "there is no need to distinguish or differentiate among [Plaintiff's] various claims; her market allegations are either sufficient or insufficient for all [her] claims." *Newcal*, 513 F.3d at 1044 n.3.

*Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988)).

Plaintiff's market allegations fail on three independent grounds. First, she has not clearly specified *which* of two markets mentioned in the SAC she intends as the operative frame of analysis. Second, she has failed to define a proposed market with reference to the rule of reasonable interchangeability and cross-elasticity of demand. Third, to the extent that Plaintiff seeks to proceed on the basis of the "CAR T Cell Goods market for solid tumors," Plaintiff has, once again, defeated her own case by pleading the present nonexistence of that market.

### a. Failure to Identify the Relevant Product Market

Plaintiff's SAC is deeply conflicted as to the parameters of the relevant market.

Some sections of the SAC allege the existence of an "US CAR T cell market." (ECF No. 86, at 8.) Sometimes, this product market is also referred to as "the CAR T cell pharmaceutical market" (*id.* at 68), or the "anti-CEA CAR T cell goods market." (*Id.* at 93.)

Notwithstanding the many references to the "CAR T Cell Goods market," Plaintiff also makes numerous statements about a "CAR T cell market . . . for solid tumors," (*id.* at 89), which Plaintiff indicates is a constituent part of the umbrella market for CAR T cell goods.

It is altogether unclear whether Plaintiff intends on rely on the broader market for CAR T cell goods, or if she seeks to use the narrower definition. Given the sparsity of Plaintiff's allegations and her vacillation between a CAR T cell goods market on the one hand, and a CAR T cell market for solid tumors on the other, the Court cannot discern which market Plaintiff seeks to designate. "Without clearly defined relevant geographic and product markets, it is impossible for this Court to grant any type of relief." *United States v. LSL Biotechnologies*, No.

CASE NO. 18-CV-01681-GPC-BGS

00CV529, 2002 WL 31115336, at *4 (D. Ariz. Mar. 28, 2002), *amended* (May 23, 2002), *aff'd*, 379 F.3d 672 (9th Cir. 2004). Dismissal is appropriate on the basis of the lack of clarity alone. *Id.*

### b. Failure to Plead Interchangeability and Cross-Elasticity of Demand

In any event, neither of Plaintiff's potential market definitions are sufficient.

In the Ninth Circuit, "[w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3rd Cir. 1997); *see also Newcal Indus.*, 513 F. 3d at 1045 (A product market "must encompass the product at issue as well as all economic substitutes for the product."). "Interchangeability implies that one product is roughly equivalent to another for the use to which it is put," *Queen City Pizza*, 513 F.3d at 437, while "[c]ross-elasticity of demand is a measure of the substitutability of products from the point of view of buyers," *see id.* at 438 n.6.

Here, Plaintiff has not only failed to specify a relevant market, but also defaulted on her obligation to do with reference to interchangeability and cross-elasticity of demand. Nowhere in her SAC does Plaintiff discuss why CAR T cell goods (solid tumor or otherwise) should be viewed in isolation from any other immunotherapies or gene therapy products. She does not allege that the are no other goods or services which would be viewed as interchangeable or substitutable from the point of view of buyers. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (holding, where complaint alleged existence of "product markets for lodging accommodations and ski packages" in

Big Bear Valley, district court properly dismissed antitrust claims because plaintiffs failed to allege "there are no other goods or services that are reasonably interchangeable with lodging accommodations or ski packages within [the] geographic market" of Big Bear Valley). Indeed, Plaintiff offers no explanation why other forms of cancer treatments, for example, stem cell, hormone, radiation, or chemotherapy, should not be included in any relevant market analysis.

The complete lack of any pleadings as to interchangeability and fungibility dooms Plaintiff's antitrust claims. *See Re–Alco Industries, Inc. v. Nat'l Center for Health Educ., Inc.*, 812 F. Supp. 387 (S.D.N.Y.1993) (dismissal for failure to plead a valid relevant market; plaintiff failed to allege that specific health education product was unique or explain why product was not part of the larger market for health education materials). Failure to "allege facts supporting that there is no 'reasonable interchangeability of use' or sufficient 'cross-elasticity of demand,'" makes a proposed market definition "facially unsustainable." *Payment Logistics Ltd. v. Lighthouse Network, LLC*, No. 3:18-CV-00786-L-AGS, 2018 WL 5311907, at *3 (S.D. Cal. Oct. 24, 2018).

### c. Nonexistence of Relevant Market

Finally, to the extent that Plaintiff's antitrust claims are premised on the narrower definition, i.e., "CAR T Cell goods market for solid tumors," Plaintiff faces the same issue as defeated her FAC: the non-existence of the very market in which Defendants are alleged to have caused antitrust injury.

The FAC identified the operative market as the "CAR T cell goods market for solid tumors, a goods market which does not yet exist," and averred that it "has yet to be established. (ECF No. 3, at 63, 64, 66–67.). The Court found this proposed market definition facially unsustainable, because "Plaintiff must allege . . . that a 'relevant market' exists." (ECF No. 75, at 24, quoting *Newcal*, 513 F.3d at 1044.)

Plaintiff has not cured this deficiency upon repleading. Although Plaintiff insists that a market for CAR T Cell Goods exists, she concedes that the "CAR T Cell Market for solid tumors is not yet established." (ECF No. 113, at 31, n.32.) But, as previously explained, an existing product market is mandatory. *See Tanaka*, 252 F.3d at 1063–64 (affirming dismissal of antitrust claims where plaintiff athlete identified product market as "UCLA women's soccer program" but failed to allege any facts to support "conclusory" assertion that such market existed).

The Court finds that Plaintiff has again failed to plead a facially sustainable relevant market.

### 2. Injury to Competition

Even assuming *arguendo* that Plaintiff pleaded a relevant market, the lack of antitrust injury serves as an independent basis for dismissal. *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008).

Antitrust injury "is an element of all antitrust suits," *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995), and an antitrust plaintiff must allege an antitrust injury to survive a Rule 12(b)(6) challenge. *Pool Water Prods. v. Olin*, 258 F.3d 1024, 1034 (9th Cir. 2001).

Antitrust injury "mean[s] an 'injury of the type the antitrust laws were intended to prevent'—*i.e.*, an injury to competition. *Somers v. Apple, Inc.*, 729 F.3d 953, 967 (9th Cir. 2013) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Injury to competition requires allegations that *competition itself* has been injured, rather injury to specific competitors. *See Rutman Wine Co. v. E & J Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987); *see also Les Shockley Racing, Inc. v. National Hot Rod Association*, 884 F.2d 504, 508 (9th Cir. 1989) (holding that Sherman Act claimants must plead "a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market"); *Hip Hop Beverage Corp. v. Monster Energy Co.*, 733

F. App'x 380, 381 (9th Cir. 2018) ("Mere injury to [the plaintiff] as a market competitor is not sufficient.")

As was the case with the FAC, nothing in Plaintiff's SAC articulates an injury to competition. Plaintiff continues to focus on the impact of Defendants' anti-competitive conduct—as it relates to her. Specifically, all of the pleadings within the SAC section titled "Effect on Competition" enumerate injuries accruing to her alone. (ECF No. 86, at 68–71.)[10] But even if Plaintiff was entirely excluded from competing, such an outcome would not suffice to demonstrate an antitrust injury. As the Ninth Circuit held in *Les Shockley Racing,* "removal of one or a few competitors need not equate with an injury to competition." 884 F.2d at 508. Plaintiff has again failed to allege antitrust injury.

Moreover, the SAC contains new pleadings that significantly undercut and contradict any claim that Defendants have effected an injury to competition. Although Plaintiff avers a reduction of competition in the market,[11] her SAC suggests otherwise. For example, Plaintiff indicates that "[a]s of June 8, 2018, there are only two FDA approved CAR T cell products for blood cancer indications – Novartis's Kymriah™ and KitePharma's, a Gilead Sciences company, Yescarta™." (ECF No. 86, at 119.) Defendants, by contrast, are not alleged to be near this milestone with their CAR T cell products. In fact, Plaintiff disavows that either SRNE or TNK, its subsidiary, have "any CAR T cell products that have been received marketing authorization from the FDA or any other regulatory body to date." *Id.* Moreover, Plaintiff also pleads that "an academic group in California

---

[10] These pleadings appear largely unchanged from the pleadings in the FAC. (*See* Redline Comparison of SAC with FAC, ECF No. 86-1, at 74–77.)

[11] Although Plaintiff has not pleaded a relevant products market, or pleaded it with the specificity and reference to cross-price elasticity and interchangeability demanded by law, the Court assumes—for the limited purposes of this discussion—a relevant market as defined by CAR T cell goods. This is, after all, the only goods market that Plaintiff has alleged exists.

CASE NO. 18-CV-01681-GPC-BGS

under the direction of John K. Lee had taken up work on anti-CEA CAR T cells as have others including Canada's Helix Biopharma (camelid binding domain), Gabrielle Pecher, *et al.*" (*Id.* at 70.) Given its allegations of concurrent, viable CAR T projects by ostensible market competitors, the SAC allegations belie a claim that Defendants have somehow reduced competition in the market. Plaintiff fails to allege an antitrust injury.

### 3. Conclusion as to antitrust claims

In light of the above, Plaintiff's claims under Section 1 and 2 of the Sherman Act, Section 3 of the Clayton Act, and the FTAIA, are fatally deficient.[12] Plaintiff was previously advised of the relevant market and antitrust injury deficiencies and granted leave to amend. On amendment, Plaintiff has not only failed to cure her pleadings but, with respect to antitrust injury, pleaded new facts which undermine any such element. Because Plaintiff cannot through amendment rectify the injury to competition deficiencies without contradicting her SAC allegations that other CAR T Cell goods producers are meeting regulatory and research milestones that Defendants have not, amendment would be futile. *See Schrieber*, 806 F.2d at 1401 (leave to amend properly denied when "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").

Accordingly, those claims are **dismissed with prejudice**. *See*, *e.g.*, *Brignac v. Yelp Inc.*, Case No. 19-CV-01188-EMC, 2019 WL 2372251, at *5 (N.D. Cal. 2019) (dismissing with prejudice antitrust claims in *pro se* plaintiff's first amended complaint upon determining no factual pleadings consistent with current complaint could possibly be pleaded upon amendment).

Further, because Plaintiff's claims under Section 14 of the Clayton Act

---

[12] Because Plaintiff did not allege a relevant market or an antitrust injury, the Court need not address the Sorrento Defendants' alternative arguments that Plaintiff's failed to allege a specific intent to monopolize, as is required to state a claim under Section 2 of the Sherman Act.

(asserted against the individual members of the Board of Directors of SRNE),[13] and under the UCL are dependent on the same factual allegations and legal premises as her antitrust claims, those are also **dismissed with prejudice**. *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("If the [predicate] claim is dismissed, . . . there is no 'unlawful' act upon which to base . . . the derivative Unfair Competition claim."); *GVF Cannery, Inc. v. California Tomato Growers Ass'n, Inc.*, 511 F. Supp. 711, 717 (N.D. Cal. 1981) (insufficiency of the underlying antitrust claims against the corporation precludes personal liability of corporate officers).

### E. Declaratory Relief Pursuant to the Declaratory Judgment Act

Plaintiff has also petitioned this Court to declare certain patents and patent applications invalid. Plaintiff's Fifteenth Cause of Action pertains to the patent issued to RWMC, i.e., the '818 patent ("Anti-CEA"), and her Sixteenth Cause of Action pertains to the '825 application ("Anti-CEA – YY1 or EZH2 Knockdown") filed by Tufts, and the '370 application ("Hepatic Arterial Infusion of CAR-T Cells") filed by RWMC. As previously mentioned, only the '825 application remains pending before the US PTO; the '370 application was rejected on July 2, 2018.

After review of the parties' papers and the applicable law, the Court must once more conclude that it lacks jurisdiction with respect to the requested declarations because there is no case or controversy at hand.

### 1. Case or Controversy Requirement

---

[13] The FAC dismissal order dismissed Plaintiff's Section 14 claim with prejudice. As previously explained, Section 14 does not apply in the instant litigation because it provides individual liability for corporate officers for the corporation's violation of the *penal*—i.e., criminal—provisions of the antitrust laws. However, the Court will once again liberally construe pro se Plaintiff's complaint to state raise a claim pursuant to *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F. Supp. 841, 851 (N. D. Cal. 1979) (describing personal liability for officers, directors, and agents who participate in or authorize "inherently wrongful conduct" constituting antitrust violations by the corporation).

CASE NO. 18-CV-01681-GPC-BGS

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The phrase 'a case of actual controversy' in the Act refers to the types of 'cases' and 'controversies' that are justiciable under Article III of the Constitution." *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *rev'd in part on other grounds by Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013). Thus, in a declaratory judgment case, if there is no case or controversy, there can be neither a claim for declaratory relief nor Article III subject matter jurisdiction. *See SanDisk Corp. v. ST Microelecs., Inc.,* 480 F.3d 1372, 1378 (Fed. Cir. 2007).

In *MedImmune, Inc. v. Genentech*, 549 U.S. 118 (2007), the Supreme Court examined the declaratory judgment case or controversy requirement in the context of a patent license dispute. The Court explained that to show a case or controversy, a declaratory judgment plaintiff must prove that "'under all the circumstances, [the facts] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273) (emphasis added). The controversy must be "'definite and concrete, touching the legal relations of parties having adverse legal interests,'" such that the dispute is "'real and substantial'" and "'admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.*

Since *MedImmune*, the Federal Circuit has held, and district courts in this jurisdiction have agreed, that an actual controversy requires "an injury in fact

CASE NO. 18-CV-01681-GPC-BGS

traceable to the patentee," which exists only if the plaintiff has alleged "both (1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." *Association for Molecular Pathology*, 689 F.3d at 1318. Plaintiff, as the party seeking to establish jurisdiction, bears the burden of establishing both prongs of the jurisdictional requisites. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

### 2. Plaintiff's Request to Declare the '818 Patent Invalid

The Court previously concluded that Plaintiff's FAC contained no allegations to support jurisdiction with respect to RWMC's '818 patent. Although granted leave to amend, Plaintiff has once again failed to direct her pleadings toward the standards set out in *Association for Molecular Pathology* or *MedImmune*.

### a. Affirmative Act Relating to Enforcement

Plaintiff's failure to demonstrate an affirmative act by RWMC relating to enforcing the '818 patent divests the Court of declaratory jurisdiction. Plaintiff has not pleaded any affirmative act by RWMC to enforce its patent rights against her. To wit, nothing in Plaintiff's SAC describes any action taken by RWMC as would suggest a controversy of sufficient reality and immediacy. However, Plaintiff has made a responsive argument in her opposition papers[14] that RWMC took an affirmative act with respect to enforcing the '118 patent against her when it filed for an "Assignee Showing of Ownership per 37 CFR 3.73" form for the '370 application. (ECF No. 113, at 25).

This argument is without merit. Requesting assignee status under 37 C.F.R. § 3.73, without more, does not arise to an affirmative act relating to the

---

[14] Although the Court is constrained to the four corners of the complaint in ascertaining sufficiency of the pleadings, the Court will, out of an abundance of caution, direct itself to the late-blooming arguments raised in Plaintiff's opposition.

enforcement of a patent right. The regulations at 37 C.F.R. § 3.71 explain that assignees may act in patent applications or supplemental examination or reexamination proceedings; 37 C.F.R. § 3.73 outlines the conditions precedent for an entity, other than the original applicant, to become the assignee. *Mayfair Wireless LLC v. Celico P'ship*, No. CV 11-772-SLR-SRF, 2013 WL 4657507, at *4 (D. Del. Aug. 30, 2013) (37 C.F.R. § 3.73(b) and (c) requires an assignee who "seeks to assume responsibility for the prosecution of a patent application before the patent is issued" to "provid[e] documentary evidence of the chain of title to the satisfaction of the director of the PTO"). If the conditions of 37 C.F.R. § 3.73(b)-(c) are met, then the new assignee would be permitted to proceed with respect to the actions designated in 37 C.F.R. § 3.71.

Given this regulatory context, it is clear that the submission of a § 3.73(c) form does not constitute enforcement activity. By filing a form in compliance with 37 C.F.R. § 3.73(c), RWMC merely made a request to become the applicant of record with respect to the patent regime.[15] The Court does not perceive how the mere filing of the request could constitute an affirmative act to enforce patent rights, and Plaintiff offers no authority for such a proposition. Even assuming such a request is approved, there is nothing to indicate that enforcement of patent rights would immediately or necessarily follow. The most that might be assumed from the filing of a § 3.73(c) form is that, as an assignee, the entity would be enabled to navigate the patent registration regime (from application to supplemental examination to reexamination); whether the assignee then takes an affirmative act to enforce a patent right against another party is simply speculative.

Furthermore, Plaintiff's argument is additionally unavailing in the context of

---

[15] *See* 37 C.F.R. § 3.71(c): "Patents—Becoming of record. An assignee becomes of record as the applicant in a national patent application under § 1.46 of this title, and in a supplemental examination or reexamination proceeding, by filing a statement in compliance with § 3.73(c) that is signed by a party who is authorized to act on behalf of the assignee."

CASE NO. 18-CV-01681-GPC-BGS

this case.  Plaintiff has asserted that RWMC's § 3.73(c) form with respect to the '370 application somehow indicates an affirmative act to enforce the '818 patent. The Court finds that it does not.  The '370 application itself has been denied, and no patent has issued therefrom.  But even if the '370 application had not been rejected, there is no support for the idea that an assignation of one patent—i.e., the hypothetical '370 patent—would indicate intent to enforce the legal rights associated with another—i.e., the '818 patent at issue here.

### b.  Meaningful Preparation

Nor has Plaintiff alleged any "meaningful preparation to conduct potentially infringing activity." *Association for Molecular Pathology*, 689 F.3d at 1318.  As the Court previously held with respect to her FAC, the remoteness of Plaintiff's preparatory conduct renders her unable to demonstrate the immediacy required by the case or controversy requirement.

Plaintiff SAC reiterates that Plaintiff's sole proprietorship is but "an early stage micro-entity without any marketed pharmaceutical products to date."  (ECF No. 86, at 68.)  Plaintiff has achieved the "pre-pre investigation new drug" milestone with the FDA, which "constitutes the first of many interactions with the FDA in the effort to gain marketing approval for a medical product." (*Id.* at 68.)  Plaintiff advises that her proposal to replace or reduce animal testing as part of the FDA's pre-clinical program, which is pending peer review and comment as of April 2018.  (*Id.* at 68–69.)  Plaintiff further avers that she is in the process of "reach[ing] milestones that are needed to *eventually gain entry* to the US market as well as other markets following marketing approval by the applicable regulatory bodies."  (*Id.* (emphasis added)).

The Court found identical allegations to be insufficient to state meaningful preparatory activity with respect to the FAC. "In general, the greater the length of time before potentially infringing activity is expected to occur, 'the more likely the

case lacks the requisite immediacy.'"  *Cat Tech. LLC v. TubeMaster, Inc.*, 528 F.3d 871, 881 (Fed. Cir. 2008) (quoting *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004)).  That conclusion persists with respect to the SAC.

### c.  No Jurisdiction as to the '818 Patent

Plaintiff failed to allege any affirmative acts taken by RWMC relative to enforcement of the '818 patent against her.  And she again fails to allege meaningful preparatory activity.  This claim is **dismissed** for lack of declaratory judgment jurisdiction.  Dismissal shall be with prejudice.  The Court concludes that amendment would be futile because although Plaintiff was put on notice of the deficiencies of her prior claim via the FAC dismissal order, she did little to amend her pleadings.  *See Restoration Indus. Assoc. Inc. v. ThermaPure Inc*., No. CV1203169JVSRZX, 2013 WL 12145607, at *4 (C.D. Cal. Oct. 10, 2013) (dismissing with prejudice declaratory judgment claim in a second amended complaint).

### 3.  Plaintiff's Request to Declare the '370 and '825 Applications Invalid

Plaintiff also seeks a declaration invalidating of the '370 and '825 patent applications.  The Court must decline, because it lacks jurisdiction to consider the request as a matter of law.

Courts have consistently found no justiciable controversy in cases involving pending, unperfected patents.  The seminal case is *GAF Building Materials Corporation v. Elk Corporation of Dallas*, 90 F.3d 479 (Fed. Cir. 1996), where the Federal Circuit held that no case or controversy existed in the declaratory judgment action because the plaintiff's complaint "alleged a dispute over the validity and infringement of a possible *future* patent not then in existence."  *Id.* at 483 (emphasis in original).  Since jurisdiction and justiciability are judged at the time of filing, and

CASE NO. 18-CV-01681-GPC-BGS

the court could not be certain when the case was filed that a patent would issue, "the dispute was purely hypothetical and called for an impermissible advisory opinion." *Id.*

The instant request to declare the '370 and '825 applications fail for the same want of immediacy as the future patent at issue in *GAF* and other analogous cases. *See e.g.*, *Sorenson v. Fein Power Tools*, No. 09CV558 BTM CAB, 2009 WL 3157487, at *2 (S.D. Cal. Sept. 28, 2009). In addition, the declaration sought with respect to the '370 application is purely academic, since it has been denied by the US PTO.

Without jurisdiction to issue declaratory judgment, this claim must be **dismissed with prejudice**.

### F. Fifth Amendment and Fourteenth Amendment Claims

Plaintiff's Seventh Cause of Action claims that Defendants violated "the Takings Clause (Fifth Amendment), the Just Compensation Clause (Fifth Amendment), and/or the Due Process Clause (Fifth and/or Fourteenth Amendments to the US Constitution)." (ECF No. 86, at 88.)

The Court previously dismissed Plaintiff's Fifth Amendment Takings claim with prejudice and denied reconsideration of the same. In the FAC dismissal order, the Court explained that generally the Fifth Amendment applies only with respect to government actions. *See Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746–47. ("The United States Constitution protects individual rights only from *government* action, not from *private action.* Only when the government is responsible for a plaintiff's complaints are individual constitutional rights implicated."). The Court explained that "[i]n order to apply the proscriptions of the Fifth Amendment to private actors, there must exist a sufficiently close nexus between the (government) and the challenged action of the . . . (private) entity so that the action of the latter may be fairly treated as that of the (government) itself."

*Rank v. Nimmo*, 677 F.2d 692, 701 (9th Cir. 1982) (internal quotations omitted). Nexus, the Court explained, may be pleaded in accordance to one of four theories enumerated in *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (explaining the four tests for attribution: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus. Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists.").  It concluded that Plaintiff failed to allege any facts to state a plausible claim for government attribution, and dismissed the claim with prejudice.

Despite dismissal without leave to amend, Plaintiff has repleaded her Fifth Amendment Takings claims.  This claim must, once again, be **dismissed with prejudice.**[16]

With respect to the newly-minted Due Process claims, Plaintiff again fails to allege how Defendants' actions may be considered government action.  Plaintiff does not squarely address this issue, but instead gestures vaguely towards an argument that equates government funding with state action.  For example, Plaintiff makes several unelaborated references to the Bayh-Dole Act, which allows the government to take title to inventions arising from federally supported research or development.[17]  (ECF No. 86, at 18, 84, 85, 87; *id.* at 86 (alleging that RWMC and Tufts will benefit economically upon the "technology transfer" of the '818 patent).)

---

[16]     "Plaintiff risks sanctions by repleading claims previously dismissed with prejudice." *Franconero v. UMG Recordings Inc.*, No. CV123382JGBAGRX, 2014 WL 12886834, at *5 (C.D. Cal. Feb. 13, 2014); *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011) (affirming district court's inherent power to control its docket by dismissing entire complaint for failure to follow instructions given with leave to amend); *see also Cleverley v. Ballantyne*, 2:12-CV-00444-GMN, 2014 WL 294519, at *2 (D. Nev. Jan. 24, 2014) (striking paragraphs of the pleading which were barred by the court's prior order).

[17]     *See Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 844 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) ("The Act allows the Government to take title to 'subject inventions' under certain circumstances, [35 U.S.C. ]§§ 202(a), 202(b), or the 'contractor' universities or inventors to retain ownership if the Government does not, *id.* § 202(d).").

Plaintiff also discusses how Trisalus Life Sciences, a collaborator with SRNE on the HITM-SURE clinical trial, received a $150,000.00 grant award from the Colorado Office of Economic Development & International Trade to conduct the trial. (*Id.* at 43.)

Plaintiff presents no authority for the alchemic proposition that receipt of government funding, without more, transforms a private actor into a governmental one. Nor could she, because it emphatically does not. *See, e.g.*, *Greenya v. George Washington University*, 512 F.2d 556, 561 (D.C. 1975) ("[W]e are clear that the mere receipt of government loans or funding by an otherwise private university is not sufficient involvement to trigger constitutional guarantees . . . . "); *Young v. Halle Housing Assocs., L.P.*, 152 F. Supp. 2d 355, 362 (S.D.N.Y. 2001) ("Government funding of a private entity, however, no matter how extensive, is insufficient to transform otherwise private conduct into state action."). Plaintiff has once again failed to allege governmental action.

Because the Court has previously dismissed Plaintiff's Fifth Amendment Takings claim with prejudice, and because the requirement of state action applies equally to Due Process claims,[18] all of Plaintiff's Constitutional claims are **dismissed** with prejudice.

### G. Conclusion as to the Sorrento Defendants' motion to dismiss

Plaintiff's SAC shall be dismissed with prejudice in its entirety

## III. Plaintiff's Motion to Introduce Newly Discovered Evidence

After the conclusion of all briefing on the pending motions to dismiss, Plaintiff submitted a filing to "introduce newly discovered evidence." (ECF No. 124.) Although the Court agrees with Defendants that there is no basis for such a

---

[18] *See Geneva Towers Tenants Org. v. Federated Mortgage Investors*, 504 F.2d 483, 487 (9th Cir. 1974) ("The Due Process Clause of the Fifth Amendment applies to and restricts only the federal government and not private persons."); s*ee Montana Power Co.*, 331 F.3d at 746–47 (holding the same with respect to due process under the Fourteenth Amendment).

CASE NO. 18-CV-01681-GPC-BGS

filing, (ECF No. 125), the Court will, out of an abundance of caution, **GRANT** the motion as a request to file a sur-reply.

Plaintiff seeks to introduce two new items: (1) "Clinical trial NCT04037241," which is a July 30, 2019 posting by SRNE to clinicaltrials.gov of a "Study of Anti-CEA CAR-T + Chemotherapy VS Chemotherapy Alone in Patients With CEA+Pancreatic Cancer & Liver Metastases," and (2) "Federal Register Document Number 2019-16107" a document "set to be published on August 9, 2019," containing "a section on the TriSalus LifeSciences (Surefire Medical) Surefire® Spark™ Infusion System." (ECF No. 124-1, at 2–9.) Although not clearly pleaded, it appears that Plaintiff seeks to use the first item to support her claim that SRNE continues to abuse her copyrights by implementing her ideas in clinical trials. It appears that the second item is being offered to show that TriSalus, SRNE's collaborator on the HITM-SURE clinical trial, has submitted to the Centers for Medicare & Medicare Services an application for a new device category for transitional-passthrough payment status for a microcatheter designed to "overcome intratumoral pressure in solid tumors and improve distribution and penetration of therapy during Transcatheter Arterial Chemoembolization (TACE) procedures." (*Id.* at 4.)

To the extent the Court is being asked to consider these items as allegations contra the Defendants' motion to dismiss, the Court cannot grant that request. Unless subject to judicial notice, a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) is "addressed to the four corners of the complaint without consideration of other documents or facts outside of the complaint." *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1396 (E.D. Cal.1994); *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to

dismiss.").  However, the Court may consider extrinsic items in determining whether to grant leave to amend.  *See, e.g.*, *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (holding that facts raised for the first time in opposition papers "should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice").

Having reviewed the two "newly discovered" items in Plaintiff's motion, the Court concludes that they do not support leave to amend on any of Plaintiff's claims.  "Clinical trial NCT04037241," does not support the plausibility of copyright infringement any more than does the HITM-SURE trial.

The import of the TriSalus discussion in the pending Federal Register Document is unexplained, but given the mention of "solid tumors" in the highlighted text, the Court assumes that Plaintiff seeks to allege that a CAR T cell market for solid tumors now exists.  But the Court cannot agree; there is no indication that the TriSalus microcatheter has anything to do with CAR T cells or gene or immunotherapies at all; instead, the document explains that TACE is a "procedure used to infuse a high dose of *chemotherapy* into liver tumors." (ECF No. 124-5, at 2 (emphasis added).)  Moreover, the document advises that the FDA "granted [TriSalus] 510(k) premarket clearance as of April 3, 2018."  (*Id.* at 3.) There is no allegation that this apparently unrelated product has even attained market status.  The TriSalus microcatheter does not sustain any reasonable inference that any CAR T Cell market for solid tumors exists.  Plaintiff has consistently pleaded that it does not.

To conclude: although the motion to introduce newly discovered evidence is granted, the Court concludes that nothing therein changes the dismissal with prejudice of Plaintiff's SAC.

## IV. Tufts's Motion to Dismiss

In addition to its joinder of the Sorrento Defendants' motion to dismiss under

Rule 12(b)(6), Tufts has urged dismissal based on a lack of personal jurisdiction pursuant to Rule 12(b)(2).  (ECF No. 91.)

Tufts contends that the Court lacks both general and specific jurisdiction because it is a Massachusetts entity without the requisite minimum contacts to California.  Plaintiff counters that personal jurisdiction is proper under Section 12 of the Clayton Act, 15 U.S.C. § 22, which provides nationwide personal jurisdiction for antitrust suits.  Tufts retorts that Plaintiff cannot use Section 12's nationwide service of process provision because Plaintiff fails to allege a plausible antitrust claim.

In light of the Court's dismissal of the entire complaint pursuant to Rule 12(b)(6), it is not necessary to consider at this juncture Tufts's arguments for dismissal under Rule 12(b)(2).  *See, e.g.*, *Lance v. Commerce Tr. Co.*, No. 2:15-CV-0341-GEB-KJN, 2015 WL 1530674, at *5 (E.D. Cal. Apr. 3, 2015) (denying as moot a Rule 12(b)(2) motion after granting dismissal on Rule 12(b)(6) grounds); *Brown v. Starbucks Corp.*, No. 18CV2286 JM (WVG), 2019 WL 996399, at *5 (S.D. Cal. Mar. 1, 2019) (same).  Accordingly, in the absence of an operative complaint, the Court **denies as moot** Tufts's motion to dismiss under Rule 12(b)(2).  Should Plaintiff file a Third Amended Complaint, Tufts may reassert its personal jurisdiction challenge at that time.

## V.    Plaintiff's Motion for Reconsideration

Finally, the Court turns to Plaintiff's Motion for Reconsideration.  (ECF No. 111.)  Plaintiff seeks reconsideration of two determinations made in the Court's June 29, 2019 order.  (ECF No. 106.)  After a review of the pleadings and the applicable law, the Court concludes that Plaintiff fails to identify any clear error or new or different facts as would warrant reconsideration.

### A. Legal Standard

Motions for reconsideration are granted only in rare circumstances. *See*

*Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995).

Litigants may not move for reconsideration "to rethink what [it] had already thought through-rightly or wrongly." *Id.* (citation omitted). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). To facilitate the inquiry, the Civil Local Rules require any party seeking reconsideration to file an affidavit setting forth "what new or different facts and circumstance are claimed to exist which did not exist, or were not shown," at the time of the earlier determination. CivLR 7.1.i.1.

### B. Denial of Request to Certify Interlocutory Appeal

Plaintiff urges reconsideration of the Court's June 29, 2019 order declining to certify for interlocutory appeal the Court's FAC dismissal order. (*See* ECF No. 106.)

Specifically, Plaintiff had sought to certify two issues presented in her FAC: whether the Court erred by dismissing with prejudice her Fifth Amendment Takings claim and her claims against the Board of Directors of SRNE, as an entity. (ECF No. 89.) The Court declined certification pursuant to 28 U.S.C. § 1292(b) because the issues sought to be appealed implicated none of the considerations warranting "departure" from the general rule against piecemeal appeals. (ECF No. 106, at 3 (quoting *City of San Diego v. Monsanto Co.*, 310 F. Supp. 3d 1057, 1065 (S.D. Cal. 2018)).) Significantly, the Court found no "substantial ground for difference of opinion" on the questions posed, nor any dispute about the "controlling question of law." *Tsyn v. Wells Fargo Advisors, LLC*, No. 14-CV-02552-LB, 2016 WL 1718139 (N.D. Cal. Apr. 29, 2016).

Plaintiff's motion for reconsideration repeats the same arguments that she made in her original motion to certify. She offers no new or different facts, circumstances, or legal theories unknown to the Court at the time of the earlier determination.

For the reasons already explained in the Court's June 20, 2019 order, (and, once again, in this Order), it is not legal error—much less clear error—to definitively dismiss a Fifth Amendment claim against private actors in the absence of any allegations of government conduct. Nor is there any error in dismissing the Board of Directors of SRNE, since corporate Boards of Directors are not separate legal entities that can be sued insentiently of the corporation itself, *see Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 821 (N.D. Cal. 2016), and because Plaintiff was able to overcome this obstacle by naming the individual members of the SRNE Board of Directors as defendants in her SAC. The request to reconsider this ruling is **DENIED.**[19]

### C. Denial of Leave to Amend to File a Third Amended Complaint

Plaintiff also seeks reconsideration of the Court's June 29, 2019 denial of her request for leave to file a Third Amended Complaint.

On June 17, 2019, while Defendants' motions to dismiss her SAC were pending, Plaintiff filed a fourth omnibus motion requesting, *inter alia*, leave to file a Third Amended Complaint. (ECF No. 96-1.) The Court denied the request because Plaintiff's explanation for what she would plead upon amendment were so threadbare that they failed to surmount even the most liberal of the amendment standards. (ECF No. 106, at 7–9 (citing FED. R. CIV. P. 15(a) (leave to amend is to "be freely given when justice so requires").) The Court observed that Plaintiff bore some "burden to inform the Court of the grounds that justify leave to amend," and

---

[19]    In any event, given the dismissal with prejudice of the entire complaint, Plaintiff need not request certification from this Court to appeal to the Ninth Circuit.

held that Plaintiff's motion for leave to amend entirely failed to comply with even this modest requirement. *Williams v. Thornton*, No. 1:06-CV-01535-SKO PC, 2010 WL 2605210, at *2 (E.D. Cal. June 28, 2010).

Plaintiff's motion for reconsideration does not convince the Court that it erred denying leave to file a Third Amended Complaint. Plaintiff argues that the Court refused the attempted amendment on a "mere technicality," i.e., Civil Local Rule 15.1(b), which requires motions to amend be accompanied by a copy of the proposed amended pleading. (ECF No. 111-1, at 2–3.) The Court rejects this characterization on several levels.

First, local rules have the force of law and are not mere technicalities. *See Ross v. Chipotle Mexican Grill, Inc.*, No. 15CV1000-MMA (JLB), 2016 WL 7634445, at *5 (S.D. Cal. Aug. 8, 2016) ("Local rules have the force of law." (citing *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010*)); Lai v. Countrywide Home Loans*, No. 2:10-CV-0420-RLH-LRL, 2010 WL 2485696, at *1 (D. Nev. June 14, 2010) ("[L]ocal rules, no less than the federal rules or acts of Congress, have the force of law.")). The United States Supreme Court itself has upheld the dismissal of a matter for failure to respond under the local court rules. *See Black Unity League of Kentucky v. Miller*, 394 U.S. 100 (1969).

Second, the Court did not deny Plaintiff's request on the basis of a failure to comply with the local rules; rather, noncompliance with the local rules contributed to Plaintiff's inability to meet the standard set forth in Fed. R. Civ. P. 15(a). To wit: the Court denied Plaintiff's request to file a Third Amended Complaint because Plaintiff did not offer any articulable reason for amendment, except to state that the Third Amended Complaint would contain "[n]ewly discovered information and additional updates." (ECF No. 86-1, at 7–8.) Plaintiff did not explain how this new information would relate to or cure any of the deficiencies identified in the FAC. Instead, she referred the Court to an unexplained chart with myriad links to web

documents; which may or may not have included the "newly discovered information and additional updates." By failing to identify the import of these documents or how she planned to integrate them into any Third Amended Complaint—a failure exacerbated by Plaintiff's failure to attach a proposed amended pleading, in conformity with Rule 15.1(b)—Plaintiff's motion "prevent[ed] the court from determining whether the proposed amendment would result in undue delay, is made in bad faith, will cause prejudice to Defendant, or is a dilatory tactic." *Ervin v. Cty. of San Diego*, No. 14-CV-1142-WQH-BGS, 2015 WL 641244, at *2 (S.D. Cal. Feb. 13, 2015).

On motion for reconsideration, Plaintiff has not identified any clear error with respect to the Court's denial of leave to file a Third Amended Complaint. Indeed, her motion advises that, despite the Court's ruling, Plaintiff nonetheless filed an "Exhibit List as of June 10, 2019," ECF No. 100, which contains the newly discovered information she sought to include in any third amended pleading. (ECF No. 111-1, at 4 n.6). Having reviewed that exhibit list, the Court is confident that none of the information contained therein would have cured the deficiencies identified in the FAC, or in the present order dismissing the SAC. Reconsideration is **denied**.

## VI. Conclusion

Plaintiff's motion to introduce newly discovered evidence is **GRANTED**. (ECF No. 124.) However, notwithstanding any 'newly-discovered evidence,' the Sorrento Defendants' motion to dismiss the SAC for failure to state a claim shall be **GRANTED with prejudice**. (ECF No. 90.) The dismissal of the entire complaint renders determination on Tufts's motion to dismiss for lack of personal jurisdiction unnecessary, and it is **DENIED AS MOOT**. (ECF No. 91.) Plaintiff's motion for reconsideration is **DENIED.** (ECF No. 111.)

The Clerk is directed to close the case and issue judgment.

**IT IS SO ORDERED.**

Dated:  August 2, 2019

Hon. Gonzalo P. Curiel
United States District Judge

CASE NO. 18-CV-01681-GPC-BGS